# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| SHONDEL CHURCH, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-04057-NKL |
| | ) | |
| STATE OF MISSOURI, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS STATE OF MISSOURI AND GOVERNOR ERIC GREITENS SUGGESTIONS IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY A CLASS PURSUANT TO FRCP 23

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.    INTRODUCTION .............................................................................. 1

II.   LEGAL STANDARD FOR CLASS CERTIFICATION .......................................... 2

III.  ARGUMENT ................................................................................. 3

      A.    Plaintiffs have failed to satisfy Rule 23(a)'s commonality,
            typicality, and adequacy requirements. .................................... 3

            i.    Plaintiffs fail to satisfy Rule 23(a)(2)'s commonality
                  requirement because the questions they raise cannot generate
                  common answers as to whether they were denied effective
                  assistance of counsel. ............................................. 3

            ii.   All of the proposed class representatives are either atypical
                  of the class or inadequate to represent the interests of the class. 9

      B.    Plaintiffs likewise fail to meet the requirements of Rule 23(b). . 13

            i.    Plaintiffs fail to satisfy Rule 23(b)(2) because the proposed
                  class is not cohesive. ............................................. 13

            ii.   Plaintiffs do not allege a "common fund" class under Rule
                  23(b)(1)(B) ......................................................... 14

IV.   CONCLUSION ............................................................................... 15

CERTIFICATE OF SERVICE ........................................................................ 17

Case 2:17-cv-04057-NKL   Document 62   Filed 07/06/17   Page 2 of 21

# TABLE OF AUTHORITIES

## CASES

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996)........................................................................ 9

*Carpe v. Aquila, Inc.*,
    224 F.R.D. 454 (W.D. Mo. 2004)............................................................... 10

*Coleman v. Watt*,
    40 F.3d 255 (8th Cir. 1994)........................................................................ 2

*Ebert v. Gen. Mills, Inc.*,
    823 F.3d 472 (8th Cir. 2016)................................................................. 3, 13

*Elizabeth M. v. Montenez*,
    458 F.3d 779 (8th Cir. 2006)..................................................................... 15

*Freeman v. Graves*,
    317 F.3d 898 (8th Cir. 2003).................................................................. 7, 8

*Hickman v. State of Mo.*,
    144 F.3d 1141 (8th Cir. 1998)................................................................... 10

*Hurrell-Harring v. State of N.Y.*,
    914 N.Y.S.2d 367 (N.Y. App. Div. 2011) ................................................ 8

*In re Milk Prods. Antitrust Litig.*,
    195 F.3d 430 (8th Cir. 1999)....................................................................... 9

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005).................................................................... 3

*In re Texas Prison Litigation*,
    191 FRD 164 (W.D. Mo. 1999).................................................................. 13

*Labrier v. State Farm Fire & Cas. Co.*,
    315 F.R.D. 503 (W.D. Mo. 2016)............................................................... 9

*Lockhart v. Fretwell*,
    506 U.S. 364 (1993) ..................................................................................... 6

*Rivera v. Rowland*,

Case 2:17-cv-04057-NKL   Document 62   Filed 07/06/17   Page 3 of 21

No. CV95545629, 1996 WL 677452 (Conn. Sup. Ct. Nov. 8, 1996) ......... 8

*Smith v. ConocoPhillips Pipe Line Co.*,
    801 F.3d 921 (8th Cir. 2015) .................................................................. 2

*Strickland v. Washington*,
    466 U.S. 668 (1984) ...................................................................... 7

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006) ...................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................... 1, 2, 3, 4, 8

*Webb v. Exxon Mobil Corp.*,
    856 F.3d 1150 (8th Cir. 2017) .................................................. 3

*Wilbur v. City of Mt. Vernon*,
    298 F.R.D. 665 (W.D. Wash. 2012) ......................................... 8

## OTHER AUTHORITIES

Advisory Committee Notes,
    (1966 Amendment), 39 F.R.D. 69 .......................................... 15

Class Certification in the Age of Aggregate Proof,
    84 N.Y.U.L. Rev. 97 (2009) ................................................. 4, 5, 6

iii

# I. INTRODUCTION

Plaintiffs ask this Court to certify a class comprising *all* indigent criminal defendants in the State of Missouri charged with *any* offense that could result in some form of confinement, and who are eligible to be represented by the Missouri State Public Defender program ("MSPD"). According to Plaintiffs, certification of that sprawling class is necessary to remedy "systemic" problems with MSPD caused by a "common policy" of underfunding MSPD that forces "massive workloads" on public defenders. By attempting to use this lawsuit to reset public policy, Plaintiffs push the class action device too far on several fronts.

