**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| SHONDEL CHURCH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-04057-CV-C-NKL |
| | ) | |
| STATE OF MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN OPPOSITION TO THE STATE DEFENDANTS'**
**MOTION TO STAY**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. STATEMENT OF FACTS ...................................................................................2

    A. The State Defendants' Litigation of This Case ............................................2

    B. The Worsening Sixth Amendment Crisis in Missouri ..................................3

III. ARGUMENT .......................................................................................................5

    A. This Court May Continue to Exercise Jurisdiction Over This Case ..............5

        1. The State Defendants have waived any right to pretrial immunity from suit in this case ........................................................................ 5

        2. No authority holds that the State Defendants' appeal does (or should) divest this Court of jurisdiction to consider Plaintiffs' constitutional claims for prospective relief ............................................................. 9

    B. The State Defendants Have Failed to Show That They Are Entitled to a Discretionary Stay ....................................................................................11

        1. The State Defendants are unlikely to succeed on the merits ................. 12

        2. The State Defendants will suffer no irreparable injury if the case proceeds .......... 13

        3. A stay will cause substantial harm to the other parties and the public interest ...... 14

IV. CONCLUSION ................................................................................................15

Case 2:17-cv-04057-NKL   Document 142   Filed 02/01/18   Page 2 of 21

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abel v. Miller,*
904 F.2d 394 (7th Cir. 1990) ....................................................................8

*Apostol v. Gallion,*
870 F.2d 1335 (7th Cir. 1989) ...............................................................6, 7

*Chuman v. Wright,*
960 F.2d 104 (9th Cir. 1992) ....................................................................6

*Dickerson by Stephens v. McClellan,*
No. 94-5206, 1994 U.S. App. LEXIS 28758 (6th Cir. Oct. 14, 1994) ..................10

*Goshtasby v. Bd. of Trs. of the Univ. of Ill.,*
123 F.3d 427 (7th Cir. 1997) ..................................................................10

*Guzman-Rivera v. Rivera-Cruz,*
98 F.3d 664 (1st Cir. 1996)......................................................................8

*James River Flood Control Ass'n v. Watt,*
680 F.2d 543 (8th Cir. 1982) ..................................................................11

*Johnson v. Hay,*
931 F.2d 456 (8th Cir. 1991) ....................................................................9

*Kennedy v. City of Cleveland,*
797 F.2d 297 (6th Cir. 1986) ....................................................................6

*Kentucky v. Graham*, 473 U.S. 159, 167 (1985)........................................................13

*O'Keefe v. Schmitz,*
No. 14-C-139, 2014 U.S. Dist. LEXIS 60595 (E.D. Wis. May 1, 2014) ...............10

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
506 U.S. 139 (1993)................................................................................6

*Phelps-Roper v. Nixon,*
545 F.3d 685 (8th Cir. 2008) ..................................................................15

*Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012)............................................15

*Rigdon v. State Bd. of Regents,*
594 F. Supp. 2d 1312 (S.D. Ga. 2008).....................................................6, 7

Case 2:17-cv-04057-NKL   Document 142   Filed 02/01/18   Page 3 of 21

*Roach v. Stouffer*,
    560 F.3d 860 (8th Cir. 2009) ...................................................................13

*Root v. Liberty Emergency Physicians, Inc.*,
    68 F. Supp. 2d 1086 (W.D. Mo. 1999) .......................................................11

*Stanley v. Magrath*,
    719 F.2d 279 (8th Cir. 1983) .....................................................................10

*Stewart v. Donges*,
    915 F.2d 572 (10th Cir. 1990) ...................................................................10

*Twin Cities Galleries, LLC v. Media Arts Grp., Inc.*,
    431 F. Supp. 2d 980 (D. Minn. 2006)..........................................................12

*Ungar v. PLO*,
    402 F.3d 274 (1st Cir. 2005) .......................................................................8

*Van Buren v. Crawford Cty.*,
    No. 13-cv-14565, 2017 U.S. Dist. LEXIS 56380 (E.D. Mich. Apr. 13, 2017) ...................7, 8

*Vidmar v. City of Chi. Bd. of Educ.*,
    No. 98 C 0951, 1999 U.S. Dist. LEXIS 9006 (N.D. Ill. June 4, 1999) ...................................6

