SHONDEL CHURCH, et al., )
)
        Plaintiffs, )
)
v. ) Case No. 17-04057-CV-C-NKL
)
STATE OF MISSOURI, et al., )
)
        Defendants. )

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION**
**TO THE STATE DEFENDANTS' MOTION FOR REALIGNMENT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................... 1

II. ARGUMENT ............................................................................................................... 1

    A. Realignment Is Improper Here Because Several Actual and Substantial Conflicts Exist Between the Plaintiffs and the MSPD Defendants ....................... 3

    B. The MSPD's Litigation Conduct Does Not Support Realignment of the Parties ................................................................................................................... 8

    C. The State Defendants' Motion for Realignment Is Untimely ............................. 10

III. CONCLUSION .......................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Am. Motorists Ins. Co. v. Trane Co.*,
    657 F.2d 146 (7th Cir. 1981) ..................................................................................2, 7, 10

*Barrett v. Greitens*,
    No. WD 80837, 2017 WL 6453618 (Mo. Ct. App. 2017) ......................................................5, 6

*City of Indianapolis v. Chase Nat'l Bank*,
    314 U.S. 63 (1941) ..................................................................................................................7, 8

*Clearwater Ins. Co. v. Doe Run Res. Corp.*,
    No. 4:16CV195 HEA, 2017 WL 840541 (E.D. Mo. Mar. 3, 2017) ..................................1, 2, 7

*Goodman v. McDonnell Douglas Corp.*,
    606 F.2d 800 (8th Cir. 1979) .....................................................................................................11

*Ishmon v. St. Louis Bd. of Police Comm'rs*,
    No. 4:11CV652 RWS, 2011 WL 2731219 (E.D. Mo. July 12, 2011) ...................................4, 6

*Niles-Bement-Pond Co. v. Iron Moulders' Union*,
    254 U.S. 77 (1920) .......................................................................................................................7

*Ryan ex rel. Ryan v. Schneider Nat'l. Carriers, Inc.*,
    263 F.3d 816 (8th Cir. 2001) .......................................................................................................7

*Thomson v. Butler*,
    136 F.2d 644 (8th Cir. 1943) .......................................................................................................7

*Universal Underwriters Ins. Co. v. Wagner*,
    367 F.2d 866 (8th Cir. 1966) ...........................................................................................1, 3, 6, 10

*Vitale v. Aetna Cas. & Sur. Co.*,
    814 F.2d 1242 (8th Cir. 1987) ...................................................................................................11

## I. INTRODUCTION

In a transparent attempt to mitigate one of the clear counterarguments against the State of Missouri and Governor Eric Greitens' ("the State Defendants") motion to stay (ECF No. 133), the State Defendants simultaneously moved to realign their co-defendants affiliated with the Missouri State Public Defender office (the "MSPD Defendants") as plaintiffs. As with their motion to stay, the State Defendants make this request way too late, which alone serves as grounds for denying it.

Further, this is not a case for realignment as that concept is understood in this Circuit. Whatever explanations the MSPD Defendants may offer for their inability to provide constitutionally adequate representation, Plaintiffs' maintain their claim that the MSPD Defendants have violated, and continue to violate, the constitutional rights of the named Plaintiffs and the putative class they represent. Likewise, Plaintiffs continue to seek prospective relief against the MSPD Defendants to end those violations. The applicable case law makes clear that the MSPD Defendants are not magically transformed into plaintiffs merely because they have correctly pointed out that the State Defendants are responsible for many of these problems. As such, the State Defendants' motion should be denied.

