UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

SHONDEL CHURCH, *et al.*,   )
                                               )
        Plaintiff,   )
                                             )
v.   )
                                             )   Case No. 17-04057-CV-C-NKL
STATE OF MISSOURI, *et al.*,   )
                                             )
        State Defendants.   )

**STATE DEFENDANTS' SUGGESTIONS IN SUPPORT
OF THEIR MOTION TO STRIKE THE
DESIGNATION OF PLAINTIFFS' EXPERTS
AND EXCLUDE TESTIMONY OF THOSE EXPERTS AT TRIAL**

In support of their motion to strike, State Defendants offer the following:

## Relevant Procedural History

Plaintiffs, and the putative class they seek to represent, filed this suit challenging the adequacy of the Missouri State Public Defender System (MSPD). Doc. 1-2 "Complaint." Plaintiffs seek both injunctive and declaratory relief. Compl. at p. 52. To aid them in the prosecution of this matter, Plaintiffs retained three law professors: Robert C. Boruchowitz, Rodney J. Uphoff, and Stephen Gillers. Docs. 87-89.

## Plaintiff's Proposed Experts and Their Reports

Professor Robert Boruchowitz is the Director of the Defender Initiative and Professor from Practice at the Seattle University School of Law. Expert Report of Robert C. Boruchowitz, attached as Exhibit A (Boruchowitz Report). The Boruchowitz Report is in outline form with 429 separately numbered paragraphs. Some paragraphs contain statements of law and some contain facts, although, for the most part, the facts come from Plaintiffs' Complaint and MSPD information in the form of deposition testimony and reports such as the Missouri Public Defender Commission's Annual Reports.

Professor Boruchowitz's outline contains a number of factual and legal conclusions based upon his analysis of Plaintiff's allegations, the reports prepared for the MSPD, and the data supplied by the MSPD. Boruchowitz's

2

Report at pp. i-ii. His concluding opinion is as follows: "Until the caseloads are dramatically reduced and the support resources significantly increased, it is likely the defenders will be unable to provide consistently effective representation to their clients." Borouchowitz Report at p. 86, ¶ 429.

A second expert report was submitted by Rodney Uphoff, a professor at the University of Missouri School of Law. Expert Report of Rodney J. Uphoff, attached as Exhibit B (Uphoff Report). Professor Uphoff opines "that the MSPD fails consistently to provide the effective assistance of counsel to which all of their clients are constitutionally entitled." Uphoff Report at p. 31. This legal conclusion mirrors the relief sought by Plaintiffs whose Complaint asks this Court to "Declare that the constitutional and statutory rights of Missouri's indigent criminal defendants and juvenile respondents are currently being violated by Defendants on an ongoing basis." Doc. 1-1 at p. 52, ¶ C.

In reaching his opinion, Professor Uphoff places a great deal of reliance on the conclusions found in "the reports prepared by the Spangenberg Group in 2005 and 2009, the Senate Interim Committee in 2007, National Juvenile Defender Center in 2013, and RubinBrown in 2014." Uphoff Report at p. 11. His reliance upon these reports is bolstered by past conversations with a handful of individuals who worked for the MSPD at one time or another. His opinion also incorporates his informal observations of random preliminary

3

criminal dockets at a few central Missouri courthouses.

Stephen Gillers is a professor at the New York University School of law. Expert Report of Stephen Gillers, attached as Exhibit A (Gillers Report). His report is the shortest. It consists of three general sections. In the first section, Professor Gillers summarizes his qualifications and discloses his compensation and recent testimonial experience. In the second section, he restates the "core ethical duties that all lawyers, including public defenders, owe to their clients." Gillers Report at p. 2. And in the third and final section, he applies those ethical duties to 12 hypothetical scenarios. The Gillers Report does not contain any conclusions or opinions.

## Standard of Review

The admissibility of expert testimony is governed by the provisions of FRCP 702, "Testimony of Expert Witnesses," which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

4

(d) the expert has reliably applied the principles and methods to the facts of the case.

With those requirements in mind, the admissibility of expert testimony is vested in the sound discretion of the trial court. *McKnight By & Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994). However, "[t]he touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 512 (2d Cir. 1977). And it should be noted that in a case such as this, which will not be heard by a jury, there is obviously no concern about the jury being prejudiced by the opinion of a legal expert. *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008). However, the courtroom already has a legal expert and that is the judge. *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997).

State Defendants ask this Court to strike the designation of these experts and prohibit their testimony at trial because their opinions are legal conclusions, which are generally not admissible. Even if their opinions were admissible, their reports do not satisfy the requirements of Rule 702, because the underlying data is not reliable. And, if nothing else, the so-called expert testimony of these law professors is unnecessary in this matter.

5

**Argument**

I. **Professor Boruchowitz's report attempts to invade the province of the Court.**

Although Professor Boruchowitz's ultimate legal opinion is somewhat ambiguous, the remainder of his report reads like traditional findings of fact and conclusions of law. His report, therefore, appears to be an attempt to "usurp the function of the judge." *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 512 (2d Cir. 1977). Because Boruchowitz's extensive report applies the law to the asserted facts of this case, it reads more like a legal brief than an expert report, and legal conclusions are for the Court. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995).

Here are just some examples of the findings of fact and conclusions of law found in Boruchowitz's Report:

- The Missouri and United States Constitution require effective assistance of counsel;
- Rules of Professional Conduct require competent and thorough representation;
- The MSPD has admitted it is unable consistently to provide effective representation to its clients;
- The Missouri defenders have excessive caseloads;
- MSPD routinely practices triage to the detriment of its clients;

6

- MSPD does not comply with AGA Guidelines on excessive workloads;
- The statutory provision for seeking approval to decline cases is unworkable;
- The MSPD is not providing effective representation to its juvenile clients.

