# Exhibit Z

Electronically Filed - SUPREME COURT OF MISSOURI - April 28, 2017 - 03:28 PM

**IN THE SUPREME COURT OF MISSOURI**
**EN BANC**

RECEIVED
AC/LEC
NOV 0 2 2016

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **KARL HINKEBEIN** | ) |
| Woodrail Centre | ) |
| Building 7, Suite 100 | ) |
| 1000 W. Nifong | ) |
| Columbia, Missouri 65203, | )   DHP No. DHP-16-004 |
| | ) |
| MO Bar # 41666, | ) |
| | ) |
| Respondent. | ) |

**DISCIPLINARY HEARING PANEL DECISION**

**Introduction**

A hearing was held in this matter on July 26, 2016 in Jefferson City, Missouri before Thomas M. Dunlap, Presiding Officer, Donna M. White, Attorney Member, and Dale A. Siebeneck, Public Member. Informant is the Chief Disciplinary Counsel. Informant was present through Melody Nashan, Staff Counsel, Office of Chief Disciplinary Counsel. Respondent was present in person and through counsel, Sara Rittman. After considering the evidence presented, the Disciplinary Hearing Panel finds, concludes, and recommends as follows:

**FINDINGS OF FACT**

1.      Informant is the Chief Disciplinary Counsel appointed by the Court pursuant to Rule 5.06.

2.      On or about March 31, 2016, Informant determined, pursuant to Rule 5.11, that probable cause existed to believe that Respondent Karl Hinkebein is guilty of professional misconduct and on March 31, 2016, Informant filed an Information charging Respondent with violation of specified Rules of Professional Conduct.

3.      Respondent Karl Hinkebein was licensed to practice law in Missouri on October 1, 1993. (Information (hereafter "Inf.") ¶ 3; Answer (hereafter "Ans.") ¶ 3.)

4.      The address Respondent registered with The Missouri Bar is Woodrail Centre, 1000 W. Nifong, Bldg. 7, Ste. 100, Columbia, Missouri 65203. (Inf. ¶ 4; Ans. ¶ 4.). As reflected by the caption hereto, Respondent's bar number is 41666.

5.      Respondent is a public defender with the Missouri Public Defender System ("MPDS"). (Inf. ¶ 5; Ans. ¶ 5.)

6.      Respondent's license is in good standing. (Inf. ¶ 6; Ans. ¶ 6.)

7.      Respondent has received three admonitions in the past:

    a.  By letter dated December 8, 2003, Respondent was admonished for violating Rule 4-1.3 (diligence);

    b.  By letter dated July 16, 2008, Respondent was admonished for violating Rule 4-1.3 (diligence); and

    c.  By letter dated February 26, 2010, Respondent was admonished for violating Rules 4-1.3 (diligence) and 4-1.4 (communication).

(Inf. ¶ 7; Ans. ¶ 7; Ex. 9.)

8.      Respondent works for the MPDS in Area 67, the Central Appellate PCR divison. (Tr. 18 – 19 (testimony of Respondent).)

9.      Respondent's primary work is representing indigent clients who have moved, *pro se*, for post-conviction relief under either Rule 29.15 or Rule 24.035. (Tr. 19 (testimony of Respondent).)

10.     The movants who are the subject of this disciplinary proceeding sought relief under Rule 29.15. (Tr. 21 (testimony of Respondent).)

11.     Appointed counsel, per Rule 29.15, may file an amended motion for post-conviction relief, or a statement in lieu of an amended motion for post-conviction relief.  (Tr. 143 (testimony of Steve Harris, District Defender Area 67 MPDS).)

12.     Determination regarding whether to file an amended motion or a statement in lieu of an amended motion is made after the records have been reviewed, after communication with the client, and after any necessary investigation.  (Tr. 144 (testimony of Steve Harris).)

**COUNT I – Robinson**

13.     Respondent Hinkebein served as counsel for the movant Darin Robinson in *Darin Robinson v. State of Missouri*, Case No. 1031-CV18129, in the Circuit Court of Greene County, Missouri, a post-conviction relief proceeding.  (Inf. ¶ 9; Ans. ¶ 9; Ex. 5.)

14.     Respondent entered his appearance as counsel for Movant Robinson on or about February 14, 2011.  (Inf. ¶ 10; Ans. ¶ 10; Ex. 5.)

15.     Respondent filed a motion for extension of time in which to file an amended Rule 29.15 motion on behalf of Movant Robinson.   (Inf. ¶ 11; Ans. ¶ 11; Ex. 5.)

16.     The Court granted the motion for extension of time to March 13, 2011.  (Inf. ¶ 12; Ans. ¶ 12; Ex. 5.)

17.     Respondent wrote the prison to arrange telephone calls with Movant Robinson on March 10, March 11, and March 14, 2011.  (Inf. ¶ 13; Ans. ¶ 13.)

18.     Respondent sent letters to potential witnesses for Mr. Robinson on March 9 and 10, 2011.  (Inf. ¶ 14; Ans. ¶ 14.)

19.     The letters to potential witnesses from Mr. Robinson were sent too late for any information forwarded by those potential witnesses to be included in a timely filed amended motion. (Tr. 32 (testimony of Respondent).)

3

20.     At the time the amended motion was due, Respondent had not yet decided whether to file an amended motion or a statement in lieu of an amended motion of behalf of Movant Robinson.  (Tr. 33 - 34 (testimony of Respondent).)

21.     In a statement in lieu of an amended motion, counsel must include, *inter alia*, a statement that the pro se motion contains all claims known to the movant after counsel has examined the file.  (Tr. 24-25, 33 (testimony of Respondent); Tr. 143 – 144 (testimony of Steve Harris).)