*First*, there are no legally sufficient common questions of law or fact to bind the class together. Commonality requires a showing that resolution of a common contention will "resolve an issue that is central to the validity of each one of the [class] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs argue that a determination that the MSPD program is underfunded, and that its lawyers are overworked, *necessarily* means that all indigent defendants being served by MSPD receive constitutionally inadequate assistance. That reasoning is intuitively incorrect—MSPD has not rendered constitutionally infirm assistance in 100 percent of its cases—and there is no evidence to support it.

1

*Second,* the proposed class representatives are neither typical of the class, nor are they adequate to represent the class. Three of the named Plaintiffs have entered guilty pleas and are no longer members of the putative class. The remaining two named Plaintiffs, in turn, are uniquely situated—one is being represented by the District Defender in a first-degree murder proceeding, while the other is mentally disabled—such that their claims are atypical.

*Third,* the proposed class fails to fit within any of the Rule 23(b) categories. It is not cohesive enough to merit certification under Rule 23(b)(2) and it is not the type of narrow limited fund class amenable to certification under Rule 23(b)(1)(B).

## II. LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 348. A district court must undertake a "rigorous analysis" to ensure that all of the Rule 23 requirements have been satisfied. *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015). The plaintiff carries "the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994).

To carry its burden, the plaintiff "must meet all of the requirements of

2

Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). A plaintiff must meet all four threshold requirements of Rule 23(a): "numerosity, commonality, typicality, and adequacy." *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1155 (8th Cir. 2017). Once all of those requirements are satisfied, "the proposed class must also fit within 'one of the three subsections of Rule 23(b).'" *Id.* (quoting *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016)).

Critically, it is not sufficient for a plaintiff merely to plead the elements of Rule 23. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Rather, "a party seeking class certification must *affirmatively demonstrate* his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis added). Accordingly, it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.*

## III. ARGUMENT

### A. Plaintiffs have failed to satisfy Rule 23(a)'s commonality, typicality, and adequacy requirements.

#### i. Plaintiffs fail to satisfy Rule 23(a)(2)'s commonality requirement because the questions they raise cannot generate common answers as to whether they were denied effective assistance of counsel.

Plaintiffs argue that Missouri underfunds its public defender system,

resulting in excessive workloads for public defenders who, as a result, are unable to provide constitutionally adequate representation to each of their respective clients. According to Plaintiffs, the "overriding question" posed by this state of affairs is "whether the State has met its obligation to provide counsel," and this question, in turn, may be broken into "sub-questions" capable of common answers. Suggestions in Support of Plaintiffs' Motion to Certify a Class Pursuant to FRCP 2 (ECF 53) at 7. None of this warrants class certification because the questions Plaintiffs pose will not produce common answers that will, in turn, determine key issues pertinent to the class claims.

Every class complaint—including Plaintiff's complaint—raises common questions. But merely raising common questions—"even in droves"—is not enough: "rather the capacity of a classwide proceeding to generate common *answers* to drive the resolution of the litigation" is what counts. *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 131-132 (2009)). Thus, to merit certification, class claims "must depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

4

Plaintiffs fail these basic tests at every turn. Even if MSPD is underfunded and its lawyers overworked, there is no reason to think that those conditions necessarily result in each and every client of MSPD receiving constitutionally inadequate assistance in violation of the Sixth Amendment. Moreover, it is not enough for Plaintiffs to merely assume or infer this relationship, as "Rule 23 does not set forth a mere pleading standard," but rather requires proof. *Id.* Plaintiffs have none, and the proof that does exist in the record shows that many indigent criminal defendants in Missouri are likely receiving more than constitutionally adequate assistance from MSPD's lawyers. For instance, in fiscal year 2016 alone, Missouri appropriated $36,422,010.00 to the MSPD for a total of 585.13 full time equivalent (FTE) employees. State of Missouri Public Defender Commission, Fiscal Year 2016 Annual Report at 10, available at https://archive.org/details/2016mopubicdefenderannrpt.