*Williams v. Brooks*,
    996 F.2d 728 (5th Cir. 1993) .....................................................................10

*Yates v. City of Cleveland*,
    941 F.2d 444 (6th Cir. 1991) .......................................................................8

**State Cases**

*Wyman v. Mo. Dep't of Mental Health*,
    376 S.W.3d 16 (Mo. Ct. App. 2012).............................................................12

**State Statutes**

Mo. Rev. Stat. § 537.600 ...............................................................................11

## I.      INTRODUCTION

Defendants Missouri and Governor Greitens' (the "State Defendants") motion to stay is a last ditch effort by the State Defendants to divert the Court's attention away from the widespread Sixth Amendment violations occurring in Missouri on a daily basis.  The State Defendants' immunity appeal has been pending for over five months, and nearly a year's worth of discovery is now complete.  Only now, just as dispositive motions are being prepared for this Court's consideration, do the State Defendants seek to cash in on their supposed right to pretrial immunity from suit.  The Plaintiffs in this case, and the putative class they represent, should not be required to wait further for their constitutional rights to be vindicated.

The State Defendants fail to show any entitlement to a stay.  Even if the State Defendants were entitled, at some point, to preserve their pretrial immunity pending appeal (and they were not), they have waived that right through their excessive delay in asserting it, as well as their affirmative litigation conduct in actively engaging in discovery.  Indeed, in their Motion for Realignment filed on the same day, the State Defendants ridicule Defendants Barrett, Bock, Jackson, Chval, and Hogan (the "MSPD Defendants") for their supposed failure to litigate this case.  If State Defendants win their appeal, they may be dismissed from this case.  But the State Defendants cannot willingly litigate this case through the close of fact discovery and then attempt to wield their alleged right to *pretrial* immunity as a last-minute trump card.

The State Defendants' request for a discretionary stay is similarly meritless.  Each of the factors this Court must consider in deciding whether to grant a stay (none of which are addressed by the State Defendants' brief) favors moving forward to dispositive briefing and trial.  Most notably, a stay of this case will cause substantial harm to the named Plaintiffs and the putative class.  Since the Plaintiffs filed this lawsuit in March 2017, the Sixth Amendment crisis in Missouri has only gotten worse, with hundreds of indigent defendants being made to languish in

jail on a "waitlist" before they can receive a public defender's attention. The Defendants' dereliction of their constitutional duty has already forced these Plaintiffs to wait too long for their day in criminal court. They should not be made to wait for their vindication here as well.

## II.    STATEMENT OF FACTS

Plaintiffs Randall Lee Dalton, Dorian Samuels, Viola Bowman, Brian Richman, and other similarly-situated indigent criminal defendants ("Plaintiffs") brought this case against the State of Missouri, Governor Eric Greitens, and several officials of Missouri's State Public Defender Office seeking prospective relief to require the State of Missouri to remedy the systemic crisis of Sixth Amendment violations caused by their failure to provide adequate representation for indigent defendants. Class Action Petition, ECF No. 1-2. Discovery has ended and Plaintiffs are preparing to present the merits of their case to the Court. Dispositive motions are currently due by February 9, 2018, and trial is scheduled for May 16, 2018.

### A.    The State Defendants' Litigation of This Case

On April 21, 2017, the State Defendants twice moved to dismiss the petition, arguing that (1) the State and the Governor are protected by Missouri's sovereign immunity, (2) Governor Greitens is not an appropriate defendant under *Ex Parte Young*, and (3) Governor Greitens' actions are protected by the doctrine of legislative immunity. *See* ECF No. 19 (arguing sovereign immunity for both State Defendants); ECF No. 21 (arguing legislative immunity).

On July 24, 2017, this Court rejected the State Defendants' immunity arguments. ECF No. 69. The State Defendants appealed that decision nearly four weeks later on August 18, 2017. ECF No. 70. The State Defendants did not move for a stay. Instead, they proceeded to engage in litigation of this case. During the five-month period since their appeal was docketed, the State Defendants have propounded interrogatories and requests for production on both Plaintiffs and the MSPD Defendants, responded to Plaintiffs' requests for admission and

interrogatories, attended a mediation, participated in nearly 20 depositions, and otherwise

conferred with the other parties regarding briefing and discovery deadlines.