## II. ARGUMENT

As the State Defendants concede, the Eighth Circuit applies the "actual and substantial conflict test" applied in *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 871 (8th Cir. 1966), to determine whether realignment is appropriate in a given case. Mot. at 2-3. Under that test, realignment of parties is improper "if there is *any* actual and substantial conflict existing between those parties, *regardless of whether it concerns the primary issue in dispute*." *Clearwater Ins. Co. v. Doe Run Res. Corp.*, No. 4:16CV195 HEA, 2017 WL 840541, at *6 (E.D. Mo. Mar. 3, 2017) (emphasis added); *see also Wagner*, 367 F.2d at 871 (declining to grant

realignment when actual and substantial controversy existed concerning non-primary issue in suit).  Merely asserting that a defendant has "shared an interest with the plaintiff . . . [does] not require realignment of parties."  *Clearwater Ins. Co.*, 2017 WL 840541, at \*7 (explaining holding in *Wagner*); *c.f. Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 150 (7th Cir. 1981) ("It does not follow that a court must realign a party whenever it shares an interest with an opposing party in being dismissed from the action[.]").

The State Defendants' motion to realign amounts to a mere assertion that the MSPD Defendants and Plaintiffs have a "shared interest" in seeing caseloads reduced—an assertion that is insufficient in the face of the myriad actual and substantial conflicts between the MSPD Defendants and the Plaintiffs.  To take just one example, the MSPD Defendants' current scheme of implementing waitlists for indigent defendants to receive counsel in order to ensure that public defenders are not disbarred or otherwise disciplined for ethical violations as a result of their caseloads is obviously anathema to Plaintiffs, who view such a system as leading inevitably to the actual denial of counsel for indigent defendants awaiting representation, often while sitting in pretrial detention.  As part of any relief, the Plaintiffs would seek an end to these waitlists.  § I.A.

The case law further demonstrates that realignment is not appropriate here.  The vast majority of orders to realign parties—including the orders in all the cases cited by the State Defendants—are in service of ensuring proper diversity jurisdiction.  The fact that Plaintiffs' case does not turn in any way on diversity jurisdiction makes clear just how bizarre and anomalous the State Defendants' motion is.  *Id.*  And the State Defendants' assertion that the MSPD Defendants have litigated this case in a "laissez-faire manner" is both incorrect as a matter of fact and irrelevant as a matter of law.  § I.B.  That the MSPD Defendants and the
2

Plaintiffs have real and significant disagreements is enough to foreclose this Court from granting the State Defendants' motion to realign.

The timing of the State Defendants' motion also warrants its denial. Unlike the vast majority of motions to realign, which are filed before discovery ever begins, the State Defendants did not file their motion until after the close of discovery. The very real prejudice to the Plaintiffs from realigning the parties *after the end of fact discovery* counsels against granting the State Defendants' motion. § I.C.

### A. Realignment Is Improper Here Because Several Actual and Substantial Conflicts Exist Between the Plaintiffs and the MSPD Defendants.

The existing conflict between Plaintiffs and the MSPD defendants defeats the State Defendants' request for realignment. Courts applying the substantial conflict test do not realign parties when there is any identified conflict or controversy between the supposedly-aligned parties. Indeed, courts refuse to order such a realignment even if the conflict or controversy is not the primary issue in the suit.

In *Wagner*, for example, the plaintiff insurance company filed suit against an insured, seeking a declaratory ruling that it was only liable for excess coverage because the insured was to primarily recover from another insurance company. 367 F.2d at 868. The insured disagreed, but also crossclaimed, bringing in that other insurance company as a defendant as well. *Id*. The defendant insurance company denied any coverage whatsoever. *Id*. at 870. When the defendant insurance company sought to realign the insured individual with the plaintiff insurance company because both had an interest in having the defendant insurance company declared as the primary carrier, the Court denied realignment. *Id.* at 870–71. It reasoned that the insured had valid alternative theories in support of his claims—either the plaintiff insurance company owed full coverage, or both insurance companies must jointly pay. *Id.* at 871. The court explained that the

3

fact that one theory would benefit both the insured defendant and the plaintiff insurance company did not mean there was no actual and substantial controversy between the two. *Id.*