Boruchowitz Report at pp. i-ii.

The Eighth Circuit is not alone in recognizing that expert opinions which merely state legal conclusions are not admissible. *See, e.g. Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Circ. 1997); *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *United States v. Zipkin*, 729 F.2d 384 (6th Cir. 1984); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also In re McKesson HBOC, Inc. Securities Litigation*, 126 F.Supp.2s 1239, 1247 (N.D. Cal. 2000); *Whitmill v. City of Philadelphia,* 29 F.Supp.2d 241,246 (E.D. Pa 1998).

Because his expert report is really nothing more than a legal brief, the Court should strike Boruchowitz's designation as an expert and prohibit him from testifying at trial.

## II. The facts relied upon by Professor Uphoff lack reliability.

Professor Uphoff's legal conclusion is likewise improper. Additionally, he relies upon insufficient facts and data to reach his conclusion.

7

> Generally, weaknesses in the factual underpinnings of an expert's opinion go to the weight and credibility of his testimony. However, the facts upon which an expert's opinion is based must measure up to the legal requirements of substantiality and probative force. The question of whether such opinion is based on and supported by sufficient facts or evidence to sustain the same is a question of law for the court.

*Willard v. Bic Corp.*, 788 F.Supp. 1059, 1065 (Mo. W.D. 1991). In other words, "[t]he court may inquire into the reliability and foundation of any expert opinion to determine admissibility." *Id.*

The facts Uphoff used to reach his legal conclusion lack reliability. Most of the factual information he relied on was provided by Plaintiffs; namely, the historical reports that were – for the most part – prepared for the benefit of the MSPD[1]. On the whole, those reports reach the conclusion that the MSPD is underfunded or otherwise lacking in necessary resources. Assuming those reports were prepared by experts, it is still improper for Uphoff to parrot those opinions. *Ash Grove Cement Co. v. Employers Ins. Of Wausau*, 245 FRD 656, 662 (D. Kan. 2007).

Uphoff apparently accepted all of those conclusions/opinions as true. With those assumptions in hand, Uphoff then undertook a very unempirical

---

[1] As State Defendants point out in their motion arguing for a realignment of the parties, the ultimate objective of Plaintiffs is aligned with the publicly stated objectives of the MSPD.

study that involved watching random preliminary criminal dockets at a handful of central Missouri State courts. He also considered anecdotal reports from current and former employees of the MSPD. He then combines these "facts" to conclude that "the MSPD lacks the funding to hire the number of lawyers needed to handle the number of defendants the MSPD is being asked to represent." Uphoff Report at p. 31.

An expert's testimony must be "based on sufficient facts or data" and it must be "the product of reliable principles and methods." FRCP 702. Here, Uphoff's non-independent facts are likely biased and his independent facts lack any methodical dependability because they were not gathered through any means that would ensure accuracy and reliability. In other words, his expert report fails to comply with the most basic requirements for testimony by an expert witness. "Where opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert, a district court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Pro Serv. Auto., LLC v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006) (internal citations omitted).

For these reasons, and because his opinion is a legal conclusion, the Court should strike his designation as an expert and prohibit him from testifying.

9

### III. Professor Gillers' report lacks relevance, because it contains nothing that can aid the finder of fact.

Although the report prepared by Professor Gillers does not contain any improper legal conclusions, it also lacks any discussion of the facts presented by this case. The first requirement under Rule 702 is that "evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." *Lauzon v. Senco Prods. Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). The Gillers Report merely summarizes an attorney's core ethical duties as established by the rules of professional conduct, and "[a]n expert is not needed to instruct the Court on the history or state of the law." *Suntrust Banks, Inc. v. M.G. Robertson*, 2010 WL 11566593 at *6 (E.D. Virginia, Aug. 8, 2010). After that summary of the law, Gillers merely applies those core duties to a dozen *hypothetical* scenarios.

The Court should strike Gillers' designation as an expert and prohibit him from testifying at trial because his so-called expert report fails to satisfy the basic requirements for expert testimony as established by FRCP 702.

### Conclusion

"As we have had occasion to remark before, however, expert testimony on legal matters is not admissible." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). "[T]he abolition of

10

the 'bar on 'ultimate issue' opinions . . . is not a carte blanche for experts.'" *Nieves-Villanueva* 133 F.3d at 100 (citing FRE 704). Even so, State Defendants note that all three of these professors appear to be qualified by education and experience. But, "such expert legal testimony remains problematic because it opens the door for 'legal experts' to usurp the role of trial counsel and the judge and because it is simply unnecessary." *Suntrust Banks, Inc.* 2010 WL 11566593 at *6.

Therefore, this Court should strike the designation of all three experts and prohibit them from testifying at trial.

Respectfully submitted,

**JOSHUA D. HAWLEY**
Missouri Attorney General

/s/ *Laura E. Elsbury*
Dean John Sauer #58721
Laura E. Elsbury #60854
Steven Alan Ramsey #67126
Justin C. Moore, #65057
Assistant Attorneys General
Missouri Attorney General's Office
P.O. Box 861
St. Louis, MO 63188
(314) 340-7861 Phone
(314) 340-7029 Fax
*Attorneys for Defendants*
*State of Missouri and Eric Greitens*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February, 2018, the foregoing was e-filed with the Clerk of the Court to be served by operation of the Court's electronic filing system on all parties of record.

<i>/s/Laura E. Elsbury</i><br>
Assistant Attorney General