22.     After the statement in lieu is filed, the movant has 10 days to respond as to whether movant disagrees with the filing of the statement in lieu.  (Tr. 25, 33 (testimony of Respondent).)

23.     Respondent did not prepare a Statement in Lieu of an Amended Motion regarding Mr. Robinson's post-conviction relief motion.  (Inf. ¶ 15; Ans. ¶ 15.)

24.     Respondent did not file an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on behalf of Mr. Robinson on or before March 13, 2011.  (Inf. ¶ 16; Ans. ¶ 16; Ex. 5.)

25.     Respondent failed to communicate with Mr. Robinson after March 2011. (Inf. ¶ 17; Ans. ¶ 17.)

26.     Respondent intended to file a Statement in Lieu of an Amended Motion on behalf of Movant Robinson.  (Tr. 34 (testimony of Respondent); Ex. 18.)

27.     Respondent did not send Mr. Robinson a Statement in Lieu of an Amended Motion for his review.  (Inf. ¶ 18; Ans. ¶ 18.)

28.     Respondent Hinkebein never filed an amended Rule 29.15 motion or a Statement in Lieu of an Amended Motion on behalf of Movant Robinson.  (Inf. ¶ 19; Ans. ¶ 19.)

4

29.     Respondent remained Movant Robinson's attorney until he withdrew as counsel of record for Movant Robinson on September 5, 2014.  (Inf. ¶ 20; Ans. ¶ 20; Ex. 5; Tr. 34 (testimony of Respondent).)

30.     Respondent withdrew as Movant Robinson's counsel because Movant Robinson's case was reassigned to another public defender.  (Tr. 35 (testimony of Respondent).)

31.     Movant Robinson's new counsel filed a Motion for Finding of Abandonment and for Leave to File an Amended Motion.  (Inf. ¶ 21; Ans. ¶ 21; Ex. 5.)

32.     The trial court entered an Order finding that Respondent had abandoned Movant Robinson on his post-conviction relief action.  (Inf. ¶ 22; Ans. ¶ 22; Ex. 5.)

**COUNT II – Hines**

33.     Respondent Hinkebein served as counsel for the Movant Christopher Hines in *Christopher J. Hines v. State of Missouri*, Case No. 1231-CV16886, in the Circuit Court of Greene County, Missouri, a post-conviction relief proceeding.  (Inf. ¶ 25; Ans. ¶ 25; Ex. 4.)

34.     Respondent entered his appearance as counsel for Movant Hines on or about December 21, 2012.  (Inf. ¶ 26; Ans. ¶ 26; Ex. 4.)

35.     Respondent filed a motion for extension of time in which to file an amended Rule 29.15 motion on behalf of Movant Hines.  (Inf. ¶ 27; Ans. ¶ 27; Ex. 4.)

36.     The Court granted the motion for extension of time to March 5, 2013.  (Inf. ¶ 28; Ans. ¶ 28; Ex. 4.)

37.     Respondent received Movant Hines' trial file on or about December 26, 2012.  (Inf. ¶ 29; Ans. ¶ 29; Tr. 37 (testimony of Respondent).)

38.     Respondent received Movant Hines' direct appeal file on or about December 11, 2012.  (Inf. ¶ 30; Ans. ¶ 30; Tr. 37 (testimony of Respondent.)

5

39.     Respondent wrote the prison to arrange telephone calls with Movant Hines on March 4, 2013, March 5, 2013, March 6, 2013, and August 15, 2014.  (Inf. ¶ 31; Ans. ¶ 31.)

40.     March 4, 2013 was the first time Respondent had attempted to speak to Mr. Hines regarding the facts of his case.  (Tr. 38 – 39 (testimony of Respondent).)

41.     Before March 4, 2013, the only communication Respondent had with Mr. Hines since Respondent was appointed was the introductory packet of information generated by Respondent's secretary that is sent to movants and which includes a form questionnaire.  (Tr. 38 – 39, 46 (testimony of Respondent).)

42.     Respondent did not file an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on or before March 5, 2013 on behalf of Movant Hines.  (Inf. ¶ 32; Ans. ¶ 32; Ex. 4.)

43.     Respondent intended to file an amended motion on behalf of Movant Hines.  (Tr. 39 (testimony of Respondent); Ex. 20.)

44.     Respondent did not communicate with Mr. Hines from March 2013 until August 15, 2014.  (Inf. ¶ 33; Ans. ¶ 33.)

45.     Respondent communicated with Mr. Hines on or about August 15, 2014 after Mr. Hines complained to Respondent's supervisor that Mr. Hines hadn't heard from Respondent.  (Tr. 39 – 40 (testimony of Respondent).)

46.     Respondent Hinkebein never filed an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on behalf of Movant Hines.  (Inf. ¶ 34; Ans. ¶ 34; Ex. 4; Tr. 39 (testimony of Respondent).)

47.     Respondent withdrew as counsel of record for Movant Hines on September 5, 2014 and the case was reassigned to another public defender.  (Inf. ¶ 35; Ans. ¶ 35; Ex. 4; Tr. 40 (testimony of Respondent).)

48.     Movant Hines' new counsel filed a Motion for Finding of Abandonment and for Leave to File an Amended Motion.  (Inf. ¶ 36; Ans. ¶ 36; Ex. 4; Tr. 40 - 41 (testimony of Respondent).)

49.     The trial court entered an Order sustaining Movant Hines' motion and finding that Movant had been abandoned by Respondent on his post-conviction relief action.  (Inf. ¶ 37; Ans. ¶ 37; Ex. 4.)

### COUNT III – Williams

50.     Respondent Hinkebein served as counsel for the Movant William Williams in *William J. Williams v. State of Missouri*, Case No. 13PO-CC00056, in the Circuit Court of Polk County, Missouri, a post-conviction relief proceeding.  (Inf. ¶ 40; Ans. ¶ 40; Ex. 7.)