Similarly, Plaintiffs emphasize that the State of Missouri only spends an average of $356 per case. But in two of Missouri's largest locations, the average cost per assigned case is much higher than the state average. For example, in Kansas City, the average cost per assigned case in 2016 was $566.69, or 173% of the State average. Similarly, in St. Louis City, the average cost per assigned case was $525.00. Even some smaller communities fare better: Kirksville spent $439.77 per assigned case in 2016. Presenting

5

these costs as averages is somewhat misleading. Only half of MSPD's caseload in 2016 was felony matters. Roughly one quarter of the cases were probation violations and more than 20 percent were misdemeanors. By averaging all case types for the entire year, it gives the impression that more money is spent on less challenging matters and less money is spent for more complicated felony cases. *Id.* at 14.

Plaintiffs' inability to demonstrate that an underfunded and overworked MSPD necessarily produces ineffective assistance to class members means that commonality simply does not exist, as commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc.,* 564 U.S. at 350. But even beyond Plaintiffs' evidentiary failings, the legal concept of ineffective assistance militates against collective proof. A Sixth Amendment violation "is not 'complete' until the defendant is prejudiced." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006). As a practical matter, prejudice occurs when a defendant has been found guilty of the offense charged. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (finding that "[i]neffective-assistance-of-counsel claims will be raised only in those cases where a defendant has been found guilty of the offense charged"). By definition, members of the putative class are "under formal charge in state court" and have not yet pled guilty or suffered an adverse jury verdict. Thus, regardless of whether the MSPD is

6

underfunded and overworked, *none of the putative class members* have been prejudiced to the degree necessary to suffer a Sixth Amendment violation because none of them have pled guilty or been convicted of a crime (and if they have, like three of the named Plaintiffs, they are no longer members of the class).

This holds true even with respect to those limited circumstances where prejudice to a criminal defendant may be presumed. Those include instances where (1) "assistance of counsel has been denied completely," *Freeman v. Graves*, 317 F.3d 898, 900 (8th Cir. 2003); (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," *id.*; (3) "counsel is denied during a critical stage of the proceedings," *id.*; and (4) "counsel is burdened by an actual conflict of interest," *Strickland v. Washington*, 466 U.S. 668, 692 (1984). But even those limited circumstances assume the fact of a conviction. *See* Reply Suggestions in Support of Motions to Dismiss Under Rules 12(b)(1) and 12(b)(6) of Defendants State of Missouri and Governor Eric Greitens (ECF 49) at 8-10. And even if a conviction were not required, Plaintiffs have produced no evidence that an underfunded and overworked MSPD will *completely* fail to provide class members legal assistance; or will *entirely* fail to subject prosecutor's cases against class members to meaningful adversarial testing; or will *uniformly* deny class members representation at critical stages of their cases; or will *consistently*

7

engage in conflicted representations.[1]

In short, Plaintiffs simply cannot bridge the "conceptual gap" between their contention that Missouri underfunds the MSPD, and their allegation that every putative class member has suffered a common injury of inadequate assistance of counsel as a result. *See Wal-Mart Stores, Inc.*, 564 U.S. at 353 (finding that, to establish commonality, plaintiffs needed to identify a common policy followed by Wal-Mart that, if proved, would lead to a finding that Wal-Mart employees suffered a common injury of employment discrimination). Accordingly, their motion for class certification should be denied.[2]

---

[1] Plaintiffs' view that triaging cases to balance competing demands produces an actual conflict between clients stretches the concept past its breaking point. The Eighth Circuit has noted that "[t]he Supreme Court has applied the presumption-of-prejudice exception to *Strickland* in very few cases, most of them apparently involving active representation of conflicting interests." *Freeman*, 317 F.3d at 900 (internal quotes and citation omitted). A finding that the mere balancing of competing case demands, taken alone, is equivalent to "active representation of conflicting interests" would have substantial implications for the legal community that would stretch far beyond this case.

[2] The cases Plaintiffs cite to support their commonality argument are inapposite. Two are state court cases in which *Wal-Mart Stores, Inc. v. Dukes* is not the controlling law. *See Hurrell-Harring v. State of N.Y.*, 914 N.Y.S.2d 367 (N.Y. App. Div. 2011); *Rivera v. Rowland*, No. CV95545629, 1996 WL 677452 (Conn. Sup. Ct. Nov. 8, 1996). And the third merely cites *Wal-Mart Stores, Inc. v. Dukes* in passing and offers no substantive discussion of analysis of its tenets. *See Wilbur v. City of Mt. Vernon*, 298 F.R.D. 665 (W.D. Wash. 2012).