The State Defendants were not a passive participant in discovery. In addition to the

written document requests and interrogatories they propounded, counsel for the State Defendants

cross-examined every deponent during depositions noticed by Plaintiffs, in one instance

extending the proceedings to require a second day of examination. Ex. A (Emails between J.

Williamson, Senior Staff Attorney, ACLU and J. Shipma, General Counsel, MSPD (Dec. 19,

2017)).[1] The State Defendants sought multiple extensions from Plaintiffs to consider filing an

expert report. ECF No. 130 at 2. And just 11 days before discovery closed, the State Defendants

noticed four depositions of their own, including one 30(b)(6) deposition, that necessitated

allowing additional depositions after the December 22, 2017 deadline. ECF No. 79.

The State Defendants reached the end of the discovery period without taking any action

to preserve their potential pretrial immunity. They first expressed desire to seek a formal stay of

this case on January 5, 2018, two weeks after the December 22, 2017 formal close of discovery,

and after the parties had begun proceeding with the State Defendants' late-noticed depositions.

Ex. B (Emails between L. Elsbury, A.G., Missouri, and J. Williamson, Senior Staff Attorney,

ACLU (Dec. 18, 2017 - Jan. 5, 2018)) at 1. Apparently in no hurry, the State Defendants did not

file this motion until two weeks later, a full five months after their appeal was docketed.

**B.      The Worsening Sixth Amendment Crisis in Missouri**

As explained in more detail in Plaintiffs' Class Action Petition for Injunctive and

Declaratory Relief, Missouri's public defender system is in shambles. ECF No. 1-2. The State's

public defender system is severely underfunded, spending an average of only $356 per case. *Id.*

---

[1] All cited exhibits are attached to the Declaration of Anthony Rothert, filed herewith.

¶ 38.  Its funding problems have been compounded by the current and former governors, who have consistently withdrawn funds allocated to public defense by the state legislature.  *Id*. ¶ 44.  Moreover, several studies have found that Missouri public defenders have long had workloads that are far beyond capacity, and thus they cannot provide constitutionally adequate representation to all their clients.  *Id*. ¶¶ 47-67.  As a result, many indigent defendants are left waiting in jail for their public defenders to find the time to counsel them, investigate their cases, and prepare for trial—only to then receive inadequate assistance.  *Id*. ¶¶ 68-78.

Since the Plaintiffs' petition was filed, the severity of Sixth Amendment violations in Missouri has reached a crisis point.  In September of 2017, the Missouri Supreme Court suspended the law license of Karl William Hinkebein, a senior public defender, ruling that he had repeatedly failed to provide adequate counsel to his indigent clients, and that he had violated the Rules of Professional Conduct.  *In re Hinkebein*, SC96089, (Mo. banc, September 12, 2017).

In the wake of this decision, Missouri's public defenders, justifiably fearful of losing their law licenses, have scrambled to reduce their caseloads by any means necessary, including at the further expense of Plaintiffs and the putative class they represent.  *See generally* Ex. C (*Many Missouri Public Defenders Decline New Cases After State Supreme Court Disciplines Lawyer*, KCUR (Oct. 6, 2017)).  Public defender offices across the state have begun establishing waitlists for indigent clients, which has affected hundreds, if not thousands, of indigent defendants.  *See* Exs. D (Crowell Dep.) at 26:3-18; E (Cardarella Dep.) at 181:11-19; F (Petsch Dep.) at 126:5-127:15.  As a result, many indigent defendants currently sit in pretrial detention, having been appointed counsel, but without the ability to seek guidance from that attorney or otherwise receive any assistance with their case, unless and until a public defender becomes available to represent them.  Some public defenders have resigned rather than risk their law licenses.  *See*