Similarly, in *Ishmon v. St. Louis Bd. of Police Comm'rs*, plaintiff police officers filed suit against the Board of Police Commissioners ("Board") and a citizen who requested incident and investigative reports filed with the Board's Internal Affairs Department, asserting that their privacy and property interests were not properly protected by the Board. No. 4:11CV652 RWS, 2011 WL 2731219, at *1–2 (E.D. Mo. July 12, 2011). When the defendant citizen attempted to remove the case to federal court, the Board refused,[1] prompting the defendant citizen to move for realignment of the Board as a plaintiff. *Id.* at *3. The defendant citizen argued that the plaintiffs and the Board both had an interest in blocking the release of documents. *Id.* The Court denied the motion for realignment notwithstanding that, in a prior litigation, the Board argued against release of the documents. *Id.* It found that the Board's interest in having the *discretion* to release records, even if it did not want to do so in that case, was opposed to the plaintiffs' interest in never seeing the records released. *Id.*

Here, there is a clear conflict between the Plaintiffs and the MSPD Defendants. The Plaintiffs are alleging that the MSPD Defendants are engaged in continuing violations of the Plaintiffs' Sixth Amendment rights. The Plaintiffs seek prospective relief against the MSPD Defendants to remedy those violations. Given these claims, it makes no sense to place both the Plaintiffs and the MSPD Defendants on the same side of this litigation.

As in *Wagner* and *Ishmon*, the fact that the Plaintiffs and the MSPD Defendants agree on some things—for instance, that the MSPD's caseloads are too high—does not foreclose an actual

---

[1] Notably, the MSPD Defendants consented to the State Defendants' removal of this case to federal court, thus demonstrating their alignment, in at least one respect, with their co-defendants.

and substantial conflict. For example, MSPD's current solutions to its caseload issues are diametrically in opposition to the Plaintiffs' interests. Some MSPD District Offices are proposing and executing plans to place indigent defendants on waitlists until public defenders have capacity to address their cases while still maintaining their ethical obligations to their clients. *See* Exs. D (Crowell Dep.) at 26:3-18; E (Cardarella Dep.) at 181:11-19; F (Petsch Dep.) at 126:5-127:15.[2] By lowering MSPD caseloads, the waitlist plan ameliorates risk for MSPD's attorneys, who worry about being disciplined if high caseloads prevent them from adequately serving their clients. These waitlists result in the actual denial of counsel for the substantial number of indigent defendants who are subject to this delay in representation. These waitlists infringe on the Plaintiffs' right to counsel, as critical time is passing with no motion practice, investigation, or attention to their cases, and Plaintiffs intend to prove that these waitlists are unconstitutional. In their brief, the State Defendants invite the Court to examine "the real interest" of the parties, *see* Mot. at 1, 3, and therefore, it cannot be ignored that the MSPD has a real interest in ensuring its attorneys are not placing their law licenses in jeopardy due to ethical violations. While waitlists may favor MSPD's interest, they inevitably conflict with Plaintiffs' distinct interests in protecting their constitutional rights.

The State Defendants also inaccurately assert that the legal claims brought and relief sought by Plaintiffs in this case are "the very same interest" that the MSPD had in *Barrett v. Greitens*, No. WD 80837, 2017 WL 6453618 (Mo. Ct. App. 2017). Mot. at 3–4. The State Defendants are simply wrong. The claims brought by the MSPD in *Barrett v. Greitens* were Missouri constitutional claims regarding the separation of powers and the Governor's authority

---

[2] To avoid filing unnecessarily duplicative content, all exhibits citations refer to exhibits attached to the Declaration of Anthony Rothert in Support of Suggestions in Opposition to the State Defendants' Motion to Stay, filed concurrently.