51.     Respondent entered his appearance as counsel for Movant Williams on or about September 9, 2013.  (Inf. ¶ 41; Ans. ¶ 41; Ex. 7; Tr. 42 (testimony of Respondent).)

52.     Respondent filed a motion for extension of time in which to file an amended Rule 29.15 motion on behalf of Movant Williams.  (Inf. ¶ 42; Ans. ¶ 42; Ex. 7; Tr. 42 (testimony of Respondent).)

53.     The Court granted the motion for extension of time to November 10, 2013.  (Inf. ¶ 43; Ans. ¶ 43; Ex. 7; Tr. 42 (testimony of Respondent).)

54.     Respondent received Movant Williams' direct appeal file on or about August 30, 2013.  (Inf. ¶ 44; Ans. ¶ 44.)

55.     Respondent received Movant Williams' trial file on or about September 13, 2013. (Inf. ¶ 45; Ans. ¶ 45.)

56.     The earliest entry on Respondent's caseload timeline regarding Respondent's work on Mr. Williams's case is November 19, 2013.  (Tr. 45 – 46 (testimony of Respondent); Ex. 13.)

57.     Respondent spoke with Movant Williams by telephone on November 21, 2013. (Inf. ¶ 46; Ans. ¶ 46; Tr. 43 (testimony of Respondent).)

58.     Respondent first spoke to Mr. Williams after the deadline to file an amended motion for post-conviction relief had passed.  (Tr. 43 (testimony of Respondent).)

59.     During the November 21, 2013 telephone call, Respondent told Movant Williams that Respondent intended to file an amended Rule 29.15 motion on his behalf.   (Inf. ¶ 47; Ans. ¶ 47; Tr. 43 (testimony of Respondent).)

60.     Respondent did not file an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on or before November 10, 2013 on behalf of Movant Williams.  (Inf. ¶ 48; Ans. ¶ 48; Ex. 7.)

61.     Respondent did not communicate with Mr. Williams after November 21, 2013. (Inf. ¶ 49; Ans. ¶ 49.)

62.     Respondent spoke with Movant Williams' mother, a witness identified by Movant Williams.  (Inf. ¶ 50; Ans. ¶ 50.)

63.     Respondent did not speak with the other five witnesses identified by Movant Williams' during the November 21, 2013 telephone call between Respondent and Movant Williams.  (Inf. ¶ 51; Ans. ¶ 51.)

64.     Respondent Hinkebein never filed an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on behalf of Movant Williams.  (Inf. ¶ 52; Ans. ¶ 52; Ex. 7.)

8

65.     Respondent intended to file an amended motion on behalf of Mr. Williams. (Tr. 41 – 42, 43 (testimony of Respondent); Ex. 20.)

66.     Mr. Williams case was reassigned to another public defender and Respondent withdrew as counsel of record for Movant Williams on September 8, 2014. (Inf. ¶ 53; Ans. ¶ 53; Ex. 7; Tr. 43 - 44 (testimony of Respondent).)

67.     Movant Williams' new counsel filed a Motion for Finding of Abandonment and for Leave to File an Amended Motion. (Inf. ¶ 54; Ans. ¶ 54; Ex. 7; Tr. 44 (testimony of Respondent).)

68.     The trial court entered an Order finding that Respondent had abandoned Movant Williams on his post-conviction relief action. (Inf. ¶ 55; Ans. ¶ 55; Ex. 7; Tr. 44 (testimony of Respondent).)

### COUNT IV – Watson

69.     Respondent Hinkebein served as counsel for the Movant Dustin Watson in *Dustin S. Watson v. State of Missouri*, Case No. 1231-CV00474, in the Circuit Court of Greene County, Missouri, a post-conviction relief proceeding. (Inf. ¶ 58; Ans. ¶ 58; Ex. 6.)

70.     Respondent entered his appearance as counsel for Movant Watson on or about February 9, 2012. (Inf. ¶ 59; Ans. ¶ 59; Ex. 7; Tr. 47 (testimony of Respondent).)

71.     Respondent filed a motion for extension of time in which to file an amended Rule 29.15 motion on behalf of Movant Watson. (Inf. ¶ 60; Ans. ¶ 60; Ex. 7; Tr. 48 (testimony of Respondent).)

72.     The Court granted the motion for extension of time to April 16, 2012. (Inf. ¶ 61; Ans. ¶ 61; Ex. 7.)

73.     Respondent received Movant Watson's trial file on or about February 8, 2012. (Tr. 120 (testimony of Respondent); Ex. 45.)

9

74.     Respondent sent a letter requesting Movant Watson's appellate file on or about May 16, 2012.  (Tr. 120 - 121 (testimony of Respondent); Ex. 45.)

75.     Respondent didn't request Movant Watson's appellate file until after the April 16, 2012 due date for the amended motion.  (Tr. 120 – 121 (testimony of Respondent); Ex. 45.)

76.     Respondent received Movant Watson's appellate file on or about June 20, 2012. (Tr. 106, 120 (testimony of Respondent); Ex. 45.)

77.     Respondent wrote the prison to arrange telephone calls with Movant Watson on July 19, 2012, July 25, 2012, July 26, 2012, and July 31, 2012.  (Inf. ¶ 62; Ans. ¶ 62.)

78.     Respondent didn't speak to Mr. Watson until three months after the amended motion was due.  (Tr. 48 (testimony of Respondent).)

79.     Respondent did not file an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on or before April 16, 2012 on behalf of Movant Watson.  (Inf. ¶ 63; Ans. ¶ 63; Ex. 7; Tr. 48 (testimony of Respondent).)