8

### ii. All of the proposed class representatives are either atypical of the class or inadequate to represent the interests of the class.

Class certification also should be denied because none of the named Plaintiffs are both typical of the class and adequate class representatives as required by Rules 23(a)(3) and 23(a)(4). Three of the named Plaintiffs are no longer members of the putative class because their criminal charges have been resolved via pleas. Two, in turn, have claims that are not typical of the putative class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In determining typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). "A proposed representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999).

Similarly, to meet Rule 23(a)(4)'s adequacy requirement, each class representative's interests must be "sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Labrier v. State Farm Fire & Cas. Co.*, 315 F.R.D. 503, 515 (W.D. Mo. 2016) (quoting

9

*Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004)) (internal quotes omitted).  This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 5211 U.S. 591, 625 (1997)).

> ### 1. Plaintiffs Church, Samuels, and Richman are not even members of the putative class because none of them are currently facing a pending criminal charge.

Plaintiffs' proposed class includes indigent defendants facing a pending criminal charge during the pendency of this lawsuit.  It does not include those whose claims have been resolved, whether by plea or adjudication.  As a result, three of the named plaintiffs are no longer members of the proposed class, and are not able to represent it.  *Hickman v. State of Mo.*, 144 F.3d 1141, 1142 (8th Cir. 1998).

- On November 21, 2016, Shondel Church pled guilty to a charge of stealing.  *See* Case Docket, *State v. Shondel Clint Church*, Case No. 16LF-CR00529.

- Similarly, Dorian Samuels entered a plea of guilty on May 22, 2017.  *See* Case Docket, *State v. Dorian T. Samuels*, Case No. 16AO-CR00722-01.

- Finally, Brian Richman entered a guilty plea to drug-related crimes on April 6, 2017.  *See* Case Docket, *State v. Brian Andrew Richman*, Case No. 16CT-CR01306-01.

10

Not only are these named Plaintiffs no longer facing a pending criminal charge, all three were required to be examined under oath concerning the adequacy and effectiveness of the representation from their appointed counsel. Missouri Supreme Court Rule 29.07(b)(4) requires sentencing judges to "examine the defendant as to the assistance of counsel received by the defendant." Accordingly, in addition to being legally unable to represent the proposed class, these Plaintiffs would likely be subject to unique defenses based on their plea colloquies should they be allowed to serve as class counsel.

> **2. The remaining Plaintiffs, Viola Bowman and Randall Lee Dalton, have claims that are not typical of the putative class members.**

Plaintiff Viola Bowman's claims are atypical because she is being represented in her first-degree murder case by the District Defender, the supervising attorney for her particular district. Plaintiffs charge that due to an alleged lack of funding, public defender turnover is high and that new attorneys are not adequately trained or supervised. However, Mrs. Bowman is being represented by the managing attorney charged with providing training and supervision to the defenders in his district.

Moreover, it is unclear whether her claims are still pending. According to the petition, her primary complaint is that she remains in jail on a $1 million bond. The petition suggests that Bowman remains in jail "because she

was not accompanied by counsel" at the arraignment and was therefore unable to "advocate for a reduction in her bond amount." Class Action Petition for Injunction and Declaratory Relief, (ECF 1-2) at 41. However, on May 29, 2015, her court-appointed public defender filed a Motion for Release on Own Recognizance or, in the Alternative, Reduction of Bond. *See* Docket Sheet, *State v. Viola Bowman*, Case No.: 15CY-CR00043. The state trial judge denied the request. *Id.* A second motion requesting release or a bond reduction was filed on September 23, 2016. *Id.* Again, the trial court denied the request. *Id.* So, while Mrs. Bowman has been in jail since her arrest, her continued incarceration appears to be the result of the trial judge's discretion in light of the facts of her case and not the result of a lack of advocacy from her appointed counsel.