4

Exs. D (Crowell Dep.) at 95:24-96:14; G (Carver Dep.) at 167:13-169:11.  Others have written to judges explaining their inability to take on additional cases, (*see, e.g.*, Ex. H, Email from R.Hakathorn, District Defender, MSPD, to Area Judges), or have filed motions to withdraw (*see, e.g.*, Ex. I, Motion to Withdraw, Nov. 6, 2017 (MSPD-0039720 – 0039725)).  Still others have self-reported to the Office of the Chief Disciplinary Counsel in an effort to be transparent about their inability to satisfy both the Rules of Professional Conduct *and* the courts' orders appointing them to represent indigent defendants.  *See* Ex. F (Petsch Dep.) at 139:3-140:16

III.   **ARGUMENT**

   A.   **This Court May Continue to Exercise Jurisdiction Over This Case.**

This Court can and should retain jurisdiction despite the State Defendants' interlocutory appeal and belated request to stay this case.  As the Supreme Court and several courts around the country have reiterated, an appeal of immunity only divests courts of jurisdiction if the right to pretrial immunity has not been waived.  Here, the State Defendants' have repeatedly waived any potential right to argue that this Court has lost jurisdiction by actively participating in every aspect of this litigation, from depositions to document requests to mediation, and by waiting until after the close of fact discovery and the eve of dispositive motions to raise the argument.  Setting aside the State Defendants' waiver, their jurisdictional argument also fails because they cite no authority dictating that an interlocutory appeal divests the Court of jurisdiction to decide a case seeking prospective relief for constitutional violations rather than mere money damages.  The State Defendants' authority is inapplicable, and this Court's jurisdiction remains intact.

   1.   **The State Defendants have waived any right to pretrial immunity from suit in this case.**

The State Defendants' first submit that their appeal must preserved their potential right of pretrial immunity from suit by stripping this Court of jurisdiction to proceed.  But the right to

pretrial immunity from suit (as opposed to the right to be ultimately immune from liability) is not absolute. Even if the State Defendants' appeal could deprive this Court of jurisdiction (it can't, *see* § III.A.2, *infra*), the Court can (and should) retain jurisdiction where, as here, the State Defendants waived their *pretrial* immunity rights. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (explaining that the right to interlocutory appeal of Eleventh Amendment immunity defenses exists only "[a]bsent waiver"); *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) ("Defendants may waive or forfeit their right not to be tried"). Defendants who "wait too long" or "use claims of immunity in a manipulative fashion . . . surrender any entitlement" to pretrial immunity from suit. *Apostol*, 870 F.2d at 1339; *see also Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (stating that an interlocutory appeal of qualified immunity will not divest the district court of jurisdiction where such protections have been waived). Failure to timely seek a stay pending an interlocutory appeal on immunity grounds waives any right to pretrial immunity from suit. *Vidmar v. City of Chi. Bd. of Educ.*, No. 98 C 0951, 1999 U.S. Dist. LEXIS 9006, at *10 n.2 (N.D. Ill. June 4, 1999) (explaining that "a stay also may be denied where the defendant has waived or forfeited the right by waiting too long") (citing *Apostol*, 870 F.2d at 1339). Put simply, the "right to be free of subjection to trial or, before that, to the burdens of discovery" is "one which can be lost by failure timely to assert it." *Kennedy v. City of Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986).

The State Defendants' conduct in this case amounts to waiver. The State Defendants appeal has been docketed since August, 2017. Yet, they delayed this motion until January 18, 2018 (ECF. No. 133), two weeks after the formal end of fact discovery on December 22, 2017, a week after the date of their last scheduled deposition on January 11, a full five months after their appeal was docketed, and only two weeks prior to the dispositive motions deadline. *See Rigdon*

6

*v. State Bd. of Regents*, 594 F. Supp. 2d 1312, 1319 (S.D. Ga. 2008) (denying a motion to stay decided nearly six months after the appeal was docketed, and finding a defendant waived its right to pretrial immunity from suit due to delay in filing opening appellate brief).