5

to withhold allocated funds. The *Barrett v. Greitens* suit did not mention the right to counsel or due process, let alone state claims under the Sixth Amendment and the other constitutional and statutory provisions upon which Plaintiffs base their claims. The suit in *Barrett* focused entirely on the Governor's decision to withhold $3.5 million of the MSPD's appropriation in 2016; the Governor's withholding informs only a small portion of Plaintiffs' suit here. And despite the State Defendants' erroneous assertion that the Plaintiffs only seek "additional funding for MSPD" (Mot. at 1), the reality is that the Plaintiffs' suit, at its core, seeks to protect indigent defendants' right to effective representation guaranteed by Missouri and the United States Constitutions.[3] The pleadings alone make clear that the relief sought by the MSPD in *Barrett v. Greitens* does not equate to "the precise results sought here by Plaintiffs." Mot. at 3.

Pursuant to cases like *Wagner* and *Ishmon*, the Court cannot grant realignment simply because Plaintiffs and the MSPD may share an interest in lower caseloads for the MSPD. *Wagner*, 367 F.2d at 868; *Ishmon*, 2011 WL 2731219 at *3. And like in *Ishmon*, the MSPD's position in a separate litigation—a litigation that does not even mention the right to counsel at the core of Plaintiffs' suit here—does not eliminate the existence of a controversy between the MSPD and Plaintiffs. *See* 2011 WL 2731219, at *3. The MSPD's interest in protecting its attorneys from potential discipline inevitably clashes with the interest of the Plaintiffs in securing

---

[3] In the Class Action Petition, for example, Plaintiffs request several non-monetary relief including declaratory judgment that Defendants are obligated to provide constitutionally adequate representation to indigent criminal defendants, injunctive relief preventing Defendants from continuing to violate the rights of indigent defendants through deficient representation, and a requirement by this Court that Defendants "propose and implement . . . a plan to ensure that all indigent criminal defendants . . . are provided with constitutionally adequate legal representation." Petition (ECF No. 1-2) at p. 52 (Relief Requested).

their constitutional right to counsel. As such, the State Defendants' motion for realignment should be denied.

Not surprisingly, the cases cited by the State Defendants only demonstrate further that realignment is inappropriate here. As those cases suggest, realignment of parties is typically decided in the context of determining subject matter jurisdiction on diversity grounds or resolving requests for removal of a case to federal court. *See e.g.*, *Ryan ex rel. Ryan v. Schneider Nat'l. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001) (evaluating "whether parties were properly aligned at the time of the state petition and petition for removal" to determine whether district court had subject matter jurisdiction). Not one of the six cases cited by the State Defendants in their Motion for Realignment involved a dispute outside of that context. *See City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) (deciding whether "an alignment of the parties . . . satisf[ies] the settled requirements of diversity jurisdiction"); *Niles-Bement-Pond Co. v. Iron Moulders' Union*, 254 U.S. 77, 78 (1920) (reviewing decision classifying party as plaintiff "result[ing] in the disappearance of the jurisdictional diversity of citizenship and required the dismissal of the bill"); *Wagner*, 367 F.2d at 870 (deciding question of realignment where "appellant seeks to destroy jurisdiction by an attempt to realign the parties"); *Thomson v. Butler*, 136 F.2d 644, 646 (8th Cir. 1943) (explaining that the "trial court properly held that the necessary diversity of citizenship was lacking to give a federal court jurisdiction" and indirectly discussing parties' alignment in that context); *Am. Motorists Ins. Co.*, 657 F.2d at 148 (concerning an "appeal from the district court's order realigning the parties to a diversity action . . . and dismissing action for want of subject matter jurisdiction"); *Clearwater Ins. Co.*, 2017 WL 840541, at *6 (discussing realignment of parties where defendant "seeks dismissal for lack of jurisdiction, arguing that the parties should be realigned").

7

Unlike the cases relied upon by the State Defendants in support of their motion, there is no dispute here that the parties in this suit are all residents of Missouri and diversity jurisdiction therefore does not exist. In fact, Plaintiffs first attempted to litigate this suit in state court, but the State Defendants petitioned to remove this case to federal court on the basis of federal question jurisdiction, not on grounds of diversity jurisdiction. ECF No. 1. In contrast to the typical cases addressing realignment issues, Plaintiffs are not opposing realignment to simply preserve subject matter jurisdiction. *See, e.g.*, *City of Indianapolis*, 314 U.S. at 76 (realigning parties and noting the fact that plaintiff "prefers the adjudication of its claims by the federal court is certainly no reason why we should deny the plain facts . . . [and] yield to illusive artifices"). For that reason alone, the cases cited by the State Defendants are irrelevant and easily distinguishable.