80.     Respondent did not communicate with Mr. Watson after July 2012.  (Inf. ¶ 64; Ans. ¶ 64; Tr. 48 (testimony of Respondent).)

81.     Respondent intended to file an amended motion on behalf of Mr. Watson.  (Tr. 41 – 42, 48 (testimony of Respondent); Ex. 20.)

82.     Respondent Hinkebein never filed an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on behalf of Movant Watson.  (Inf. ¶ 65; Ans. ¶ 65; Ex. 7.)

83.     Mr. Watson's case was reassigned to another public defender and Respondent withdrew as counsel of record for Movant Watson on September 5, 2014.  (Inf. ¶ 66; Ans. ¶ 66; Ex. 7; Tr. 48 (testimony of Respondent).)

84. Movant Watson's new counsel filed a Motion for Finding of Abandonment and for Leave to File an Amended Motion. (Inf. ¶ 67; Ans. ¶ 67; Ex. 7; Tr. 48 – 49 (testimony of Respondent).)

85. The trial court entered an Order finding that Respondent had abandoned Movant Watson on his post-conviction relief action. (Inf. ¶ 68; Ans. ¶ 68; Ex. 7; Tr. 49 (testimony of Respondent).)

## COUNT V – Austin

Dismissed with prejudice by Informant on September 9, 2016.

## COUNT VI – Giles

86. Respondent Hinkebein served as counsel for the Movant Allen Giles in *Allen D. Giles v. State of Missouri*, Case No. 1231-CV17820, in the Circuit Court of Greene County, Missouri, a post-conviction relief proceeding. (Inf. ¶ 85; Ans. ¶ 85; Ex. 3.)

87. Respondent entered his appearance as counsel for Movant Giles on or about January 24, 2013. (Inf. ¶ 86; Ans. ¶ 86; Ex. 3; Tr. 51 (testimony of Respondent).)

88. Respondent filed a motion for extension of time in which to file an amended Rule 29.15 motion on behalf of Movant Giles. (Inf. ¶ 87; Ans. ¶ 87; Ex. 3; Tr. 51 (testimony of Respondent).)

89. The Court granted the motion for extension of time to April 15, 2013. (Inf. ¶ 88; Ans. ¶ 88; Ex. 3; Tr. 51 (testimony of Respondent).)

90. Respondent spoke by telephone with Movant Giles on April 25, 2013 and March 24, 2014. (Inf. ¶ 89; Ans. ¶ 89; Tr. 51 (testimony of Respondent).)

91. Respondent first spoke to Mr. Giles after any amended motion was due. (Tr. 51 – 52 (testimony of Respondent).)

11

92.     Respondent did not begin reviewing Mr. Giles case until April 1, 2013.  (Inf. ¶ 90; Ans. ¶ 90.)

93.     Respondent last reviewed Mr. Giles transcript on March 24, 2014.  (Inf. ¶ 91; Ans. ¶ 91.)

94.     Respondent intended to file a Statement in Lieu of an Amended Motion in Mr. Giles' case.  (Tr. 52 (testimony of Respondent).)

95.     Respondent told Mr. Giles that he intended to file a Statement in Lieu on April 25, 2013.  (Tr. 52 (testimony of Respondent).)

96.     Respondent spoke to Mr. Giles eleven (11) months later on March 24, 2014, and again told him he intended to file a Statement in Lieu.  (Tr. 53 (testimony of Respondent).)

97.     Respondent did not prepare a Statement in Lieu of an Amended Motion regarding Mr. Giles' post-conviction relief motion.  (Inf. ¶ 92; Ans. ¶ 92; Ex. 3.)

98.     Respondent did not file an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on or before April 15, 2013 on behalf of Movant Giles.  (Inf. ¶ 93; Ans. ¶ 93; Ex. 3; Tr. 52 (testimony of Respondent).)

99.     Respondent failed to communicate with Mr. Giles after March 24, 2014.  (Inf. ¶ 94; Ans. ¶ 94; Tr. 53 (testimony of Respondent).)

100.    Respondent did not send Mr. Giles a Statement in Lieu of an Amended Motion for his review.  (Inf. ¶ 95; Ans. ¶ 95.)

101.    Respondent Hinkebein never filed an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on behalf of Movant Giles.  (Inf. ¶ 96; Ans. ¶ 96; Ex. 3.)

102.    Mr. Giles's case was reassigned to another public defender in August 2014 and Respondent withdrew as counsel of record for Movant Giles on September 5, 2014.  (Inf. ¶ 97; Ans. ¶ 97; Ex. 3; Tr. 53 - 54 (testimony of Respondent).)

103.    Movant Giles' new counsel filed a Motion for Finding of Abandonment and for Leave to File an Amended Motion.  (Inf. ¶ 98; Ans. ¶ 98; Ex. 3; Tr. 54 (testimony of Respondent).)

104.    The trial court entered its Order finding that Respondent had abandoned Movant Giles on his post-conviction relief action.  (Inf. ¶ 99; Ans. ¶ 99; Ex. 3; Tr. 54 (testimony of Respondent).)

**COUNT VII – Arata**

105.    Respondent Hinkebein served as counsel for the Movant Jeremy Arata in *Jeremy W. Arata v. State of Missouri*, Case No. 1331-CC00971, in the Circuit Court of Greene County, Missouri, a post-conviction relief proceeding.  (Inf. ¶ 102; Ans. ¶ 102; Ex. 1.)

106.    Respondent entered his appearance as counsel for Movant Arata on or about August 6, 2013.  (Inf. ¶ 103; Ans. ¶ 103; Ex. 1; Tr. 54 (testimony of Respondent).)