Similarly, Plaintiff Randall Lee Dalton's claims are atypical because he is a physically disabled, mentally impaired man. According to the allegations in the petition, Mr. Dalton was unable to advocate for himself, it was his sister who alerted the public defender, the prosecutor, and the court to his "limited functioning, ongoing mental health issues, and immediate need for medication." ECF 1-2. At 34-36. With these types of challenges, it seems unlikely he could serve as the class representative and Plaintiffs fail to address this issue. Moreover, Mr. Dalton has recently been released on a

recognizance bond and placed in a residential treatment facility. Accordingly, he likewise may have no live claim for ineffective assistance.

**B.   Plaintiffs likewise fail to meet the requirements of Rule 23(b).**

**i.   Plaintiffs fail to satisfy Rule 23(b)(2) because the proposed class is not cohesive.**

Rule 23(b)(2) applies where "final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Cohesiveness is the touchstone of a (b)(2) class." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016). Because (b)(2) class members are not permitted to opt out, the "cohesiveness requirement of Rule 23(b)(2) is more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)." *Id.* "To meet the requirements of subsection (b)(2), the putative class must demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in subsequent application of the principles of *res judicata*." *In re Texas Prison Litigation*, 191 FRD 164, 178-79 (W.D. Mo. 1999).

Plaintiffs' proposed class is hardly cohesive.   It includes persons charged with everything from first degree murder to passing bad checks and causing personal injury while boating while intoxicated.   It encompasses persons who eagerly accept the services of the MSPD, and those who insist

13

upon representing themselves. It contains persons who receive substantial time and attention from their public defenders, and those who receive far less. There is no certainty that a single injunction—whether ordering additional funding for the MSPD, monitoring, or some other relief—will benefit all class members equally if at all. Yet because all class members, however, unequally positioned, would be bound without the option to opt-out, and their ability to bring an ineffective assistance claim of their own in the future to seek relief tailored to them would be barred.

### ii. Plaintiffs do not allege a "common fund" class under Rule 23(b)(1)(B).

Under Rule 23(b)(1)(B), class certification is appropriate where separate actions by individual class members "would be dispositive of the interests of the other members" or "would substantially impair or impede their ability to protect their interests." Fed. R. 23(b)(1)(B). Plaintiffs also urge certification under Rule 23(b)(1)(B), which applies only in narrow circumstances.

> [The rule] takes in situations where the judgment in a non-class action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit ... [This] reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a

14

> large class of security holders or other beneficiaries,
> and which requires an accounting or like measures to
> restore the subject of the trust.

Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee Notes (1966 Amendment), 39 F.R.D. 69, 100-01. The rule is intended to apply "when claims are made by numerous persons against a fund insufficient to satisfy all claims." *Id.*

Those circumstances do not pertain here: there is no "limited fund" of public defenders, and resolution of one indigent defendant's inadequate assistance claim would not preclude others from seeking similar relief, either legally or practically. Unlike a true "limited fund," the supply of public defenders can be expanded and replenished by the Legislature—indeed, both appropriations and total FTEs have grown substantial from $13,770,464 and 410.38 FTEs in fiscal year 1994 to $36,422,010 and 585.13 FTEs in fiscal year 2016. State of Missouri Public Defender Commission, Fiscal Year 2016 Annual Report at 10. Moreover, to the extent Plaintiffs ask this Court to blaze a new trail in Rule 23(b)(1)(B) doctrine, the Supreme Court has "cautioned against 'adventurous application of Rule 23(b)(1)(B).'" *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 n.3 (8th Cir. 2006).

## IV. CONCLUSION

Plaintiffs' shallow and unsupported arguments in favor of class certification fall short of the standards required by Rule 23. They have failed

15

to meet their burden; therefore, this Court should deny Plaintiffs' Motion to Certify a Class.

Respectfully submitted,

JOSHUA D. HAWLEY
Attorney General

*/s/ Laura E. Elsbury*
Assistant Attorney General
Missouri Bar No. 60854
P.O. Box 899
Jefferson City, MO 65102
Phone (573) 751-8795
Fax (573) 751-9456
Laura.Elsbury@ago.mo.gov

ATTORNEYS FOR DEFENDANTS
STATE OF MISSOURI AND
GOVERNOR ERIC GREITENS

**CERTIFICATE OF SERVICE**

A copy of the foregoing was filed and served by the courts CM/ECF

filing system on all parties of record on the 6th day of July, 2017.

/s/ Laura E. Elsbury
Assistant Attorney General

17