In the interim, defying any intention of preserving their pretrial immunity from suit, the State Defendants fully engaged in litigating this case despite the pendency of their appeal. They answered Plaintiffs' complaint on November 9, 2017 and proceeded to willingly participate in fact and expert discovery for the entire period proscribed by this Court's scheduling order. ECF No. 94 (answer); ECF No. 79 (operative scheduling order). They propounded interrogatories and requests for production on both Plaintiffs and their co-defendants. They responded to Plaintiffs' requests for admission and interrogatories, and attended a mediation session on September 15, 2017. They requested and received multiple extensions from Plaintiffs to consider disclosing a potential expert witness. They also participated in nearly 20 depositions. In all of the depositions Plaintiffs noticed, counsel for the State Defendants cross-examined the witness at some length. And the State Defendants noticed four of their own depositions shortly before the close the discovery period, requiring them to seek consent to conduct depositions out-of-time.

Accordingly, the State Defendants undisputedly have already surrendered the lion's share, if not all, of their alleged right to pretrial immunity from suit. By the time this motion is decided, the parties will have already completed discovery, prepared and served their expert reports, filed briefs in the State Defendants' interlocutory appeal, and potentially filed dispositive motions in this case. Given the substantial amount of litigating that has already occurred, it is simply too late to preserve the State Defendants' right to pretrial immunity from suit, and the added burden of requiring their continued participation in this case is negligible. *See Van Buren v. Crawford Cty.*, No. 13-cv-14565, 2017 U.S. Dist. LEXIS 56380, at *34 (E.D. Mich. Apr. 13,

7

2017) (refusing to stay a case pending a qualified immunity interlocutory appeal because proceeding would "be a relatively minor inconvenience compared to the expense already incurred while engaging in discovery" and litigating other aspects of the case).

The timing of this motion suggests that the State Defendants' sudden interest in their potential pretrial immunity is a tactic to prevent this Court from confronting the merits of this case. *See Yates v. City of Cleveland*, 941 F.2d 444, 449 (6th Cir. 1991) (suggesting that there was "considerable support" for a finding of waiver when defendant asserted pretrial immunity from suit on the eve of trial). Given how far this case has already progressed, the State Defendants' stay will accomplish little else. But the right to pretrial immunity from suit is not "a trump card that may be held in reserve until a defendant sees fit to play it, thus enabling the defendant to stop the litigation in its tracks at a time of its choosing." *Ungar v. PLO,* 402 F.3d 274, 293 (1st Cir. 2005). And the State Defendants offer no explanation for why they delayed seeking a stay until this Court was about to reach the merits of Plaintiffs' claims. *See Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 669 (1st Cir. 1996) (finding waiver where defendant offered no explanation for its failure to timely assert pretrial immunity). Indeed, during the January 19 telephone conference, the State Defendants' counsel represented to the Court that their decision to proceed with discovery and delay a stay was deliberate. The Court should not allow the State Defendants to tactically use their claim of pretrial immunity to postpone their day of reckoning. *Yates*, 941 F.2d at 448 (explaining that immunity should not be raised as a tactic to delay trial.)

Finding waiver is particularly warranted here, as "it is also important to curtail the outlay and delay of litigation, so that victims of official misconduct may receive the vindication that is their due." *Abel v. Miller*, 904 F.2d 394, 396 (7th Cir. 1990). Plaintiffs' counsel has invested substantial time and effort preparing this case for dispositive motions and trial. And while the

8

State Defendants sat and waited to assert their potential right to pretrial immunity from suit, the members of the Plaintiff putative class sat and waited in jail for their Sixth Amendment rights to be vindicated. Since this case was filed, the Sixth Amendment violations in Missouri have grown more severe. As explained in § II.B, *supra*, many public defenders have resigned, refused cases, or begun placing indigent defendants on massive waitlists, leaving even more indigent clients without representation. The need to remedy these constitutional violations far outweighs the slight benefit of preserving the vestiges of the State Defendants' alleged pretrial immunity.

2. **No authority holds that the State Defendants' appeal does (or should) divest this Court of jurisdiction to consider Plaintiffs' constitutional claims for prospective relief.**