### B. The MSPD's Litigation Conduct Does Not Support Realignment of the Parties.

Faced with the simple fact that Plaintiffs' and the MSPD Defendants' interests are fundamentally at odds, the State Defendants resort to denigrating the MSPD Defendants' litigation conduct and suggesting that such conduct somehow warrants realignment. The State Defendants' characterization of the MSPD Defendants' litigation conduct as "laissez-faire" is wrong as a factual matter and simply irrelevant as a legal matter.

The MSPD Defendants have answered the Complaint, joined the State Defendants in their Notice of Removal, provided initial disclosures, defended their witnesses in depositions, and responded to numerous discovery requests. In short, the MSPD Defendants have acted just as a party fully engaged in litigating a case typically does. The State Defendants make much of the fact that the MSPD Defendants have not noticed depositions or issued requests for written discovery, but that is likely because the MSPD Defendants are the primary custodian of the

8

information at issue in this suit. Neither Plaintiffs nor, to Plaintiffs' knowledge, the State Defendants, hold any relevant information regarding the MSPD Defendants' caseload, the number and experiences of its attorneys, or the internal affairs of the MSPD Defendants in managing and litigating their cases—the key factual issues in dispute in this case. Accordingly, the MSPD Defendants' litigation decision not to depose its own witnesses or serve requests for production on itself makes logical sense and does not demonstrate that it "had no intention of propounding discovery." Mot. at 5.

Ironically, it is the *State Defendants'* approach to discovery that has been "laissez-faire" and suggests a failure to diligently litigate this suit. The Court ruled on the State Defendants' motion to dismiss on July 24, 2017. ECF No. 69. The State Defendants let nearly five months pass before noticing their first deposition on December 11, 2017—only eleven days before the close of discovery on December 22, 2017. ECF No. 118. Inexplicably, the State Defendants also make much of the fact that the MSPD Defendants have not deposed Plaintiffs and have not presented any expert witnesses, despite the fact that the State Defendants *also* chose not to depose Plaintiffs or submit an expert report. ECF Nos. 87–89. On the State Defendants' logic, they, too, should be realigned for "only satisf[ying] the bare minimum required of them in this case." Mot. at 6.

Finally, the fact that the MSPD Defendants did not move to dismiss the Plaintiffs' Complaint or oppose the Plaintiffs' motion for class certification does not convey anything, one way or the other, about where its interests lay. *Id.* at 5. Perhaps the MSPD Defendants were trying to conserve their own resources since the State Defendants filed not one, but two, motions to dismiss and vigorously opposed the Plaintiffs' motion for class certification. Perhaps the MSPD Defendants recognized—as did this Court—that there was no legally-sound basis for

9

dismissing the Plaintiffs' Complaint. Whatever the reason, it certainly cannot be said that the decision in and of itself demonstrates the MSPD's alignment with Plaintiffs' interests.

The State Defendants also complain that the MSPD Defendants deflect blame toward the State Defendants in their Answer to Plaintiffs' Complaint. *Id.* at 6. But that is not uncommon. Co-defendants will often attempt to place liability on each other. And the State Defendants' argument that the lack of "fighting" between the MSPD Defendants and Plaintiffs supports realignment is absurd. *Id.* at 3. Parties can have conflicting and adverse interests but still remain civil. The State Defendants' motion for realignment should be denied.