107.    Respondent filed a motion for extension of time in which to file an amended Rule 29.15 motion on behalf of Movant Arata.  (Inf. ¶ 104; Ans. ¶ 104; Ex. 1; Tr. 54 - 55 (testimony of Respondent).)

108.    The Court granted the motion for extension of time to October 22, 2013.  (Inf. ¶ 105; Ans. ¶ 105; Ex. 1; Tr. 55 (testimony of Respondent).)

109.    Respondent wrote the prison to arrange a telephone call with Movant Arata on January 6, 2014.  (Inf. ¶ 106; Ans. ¶ 106; Ex. 1; Tr. 55 (testimony of Respondent).)

110.    Respondent did not speak to Mr. Arata until over two (2) months after any amended motion was due.  (Tr. 55 (testimony of Respondent).)

13

111.    Respondent intended to file a Statement in Lieu in Mr. Arata's case.  (Tr. 55 (testimony of Respondent).)

112.    On January 6, 2014, Respondent told Mr. Arata that he intended to file a Statement in Lieu.  (Tr. 55, 56 - 57 (testimony of Respondent); Ex. 29.)

113.    Respondent did not prepare a Statement in Lieu of an Amended Motion regarding Mr. Arata's post-conviction relief motion.  (Inf. ¶ 107; Ans. ¶ 107; Ex. 1.)

114.    Respondent did not send Mr. Arata a Statement in Lieu of an Amended Motion for his review.  (Inf. ¶ 108; Ans. ¶ 108.)

115.    Respondent did not file an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on or before October 22, 2013 on behalf of Mr. Arata.  (Inf. ¶ 109; Ans. ¶ 109; Ex. 1.)

116.    Respondent failed to communicate with Mr. Arata after January 2014.  (Inf. ¶ 110; Ans. ¶ 110.)

117.    Respondent Hinkebein never filed an amended Rule 29.15 motion, or a Statement in Lieu of an Amended Motion, on behalf of Movant Arata.  (Inf. ¶ 111; Ans. ¶ 111; Ex. 1.)

118.    Mr. Arata's case was reassigned to another public defender in August 2014.  (Tr. 59 (testimony of Respondent).)

119.    Respondent withdrew as counsel of record for Movant Arata on September 5, 2014.  (Inf. ¶ 112; Ans. ¶ 112; Ex. 1; Tr. 59 (testimony of Respondent).)

120.    Movant Arata's new counsel filed a Motion for Finding of Abandonment and for Leave to File an Amended Motion.  (Inf. ¶ 113; Ans. ¶ 113; Ex. 1; Tr. 59 (testimony of Respondent).)

121.    The trial court entered its Order finding that Respondent had abandoned Movant Arata on his post-conviction relief action. (Inf. ¶ 114; Ans. ¶ 114; Ex. 1.)

### Potential Injury

122.    If any of these movants, Robinson, Hines, Williams, Watson, Giles, and/or Arata, had gained actual relief from their Rule 29.15 motion for post-conviction relief, the delay in processing those motions could have resulted in them being incarcerated for a longer period of time. (Tr. 60 (testimony of Respondent).)

123.    Respondent did not intentionally delay any of the cases that are the subject of this case in hopes that the passage of time would result in the prosecutor agreeing to a better outcome for the movant. (Tr. 125 (testimony of Respondent).)

124.    Respondent did not ask any of the movants who are the subjects of this case to agree to a delay in hopes that the passage of time would result in the prosecutor agreeing to a better outcome for the movant. (Tr. 125 (testimony of Respondent).)

### Respondent's Employee Improvement Plan

125.    Missouri Public Defender System Attorney Greg Mermelstein, who receives complaints from the client base for the MPDS, received a letter from Movant Hines, Respondent's client, asking about the progress of his case. (Tr. 215 (testimony of Greg Mermelstein, Deputy Director of Specialty Practice and Resources for the MPDS ("Mermelstein"); (Tr. 26 (testimony of Respondent); Ex. 21.)

126.    Mr. Mermelstein asked Mr. Harris, Respondent's immediate supervisor, the District Defender, to look into Mr. Hines complaint, and he looked through Respondent's cases and found a number of cases where amended motions had not been timely filed. (Tr. 215 - 216 (testimony of Mermelstein); Tr. 26 (testimony of Respondent); Ex. 28.)

15

127. Mr. Mermelstein determined that the cases where amended motions had not been timely filed should be reassigned to another MPDS office. (Tr. 216 – 217 (testimony of Mermelstein).)

128. In August 2014, Respondent gathered up the files to be reassigned and gave them to Mr. Harris. (Tr. 29 (testimony of Respondent); Ex. 28.)

129. The cases reassigned were the subject of the Information: Movants Arata, Austin, Giles, Hines, Robinson, Watson, and Williams. (Tr. 28 – 29, 30 (testimony of Respondent).)

130. Those cases were reassigned to other public defenders in August 2014. (Tr. 28 (testimony of Respondent).)

131. Mr. Harris and Mr. Mermelstein determined that it would be best for the cases to be transferred out of their Area so that they could be examined anew and so there would be no appearance of any conflict. (Tr. 155 – 156 (testimony of Steve Harris, District Defender Area 67 of the MPDS ("Harris")); Tr. 216 – 218 (testimony of Mermelstein).)

132. Respondent withdrew from the reassigned cases in September 2014. (Tr. 29 (testimony of Respondent).)

133. On September 4, 2014, Respondent was issued an Employee Improvement Plan by Harris. (Tr. 60 - 61 (testimony of Respondent); Ex. 10.)

134. Respondent met with Mr. Harris and Mr. Mermelstein, Divison Director, about the Employee Improvement Plan. (Tr. 61 - 62 (testimony of Respondent).)