Setting aside their clear waiver of any jurisdictional argument, the State Defendants also fail on the merits of that argument—they cite no authority for the prospect that an appeal of this sort *could* deprive this Court of jurisdiction, even if the argument were not waived. The State Defendants filed an interlocutory appeal asserting that (1) the State of Missouri is immune under Missouri's own state-law sovereign immunity, (2) Governor Greitens has immunity derived from that state-law sovereign immunity and does not fall within the exception to immunity established by *Ex Parte Young*, and (3) Governor Greitens has legislative immunity against the particular charges in this case.[2] But the only Eighth Circuit authority that the State Defendants identify pertains to the distinct defense of *qualified* immunity—a doctrine that, for starters, would not apply to Plaintiffs claims for prospective relief because qualified immunity only protects against *damages*. *See Johnson v. Hay*, 931 F.2d 456, 459 n.2 (8th Cir. 1991) (explaining, in a footnote, that a district court should stay its hand pending the appeal of a denied motion for summary

---

[2] By removing this case to federal court, the State has forfeited any Eleventh Amendment sovereign immunity.

judgement of qualified immunity).  The State Defendants' out-of-circuit cases likewise concern the application of other immunity doctrines to avoid damages.  *See Williams v. Brooks*, 996 F.2d 728, 729 (5th Cir. 1993) (jurisdiction divested in a case for damages by appeal taken based on Texas' "official immunity"); *Stewart v. Donges*, 915 F.2d 572, 573 (10th Cir. 1990) (jurisdiction divested by qualified immunity appeal); *Dickerson by Stephens v. McClellan*, No. 94-5206, 1994 U.S. App. LEXIS 28758, at *1 (6th Cir. Oct. 14, 1994) (qualified immunity); *Goshtasby v. Bd. of Trs. of the Univ. of Ill.*, 123 F.3d 427, 428 (7th Cir. 1997) (stay instituted pending Eleventh Amendment appeal of claims for damages and prospective relief against state institution).  None of the cases cited by State Defendants pertain to requests solely for prospective relief for constitutional violations, as is at issue here.  *Stanley v. Magrath*, 719 F.2d 279, 284 n.9 (8th Cir. 1983) (explaining that "[q]ualified immunity applies only to damages, not to equitable relief").

A court that did confront the applicability of divesture to immunity appeals concerning claims of constitutional violations, however, decided that the appeal did *not* divest its jurisdiction to proceed.  In *O'Keefe v. Schmitz*, a district court rejected the defendants' argument that defendants were immune because they did not fall within the *Ex Parte Young* exception from immunity.  No. 14-C-139, 2014 U.S. Dist. LEXIS 60595, at *2-3 (E.D. Wis. May 1, 2014).  The defendants sought to take an interlocutory appeal and obtain a stay of the case.  *Id*. at *2.  Like the State Defendants here, the *O'Keefe* defendants argued that the notice of appeal divested the district court of jurisdiction to proceed.  *Id*. at *4.  The court held that the entitlement to an interlocutory appeal (and thus the right to preserve the defendant's potential pretrial immunity from suit) did not apply when the plaintiffs had requested injunctive relief pertaining to continuing violations of the plaintiffs' constitutional rights (as opposed to damages).  *Id*. at *5-6.

The same result is warranted here. A stay pending the appeal of an action for damages is unlikely to cause prejudice. Although those cases may be delayed during the interlocutory appeal, the ultimate monetary award can be adjusted to account for that delay. Not so, however, in cases seeking to enjoin continuing constitutional violations. Each passing day risks additional indigent criminal defendants being irreparably deprived of their Sixth Amendment right to counsel. No post-judgment award can remedy the impact that delay will have on Plaintiffs.

For this reason, the district court cases cited in the State Defendants' brief are distinguishable. In *Root v. Liberty Emergency Physicians, Inc.*, the court stayed a district court proceeding pending an appeal concerning the defendant's claim of sovereign immunity. 68 F. Supp. 2d 1086, 1092 (W.D. Mo. 1999). The *Root* defendant claimed immunity specifically under Mo. Rev. Stat. § 537.600, which provides for limited immunity from suit against tort claims seeking *damages*. *Id.* at 1090. The stay in *Root* does not inform this Court's treatment of Plaintiffs' present action for injunctive relief. For the same reasons, the State Defendants' arbitration cases are even less on point. Mot. at 4 n. 3. Those cases address denials of motions to compel arbitration and do not involve continuing violations of constitutional rights and requests for prospective relief. Accordingly, neither these cases nor any other authority cited by the State Defendants supports their claim that this Court has lost jurisdiction of this case.