### C. The State Defendants' Motion for Realignment Is Untimely.

Setting aside that their request lacks merit, it is also too late for the State Defendants to seek realignment now. Courts have held that the question of realignment "must be tested at the time of filing of the complaint" and "should be resolved as a preliminary matter, before reaching the merits of the case." *Wagner*, 367 F.2d at 871; *Am. Motorists Ins. Co.*, 657 F.2d at 151 (citation omitted). Every case cited by the State, except for *Am. Motorists Ins. Co.*,[4] and all other cases the Plaintiffs could locate determined realignment of the parties before the commencement of extensive discovery. As such, the timing of the State Defendants' motion for realignment is especially egregious because the State Defendants filed their the motion on January 18, 2018— over nine months from when the State Defendants noticed the case for removal from state to federal court, and two weeks before dispositive motions were previously due. ECF Nos. 1, 131,

---

[4] And even in *Am. Motorists Ins. Co.*, where the court decided a realignment motion after discovery was conducted for the purpose of assessing diversity jurisdiction of the parties, the Seventh Circuit reversed the grant of realignment noting that the district court's reliance on a party's position in a summary judgment brief "was misplaced" and "[t]o focus solely on a position taken well after commencement of the proceedings distorted the true nature of the litigation." 657 F.2d at 151; Mot. at 2.

134.  Despite the State Defendants' unreasonable and prejudicial delay, they provide no justification for sitting on their hands for nine months before filing this motion for realignment.

Not only would the consideration of the State Defendants' request at this stage of the litigation be atypical under the realignment doctrine, but the State Defendants' motion is also barred by the doctrine of laches.  Laches is an equitable bar to requested relief where the party asserting the claim is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the [the non-moving party]."  *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979).

Any attempt to realign the parties at this juncture would unduly prejudice Plaintiffs. Plaintiffs have engaged in extensive discovery, hired experts, conducted motion and appellate practice, and developed legal theories with the understanding that the MSPD Defendants are proper defendants to this suit.  If the State Defendants wanted to realign the parties, they should have done so at the time this suit was filed, particularly because the State Defendants knew all of the information about the supposedly shared interests of Plaintiffs and the MSPD Defendants that they now argue warrant realignment.  *See Vitale v. Aetna Cas. & Sur. Co.*, 814 F.2d 1242, 1252 (8th Cir. 1987) (affirming denial of last-minute motion to amend complaint when no reason was given for the delay and the delay might "have required additional discovery on new factual allegations").  Indeed, the *Barrett v. Greitens* case that the State Defendants cite as evidencing the supposed alignment of Plaintiffs' interest and those of the MSPD Defendants was filed eight months before this case was filed, and a year and half before the State Defendants filed this motion.  Not only is realignment of the MSPD Defendants as plaintiffs substantively improper, but the time to move for realignment is past due.  The State Defendants' motion for realignment should be denied.

## III. CONCLUSION

For the foregoing reasons, this Court should deny the State Defendants' motion for realignment.

Dated: St. Louis, Missouri
       February 1, 2018

Respectfully submitted,

*/s/Anthony E. Rothert*
Anthony E. Rothert
Jessie Steffan
ACLU OF MISSOURI
   FOUNDATION
906 Olive Street
Suite 1130
St. Louis, MO  63101
(314) 652-3114

Jason D. Williamson
ACLU FOUNDATION
125 Broad Street
18th Floor
New York, NY  10004

Robert Sills
Aaron Scherzer
Matthew R. Shahabian
Camille J. Rosca
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

Will Melehani*
Evan Rose
Easha Anand
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105

James Maune
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA  92614

Amy Breihan
MACARTHUR JUSTICE CENTER
   AT ST. LOUIS
3115 South Grand Boulevard
Suite 300
St. Louis, MO  63118

Gillian Wilcox
ACLU OF MISSOURI FOUNDATION
406 West 34th Street
Suite 420
Kansas City, MO  64111

Anthony Tartaglio
Annie Prasad
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

*Pro hoc vice application pending

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served by operation of the Court CM/ECF system upon counsel for each of the Defendants on February 1, 2018.

ACLU OF MISSOURI FOUNDATION

*/s/ Anthony E. Rothert*
Anthony E. Rothert
Counsel for Plaintiffs