135. The Employee Improvement Plan recites that Respondent had "failed to file timely amended motions or statements in lieu of amended motions in the following cases: Dustin Watson, Christopher Hines, Allen Giles, William Austin, Jeremy Arata, William Williams, Darin Robinson…." (Ex. 10.)

16

Electronically Filed - SUPREME COURT OF MISSOURI - April 28, 2017 - 03:28 PM

136.    The Employee Improvement Plan recites that Respondent's failures "jeopardizes the clients' rights to pursue state postconviction relief." (Ex. 10.)

137.    Mr. Harris, via the Employee Improvement Plan, gave Respondent directives to improve his performance. (Tr. 62 (testimony of Respondent); Ex. 10.)

138.    Respondent signed the Employee Improvement Plan on September 4, 2014. (Ex. 10.)

139.    The Employee Improvement Plan issued to Respondent provides: "You cannot miss filing deadlines for amended motions, statements in lieu of amended motions, or notices of appeal." (Ex. 10.)

140.    Mr. Harris directed Respondent to notify him if there was a time when he would not be able to file a timely amended motion, statement in lieu of an amended motion, or voluntary dismissal before the due dates. (Tr. 64 (testimony of Respondent); Ex. 10.)

141.    Mr. Harris directed Respondent to implement a calendaring system that could be monitored by Respondent's secretary and by Mr. Harris. (Tr. 65 (testimony of Respondent); Ex. 10.)

142.    Respondent's secretary now generates a report for Respondent showing all due dates in the upcoming month. (Tr. 65 - 66 (testimony of Respondent); Tr. 166 – 167 (testimony of Steve Harris).)

143.    Respondent now generates a report for Mr. Harris that includes his deadlines for the month past and the upcoming month. (Tr. 66 (testimony of Respondent); Tr. 166 – 167 (testimony of Steve Harris).)

144.    Mr. Harris also provided in the Employee Improvement Plan that he would meet with Respondent periodically to review and discuss Respondent's performance. (Ex. 10.)

17

145.  The calendaring and system established in September 2014 has been mostly successful.  Respondent has had issues with electronic filing where the filing was not completed before midnight.  He also missed a deadline in another case where he thought he had filed the amended motion, but somehow had not.  (Tr. 65, 69 – 70, 110 - 111 (testimony of Respondent); Tr. 167 – 168 (testimony of Steve Harris).)

146.  Mr. Harris believes Respondent has had a marked improvement in his performance.  (Tr. 171 (testimony of Steve Harris)

### Respondent's Health

147.  Respondent believes his health issues affected his performance between 2010 and 2014.  (Tr. 85, 102, 114 (testimony of Respondent).)

148.  Respondent believes his health condition was a physical disability between 2010 and 2014.  (Tr. 114 - 115 (testimony of Respondent).)

149.  Respondent's health has been fairly stable since he last was hospitalized in 2013.  (Tr. 118 – 119 (testimony of Respondent).)

150.  Respondent believes he is functioning better now than he was in 2011 through 2013.  (Tr. 130 (testimony of Respondent).)

### Respondent's Workload

151.  Respondent believes his workload includes an unreasonable number of cases.  (Tr. 111 (testimony of Respondent).)

152.  Respondent has approximately 110 cases.  (Tr. 122, 126 (testimony of Respondent).)

153.  Steve Harris believes he was assigning too much work to Respondent before the issues in this case were revealed.  (Tr. 172 – 174 (testimony of Steve Harris).)

154. Historically, Respondent filed more amended motions and had more court hearings than anyone else in his office. (Tr. 189 – 190 (testimony of Steve Harris); Tr. 212 – 213 (testimony of Greg Mermelstein, Deputy Director of Specialty Practice and Resources for the MPDS ("Mermelstein")); Ex. D.)

155. Steve Harris believes Respondent's dedication to his clients is beyond reproach. (Tr. 191 – 192 (testimony of Steve Harris).)

156. Steve Harris testified that Respondent has a strong work ethic and even when he was very ill, he did not ask for help. (Tr. 181 (testimony of Steve Harris).)

157. Since August 2014 when the cases which are the subject of this hearing were reassigned, Respondent's supervisor has assigned him more Rule 24.035 motions than he used to, resulting in a slightly lighter workload because Rule 24.035 motions generally have much shorter records and aren't as time-consuming. (Tr. 123 – 124 (testimony of Respondent); Tr. 172 (testimony of Steve Harris).)

158. Since August 2014, Mr. Harris has reduced Respondent's case number assignments as well as the seriousness of the cases he is assigned. (Tr. 172 (testimony of Steve Harris).)

159. Steve Harris believes Respondent is an absolute asset to the office. (Tr. 193 (testimony of Steve Harris).)

160. Steve Harris has no flexibility with regard to the attorneys' heavy workload in Area 67. They actually have lost an attorney position since 2007. (Tr. 195 – 196 (testimony of Steve Harris).)

161. According to senior staff with the MPDS, a Missouri Bar task force, a Missouri Senate Interim Committee, and the American Bar Association have studied the MPDS and found

that the System has more cases than it can ethically, reasonably, or effectively handle. (Tr. 205 (testimony of Mermelstein).)

162.    Public defenders cannot decline cases based on case load. (Tr. 207 – 208 (testimony of Mermelstein).)

163.    The Public Defender Commission Caseload Crisis Protocol suggests that the MPDS needs 269 additional attorneys. The System currently has approximately 370 attorneys statewide. (Tr. 204 (testimony of Mermelstein).)

164.    Greg Mermelstein believes Respondent's work product is of very high quality, that he is hard-working, and that he is very good at untangling complex legal issues such as jail time credit issues. (Tr. 212 – 214 (testimony of Mermelstein).)