**B.      The State Defendants Have Failed to Show That They Are Entitled to a Discretionary Stay.**

The State Defendants also fail to establish that a discretionary stay is warranted here. Under Eighth Circuit law, "[t]he party seeking a stay pending appeal must show (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury unless the stay is granted; (3) that no substantial harm will come to other interested parties; and (4) that the stay will do no harm to the public interest." *James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th

Cir. 1982). As the moving party, the State Defendants "bear the burden to prove all four factors." *Twin Cities Galleries, LLC v. Media Arts Grp., Inc.*, 431 F. Supp. 2d 980, 983 (D. Minn. 2006). The State Defendants' two-paragraph argument fails to address most of these factors and, as such, fails to meet this burden. In fact, each factor disfavors granting a stay.

### 1. The State Defendants are unlikely to succeed on the merits

The State Defendants are not likely to succeed on the merits of their appeal. This Court has already correctly deemed the State Defendants' positions to be losing arguments. ECF No. 69. The State Defendants' first ground for appeal claims that the State and Governor Greitens are entitled to the benefit of Missouri's state sovereign immunity. But as this Court correctly decided, the State of Missouri has no sovereign immunity against claims for prospective relief. *See Id*. at 24-26. As this Court recognized, the court in *Wyman v. Mo. Dep't of Mental Health* held that when the "State violates some duty and obligation, a plaintiff may seek equitable relief against the State, even though the State may not be subject to the civil action for damages." *Id*. at 26 (citing *Wyman*, 376 S.W.3d 16, 24 (Mo. Ct. App. 2012) (internal quotation marks omitted).

The State Defendants' second ground for appeal alleges that Governor Greitens is entitled to immunity and is not a proper defendant under *Ex Parte Young*. This defense fails for the same reason, as any immunity claimed by Governor Greitens must be derived from the State's (inapplicable) sovereign immunity. Even if the State's immunity did apply, Governor Greitens is an appropriate *Ex Parte Young* defendant because he is closely connected to the constitutional violation as issue. As this Court already explained, the Governor has many responsibilities that relate to the criminal justice system and the systemic Sixth Amendment violations underway in his state. *Id*. at 30. Most directly, he has the power to withhold funds allocated by the Missouri legislature to partially alleviate the crisis—a power Governor Greitens and his predecessor have wielded consistently over the last several years. *Id*.

The State Defendants' third ground for appeal asserts Governor Greitens' "legislative immunity," and it is meritless. Plaintiffs have sued Governor Greitens in his official capacity as Governor of the State of Missouri. Legislative immunity "is a personal defense that is available only when officials are sued in their individual capacities; the immunities officials enjoy when sued personally do not extend to instances where they are sued in their official capacities." *Roach v. Stouffer*, 560 F.3d 860, 870 (8th Cir. 2009) (internal quotation marks omitted); *accord Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Moreover, as this Court correctly held, this issue is not ripe for decision. ECF No. 69 at 42-43.

**2. The State Defendants will suffer no irreparable injury if the case proceeds.**

Proceeding with this case will cause no undue prejudice to the State Defendants. The State Defendants argue that the parties will be harmed if they are "required to pursue their arguments with regard to the Eleventh Amendment and legislative immunity in two forums at the same time and in the face of inconsistent rulings." [3] This makes no sense. This Court has obviously already ruled on the immunity defenses at issue on appeal. There is no reason why the Court would need to revisit its legal determination on these issues when deciding dispositive motions or conducting a trial while the appeal is pending. The Court's forthcoming work in this case will instead involve legal questions about the scope of Sixth Amendment protections in this context and the appropriate remedy under the circumstances, and factual questions about the Defendants' failure to safeguard the Sixth Amendment rights of the Plaintiffs. These questions are not at issue in, and are entirely irrelevant to, the pending appeal. Deciding whether the State

---

[3] The State Defendants do not argue that their loss of pretrial immunity is an irreparable harm that could favor a discretionary stay. That loss, however, is the State Defendants' own doing and has thus been waived. *See* § III.A.1, *supra*.

Defendants should be enjoined from violating the constitutional rights of indigent defendants does not require this Court's adjudication to overlap or interfere with that of the Eighth Circuit.