## CONCLUSIONS OF LAW

### COUNT I – Robinson

165.    Missouri Rule of Professional Conduct 4-1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

166.    Respondent violated Rule 4-1.3 by not attempting to speak to his client Robinson until two (2) days before the deadline to file an amended motion, by not contacting potential witnesses for Mr. Robinson until he sent them letters three and two days before the deadline to file an amended motion, by not filing any motion, whether an amended motion or a statement in lieu, by the March 13, 2011 due date for an amended motion or by the time Mr. Robinson's case was reassigned in August 2014.

167.    Missouri Rule of Professional Conduct 4-1.4(a) requires a lawyer to (1) "keep the client reasonably informed about the status of the matter;" and (2) "promptly comply with reasonable requests for information."

168.   Respondent violated Rule 4-1.4(a) by failing to keep Mr. Robinson adequately informed in that he did not speak to Mr. Robinson until two (2) days before any amended motion was due, and he did not communicate at all with Mr. Robinson between March 2011 and when Mr. Robinson's case was reassigned in August 2014.

## COUNT II – Hines

169.   Missouri Rule of Professional Conduct 4-1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

170.   Respondent violated Rule 4-1.3 by not attempting to speak to his client Hines until one (1) day before the deadline to file an amended motion, and by not timely filing the amended motion by the March 5, 2013 due date, and by not acting to cause an amended motion to be filed by the time Mr. Hines' case was reassigned in August 2014.

171.   Missouri Rule of Professional Conduct 4-1.4(a) requires a lawyer to (1) "keep the client reasonably informed about the status of the matter;" and (2) "promptly comply with reasonable requests for information."

172.   Respondent violated Rule 4-1.4(a) by failing to keep Mr. Hines adequately informed in that he did not speak to Mr. Hines until one (1) day before any amended motion was due, and he did not communicate at all with Mr. Hines between March 2013 and August 15, 2014 when he wrote Mr. Hines after Mr. Hines complained to Respondent's supervisor.

## COUNT III  – Williams

173.   Missouri Rule of Professional Conduct 4-1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

174.   Respondent violated Rule 4-1.3 by not speaking to speak to his client Williams until eleven (11) days after the November 10, 2013 due date to file an amended motion, by not

21

communicating with all of the witnesses identified by Mr. Williams, by not timely filing the amended motion by November 10, 2013, and by not acting to cause an amended motion to be filed by the time Mr. Williams' case was reassigned in August 2014.

175.     Missouri Rule of Professional Conduct 4-1.4(a) requires a lawyer to (1) "keep the client reasonably informed about the status of the matter;" and (2) "promptly comply with reasonable requests for information."

176.     Respondent violated Rule 4-1.4(a) by failing to keep Mr. Williams adequately informed in that he did not speak to Mr. Hines until eleven (11) days after his amended motion was due, and he did not communicate at all with Mr. Williams between November 21, 2013 and August 2014 when Mr. Williams' case was reassigned.

## COUNT IV – Watson

177.     Missouri Rule of Professional Conduct 4-1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

178.     Respondent violated Rule 4-1.3 by not speaking to his client Watson until three (3) months after the April 16, 2012 due date to file an amended motion, by not requesting his appellate file until after the due date to file an amended motion, by not timely filing the amended motion by the April 16, 2012 due date, and by not acting to cause an amended motion to be filed by the time Mr. Watson's case was reassigned in August 2014.

179.     Missouri Rule of Professional Conduct 4-1.4(a) requires a lawyer to (1) "keep the client reasonably informed about the status of the matter;" and (2) "promptly comply with reasonable requests for information."

180.     Respondent violated Rule 4-4.1(a) by failing to keep Mr. Watson adequately informed in that he did not speak to Mr. Watson until three (3) months after his amended motion

22

was due, and he did not communicate at all with Mr. Watson between July 2013 and August 2014 when Mr. Watson's case was reassigned.

## COUNT VI – Giles

181.    Missouri Rule of Professional Conduct 4-1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

182.    Respondent violated Rule 4-1.3 by not speaking to his client Giles until ten (10) days after the April 15, 2013 due date to file an amended motion, by not filing the statement in lieu after telling Mr. Giles he intended to do so on April 25, 2013 and on March 24, 2014, by not beginning to review Mr. Giles case until April 1, 2013, by not filing any motion, whether an amended motion or a statement in lieu, by the April 15, 2013 due date for an amended motion or by the time Mr. Giles' case was reassigned in August 2014.

183.    Missouri Rule of Professional Conduct 4-1.4(a) requires a lawyer to (1) "keep the client reasonably informed about the status of the matter;" and (2) "promptly comply with reasonable requests for information."

184.    Respondent violated Rule 4-1.4(a) by failing to keep Mr. Giles adequately informed in that he did not speak to Mr. Giles until ten (10) days after any amended motion was due, and he did not communicate at all with Mr. Giles between April 25, 2013 and March 24, 2014, or between March 24, 2014 and when Mr. Giles' case was reassigned in August 2014.

## COUNT VII – Arata

185.    Missouri Rule of Professional Conduct 4-1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

186.    Respondent violated Rule 4-1.3 by not speaking to his client Arata until eleven (11) weeks after the October 22, 2013 due date to file an amended motion, by not filing any motion,

23

Electronically Filed - SUPREME COURT OF MISSOURI - April 28, 2017 - 03:28 PM

whether an amended motion or a statement in lieu, by the October 22, 2013 due date for an amended motion or by the time Mr. Giles' case was reassigned in August 2014.

187.    Missouri Rule of Professional Conduct 4-1.4(a) requires a lawyer to (1) "keep the client reasonably informed about the status of the matter;" and (2) "promptly comply with reasonable requests for information."