The State Defendants also suggest that a stay will "prevent waste of resources" and "reduce uncertainty." Mot. at 5. Neither is true. Staying this case is likely to waste rather than preserve resources. If this case is stayed against the State Defendants, Plaintiffs' case nevertheless will proceed against the MSPD Defendants, who have not sought to stay these proceedings.[4] Accordingly, regardless of the State Defendants' appeal, the work of briefing dispositive motions and, if necessary, trying the factual issues will continue; in the likely event that the State Defendants' appeal fails, that work will need to be repeated, even though Plaintiffs' case against MSPD Defendants and Plaintiffs' case against State Defendants turns on the same legal and factual questions. Such waste substantially harms the Court and each of the parties.

A stay also does little to "reduce uncertainty." *Id.* The question of whether the State Defendants are immune is now before the Eighth Circuit and staying this case will do nothing to reveal how it intends to rule. The omnipresent uncertainty in litigation is hardly an "irreparable harm" that justifies delaying resolution of the State Defendants' constitutional violations.

### 3. A stay will cause substantial harm to the other parties and the public interest

In stark contrast to the lack of harm to expect from proceeding with this case, granting a stay will cause substantial harm to all involved. In reliance on this Court's appropriately rapid discovery, dispositive motion, and trial schedule, as well as the State Defendants' waiver of their right to pretrial immunity, Plaintiffs have chosen not to take steps to expedite the appeal or seek

---

[4] Defendants do not argue that the Plaintiffs' case against the MSPD Defendants should also be stayed. The State Defendants have moved to realign the MSPD Defendants as plaintiffs but, as explained in Plaintiffs opposition to that motion, their request is without merit.

a preliminary injunction despite the rapidly deteriorating situation on the ground in Missouri. Instead, Plaintiffs' counsel has spent an extraordinary amount of time, effort and resources preparing to present this Court with evidence in support of Plaintiffs' case. If a stay is granted, much of this work will become stale as conditions change and memories fade, particularly because the State Defendants' appeal may not conclude until 2019 or later. The State Defendants should be estopped from attempting to stall this proceeding at the eleventh hour.

Further, delaying resolution of this case will harm the public interest—"it is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012). But the harm will be most severely felt by the putative class members themselves. Plaintiffs and many putative class members remain incarcerated. For some, each day this case is delayed is another day they are forced to accept inadequate and under-resourced legal representation, if they have received any representation at all. For others, each day of delay brings them one day closer to being convicted in large measure because their severely overworked public defenders cannot possibly provide them with adequate assistance. Prompt intervention from this Court is urgently needed to ensure that the State Defendants do not disregard the constitutional rights of indigent Missourians any longer.

Because the State Defendants' motion makes no attempt to address each of the necessary factors to meet the legal test for a stay, and because, in any event, those factors disfavor a stay, the Court should decline to enter a discretionary stay here.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny the State Defendants' Motion to Stay in its entirety.

Dated: St. Louis, Missouri
       February 1, 2018


Respectfully submitted,

*/s/Anthony E. Rothert*
Anthony E. Rothert
Jessie Steffan
ACLU OF MISSOURI
    FOUNDATION
906 Olive Street
Suite 1130
St. Louis, MO  63101
(314) 652-3114

Jason D. Williamson
ACLU FOUNDATION
125 Broad Street
18th Floor
New York, NY  10004

Robert Sills
Aaron Scherzer
Matthew R. Shahabian
Camille J. Rosca
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

Will Melehani*
Evan Rose
Easha Anand
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105

James Maune
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA  92614

Amy Breihan
MACARTHUR JUSTICE CENTER
    AT ST. LOUIS
3115 South Grand Boulevard
Suite 300
St. Louis, MO  63118

Gillian Wilcox
ACLU OF MISSOURI FOUNDATION
406 West 34th Street
Suite 420
Kansas City, MO  64111

Anthony Tartaglio
Annie Prasad
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

*Pro hoc vice application pending

16

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served by operation of the Court CM/ECF system upon counsel for each of the Defendants on February 1, 2018.

ACLU OF MISSOURI FOUNDATION

/s/ Anthony E. Rothert
Anthony E. Rothert
Counsel for Plaintiffs