188.    Respondent violated Rule 4-1.4(a) by failing to keep Mr. Arata adequately informed in that he only spoke to Mr. Arata one time and that was not until eleven (11) weeks after any amended motion was due, and he did not communicate at all with Mr. Arata between January 2014 and when Mr. Arata's case was reassigned in August 2014.

## RECOMMENDATION OF SANCTION

Respondent failed to communicate with his clients (Robinson, Hines, Williams, Watson, Giles, Arata), and he failed to diligently represent his clients (Robinson, Hines, Williams, Watson, Giles, Arata). Thus, Respondent is guilty of professional misconduct as a result of violating Rule 4-1.3 and 4-1.4(a) of the Missouri Rules of Professional Conduct. When determining an appropriate sanction, Missouri case law is always the first source for analysis. The Supreme Court also often looks to the ABA Standards for Imposing Lawyer Sanctions for guidance when imposing discipline, but considers the Standards advisory. See *In Re: Ehler*, 319 S.W.3d 442, 451 (Mo. banc 2010).

The ABA Standards for Imposing Lawyer Sanctions (1991 Ed.) (hereinafter "ABA Standards") provide a standard for the violation of a particular rule. Section II of the ABA Standards states in part:

> The Standards do not account for multiple charges of misconduct. The ultimate
>
> sanction imposed should at least be consistent with the sanction for the most serious

24

Electronically Filed - SUPREME COURT OF MISSOURI - April 28, 2017 - 03:28 PM

instance of misconduct among a number of violations; it may well be and generally should be greater than the sanction for the most serious violation.

In this case, the evidence shows that the Respondent has violated two (2) Rules six (6) times each.

ABA Sanctions Standard 3.0 provides:

In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:

(a) the duty violated;

(b) the lawyer's mental state; and

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

Under Section II, The Theoretical Framework, the ABA Standards provide that the most important ethical duties are those obligations that an attorney owes the client. Respondent's violations were of obligations he owed his clients.

ABA Standard 4.43 regarding "Lack of Diligence" provides: "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." In *In re Frank*, 885 S.W.2d 328, 333 - 34 (Mo. banc 1994), the court found that the respondent had committed multiple violations of his diligence and communication obligations, and that he had failed to cooperate with bar counsel. The court found 39 violations. "Absent aggravating or mitigating circumstances, reprimand is generally appropriate when a lawyer has received an admonition for the same or similar conduct and engages in further similar acts of misconduct that cause injury or potential injury to a client,

25

the public, the legal system, or the profession." *Id.* at 333, citing ABA Standard 8.3(b). The court suspended respondent Frank's license, however, noting his failure to respond to disciplinary authorities and the "pattern of neglect, [and] the volume and repeated nature of respondent's ethical violations." *Id.* at 334.

All of Respondent's clients who are the subject of this case were allowed to file amended motions for post-conviction relief. Thus far, none have been granted relief based on those amended motions. Respondent's clients were, however, at risk of injury from his violations. If the clients' post-conviction motions had been meritorious, their relief was, at the most, in jeopardy and, at the least, delayed.

Certain aggravating and mitigating factors are applicable in this case. "Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed." ABA Sanction Standard 9.21. In the case at bar, aggravating factors are: Respondent's prior disciplinary offenses (ABA Sanction Standard 9.22(a)); a pattern of misconduct (ABA Sanction Standard 9.22(c)); multiple offenses (ABA Sanction Standard 9.22(d)); and the vulnerability of the victims (ABA Sanction Standard 9.22(h)).

"Mitigation or mitigating circumstances are any consideration or factors that may justify a reduction in the degree of discipline to be imposed." ABA Sanction Standard 9.31. Mitigating factors include Respondent's full and free disclosure to disciplinary counsel and cooperative attitude toward these proceedings (ABA Sanction Standard 9.32(e)), physical disability (ABA Sanction Standard 9.32(h)), and expressed remorse (ABA Sanction Standard 9.32(l)).

Having considered the nature and extent of Respondent's misconduct and the aggravating and mitigating factors, the Disciplinary Hearing Panel recommends that, pursuant to Rule 5.16, Respondent be placed on probation for one (1) year with the conditions that he not violate the

26

Rules of Professional Conduct and that he report to the Chief Disciplinary Counsel, or his designee, every ninety (90) days with the first report being due on the ninetieth day after entry of a final order in this cause by the Missouri Supreme Court. Each report shall include:

1.    Any address change;

2.    Any change of employment;

3.    Any arrests of Respondent;

4.    Any criminal charges brought against Respondent;

5.    Any criminal conviction of Respondent;

6.    Any civil lawsuit filed against Respondent;

7.    Any civil judgment entered against Respondent;

8.    A description of any disputes with clients;

9.    Written confirmation from Respondent's supervisor Steve Harris (or his successor) that Respondent has complied with the Employee Improvement Plan (Exhibit 10);

10.    A written statement under penalty of perjury regarding whether Respondent has complied with the rules of Professional Conduct and all conditions of probation during the preceding calendar quarter;

11.    Notification to the OCDC of any investigation of the Respondent which would raise a question as to Respondent's fitness to practice law;

12.    In addition to all quarterly reports, a final report containing the same information, is due no earlier than thirty (30) days or less than fifteen (15) days prior to the last day of the probation period. With the final report, Respondent may file an application with the Court for an order of successful completion of probation as set forth in Rule 5.225(g). The application shall be accompanied by an affidavit that Respondent has complied with all terms

27

of probation. A copy of the application and affidavit shall be served on the Office of Chief Disciplinary Counsel.

All concur.

Respectfully submitted,

Thomas M. Dunlap, #24508
Presiding Officer

Date: October 31, 2016

Electronically Filed - SUPREME COURT OF MISSOURI - April 28, 2017 - 03:28 PM