UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RANDALL LEE DALTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 17-04057-CV-C-NKL |
| ) | |
| MICHAEL BARRETT, et al., ) | |
| ) | |
| Defendants. ) | |

**SUGGESTIONS IN SUPPORT OF MOTION TO INTERVENE**

The Attorney General – by common law and statute – is vested with the authority to "protect the rights and interests of the state . . . in whatever court or jurisdiction such action may be necessary [and] in any proceeding or tribunal in which the state's interests are involved." § 27.060, RSMo. (2016). That authority and solemn responsibility runs to the entire State and all of its citizens. Unfortunately, recent actions in this litigation have demonstrated the Public Defender Commission ("Commission") is not protecting the interests of the State and all of its people. Indeed, the plaintiffs and defendants have joined in common cause and moved the Court to enter a consent judgment that would allow untold numbers of alleged felons to avoid criminal prosecution because the Commission does not want its attorneys working more than 40 hours per week. Yet, the very terms in the proposed consent judgment undermine Missouri statutes that already provide mechanisms for the very situation supposedly warranting sweeping changes to Missouri's criminal justice system.

Moreover, counsel for the Commission has directly and explicitly refused to cooperate with the Attorney General's Office regarding the case. The Commission was asked directly – "please tell [us] when and where the mediation is scheduled" – but they refused. Their continued refusal

1

was not without knowledge of the consequences to the interests of the State and all of its people.

The Commission was told:

> Even though this case involves important interests of the State of Missouri you have refused to inform us regarding the defense of the case, trial strategy, or any other details about the case, including the date and location of potential settlement discussions/mediation.
>
> In light of these refusals we have no choice but to conclude that you have made an intentional decision to not cooperate or assist the Attorney General's office and instead have decided to obstruct our efforts to even be aware of how the interests of the State are being represented in this important case. This would be a forfeiture of any coverage under the legal expense fund with all the attendant consequences. *See Sherf v. Koster*, 371 S.W.3d 903, 909 (Mo. App. W.D. 2012) ("[T]he statute is clear that the Attorney General must be able to investigate and defend the claim. It specifically forbids payment of claims from the Fund where a defendant does not cooperate with the Attorney General in their defense …. [A party] cannot seriously claim that it is sufficient for purposes of Fund coverage that the Attorney General be able to argue the issues of costs and attorneys' fees after the defendant has already lost his case and the attorney fees and costs have already been incurred."); *Vasic v. State*, 943 S.W.2d 757, 759 (Mo. App. E.D. 1997) ("[F]und liability is not premised on the judgment creditor's notice but on the cooperation of the state employee. [F]ailure to cooperate by … involving the attorney general in the settlement of the action prevents payment from the State Legal Expense Fund.").

Unfortunately, the Commission has demonstrated that it does not intend to protect the interests of the State and all of its citizens but would, instead, put in jeopardy the safety and interests of all Missourians. As such, disposing of this matter without the involvement of the Attorney General will impair the Attorney General's ability to defend the State and all of its people. Therefore, the Attorney General must be permitted to intervene as a matter of right under Rule 24(a)(2). In the alternative, the Court should grant the Attorney General permission to intervene under Rule 24(b)(1)(B) because the Attorney General will assert defenses that share common questions of law and fact with the underlying litigation and that are directly responsive to Plaintiffs' claims.

## I. The Attorney General Is Entitled to Intervene As of Right Under Rule 24(a)(2).

"Rule 24 should be liberally construed with all doubts resolved in favor of the proposed intervenor." *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). To intervene as of right under Rule 24(a), an applicant must demonstrate that "(1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties." *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997). A proposed intervenor must satisfy all three conditions to intervene as a matter of right, and the motion to intervene must be timely. *Id.* The Attorney General satisfies each of these conditions.

*First*, the Attorney General has a recognized interest in the subject matter of the litigation. At its core, this lawsuit ultimately seeks to make sweeping changes to Missouri's criminal justice system. A state's police power to protect its people is one of a state's most fundamental interests. "The function of police power is to preserve the health, welfare and safety of the people by regulating all threats harmful to the public interest." *State v. Richard*, 298 S.W.3d 529, 532 (Mo. banc 2009). "And in the exercise of such powers the state has wide discretion in determining its own public policy and what measures are necessary for its own protection and properly to promote the safety, peace and good order of its people." *Terrace v. Thompson*, 263 U.S. 197, 217 (1923).

Acting on behalf of the State, the Missouri Attorney General is the state's chief lawyer and law enforcement official. *See State ex rel. Taylor v. Nangle*, 227 S.W.2d 655, 659 (Mo. banc 1950). The Attorney General has the common-law right to being a suit on behalf of the state as long as there is a public interest in the matter. *See State ex rel Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 128 (Mo. banc 2000). Under the common law, "the attorney general has wide discretion in making the determination as to the public interest." *State of Fla. ex rel. Shevin v.*

3

*Exxon Corp.*, 526 F.2d 266, 268–69 (5th Cir. 1976). "It is for the attorney general to decide where and how to litigate issues involving public rights and duties and to prevent injury to the public welfare." *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 347 (Mo. App. W.D. 1980). "The attorney general of Missouri is the only constitutional officer whose powers and duties are not specifically provided for *or limited* by the constitution. . . . The absence of a provision for specific powers for the attorney general in our constitution *vests the office with all of the powers of the attorney general at common law*." *State ex rel. Nixon*, 34 S.W.3d at 136 (emphasis added).

The Attorney General's interest in the state's criminal justice and prosecution system goes to the heart of the common-law duties of the attorney general—protecting the people of the State of Missouri. What is more, the parties seem to acknowledge that the Attorney General has a stake in this litigation. The parties' proposed consent judgment specifically defines "criminal justice stakeholders" to include "prosecutors . . . or other actors within, or with authority over, Missouri's criminal legal system." [Doc. 222-1, p. 11].

In addition, Missouri law specifically confers upon the Attorney General authority to "institute, in the name and on behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations in whatever court or jurisdiction such action may be necessary." § 27.060, RSMo (2016). And Missouri courts have held that the "Attorney General is, of course, generally authorized to seek enforcement of the General Assembly's statutory purposes." *Fogle v. State*, 295 S.W.3d 504, 510 (Mo. App. W.D. 2009). The "Attorney General, both because of his statutory and common law powers, is a proper party to bring an action for the state . . . which would prevent injury to the general welfare." *State ex rel. Taylor v. Wade*, 231 S.W.2d 179, 182 (Mo. banc 1950). This is a broad grant of authority;

4

Missouri courts have allowed the Attorney General to intervene in other lawsuits where other state entities were named defendants, so long as state interests are involved in the litigation. *See Dunivan v. State*, 466 S.W.3d 514, 518 (Mo. banc 2015).

Federal courts routinely permit the government to intervene in a civil matter based on the government's inherent interest in ongoing criminal proceedings. *See, e.g.*, *S.E.C. v. Shanahan*, 2007 WL 3232248 (E.D. Mo. Oct. 30, 2007); *Pfizer Ireland Pharm. v. Albers Med., Inc.*, 225 F.R.D. 591, 592 (W.D. Mo. 2004). This interest is unique to prosecuting attorneys, like the Attorney General. *See Parkhurst v. Tabor*, 569 F.3d 861, 866 (8th Cir. 2009). The plaintiffs in this action have ongoing criminal trials being prosecuted by the State of Missouri. [*See* Doc. 1-2, Complaint, ¶¶ 22-25]. This Court, too, should permit the Attorney General to intervene in this case based on the Attorney General's significant interests in the subject matter of this litigation.

***Second***, the Attorney General's interests—and the interests he represents—will be impaired by the disposition of this case without the Attorney General's presence. If Plaintiffs would ultimately obtain the relief requested, whether at trial or through the proposed consent judgment, these interests are directly implicated. The Court may declare that Plaintiffs have not been presented with adequate legal representation during their criminal proceedings, which might ultimately raise serious concerns for the Attorney General, who represents the State in many criminal trials and in all criminal appeals and habeas proceedings. *See* § 27.050, RSMo (2016).

Under the proposed consent judgment, Missouri's public defenders will be required to take certain actions in criminal trials and appeals, including conducting discovery under certain timelines, requesting hearings, filing briefs, and seeking oral argument. As the representative of the State in many criminal trials and in all criminal appeals, the terms of the consent judgment will

5

affect not only the work of Missouri's public defenders, but also that of the Attorney General and his office, which routinely appears on the other side of a party represented by a public defender.

This case has broader implications than the relief that might be awarded to the individual Plaintiffs in this case. From the outset of the litigation, Plaintiffs have made clear that they want to obtain relief on behalf of all current and future indigent criminal defendants. [*See* Doc. 1-2, Complaint, p. 52]. And despite this Court's recent order denying Plaintiffs' motion for class certification [Doc. 212], the parties now propose to enter into a far-reaching consent judgment that effectively grants class-wide relief. The proposed consent judgment makes as third-party beneficiaries "all indigent persons who are now, or who will be, under formal charge before a state court in Missouri . . . and who are represented by MSPD, or should be represented by MSPD[.]" These third parties—representing an untold number of criminal defendants—can sue to enforce the terms of the consent judgment.

The relief sought in the case and in the proposed consent judgment will cause grave risks to public safety. Under the proposed consent judgment, prosecutors may be asked to eliminate incarceration as a possible sentence in criminal proceedings. Courts may be required to entirely dismiss criminal cases. Individuals accused of some of the most serious felonies in Missouri—rape, kidnapping, armed robbery—may walk free without undergoing a trial because a public defender's office will refuse to take any cases that will require an attorney to work more than 40 hours per week. The Attorney General was not invited to participate in drafting these terms or consulted on the monumental impact the proposed consent judgment will have on public safety.

The proposed consent judgment also undermines statutes that address the workload and resources of Missouri's public defenders and infringes on the prerogatives of the legislature by attempting to obligate the state to unknown costs. Section 600.062, RSMo (2016), provides that

the Public Defender shall "not have the authority to limit the availability of any . . . public defender to accept cases based on a determination that the office has exceeded a caseload standard."  Instead, § 600.063, RSMo (2016), allows a public defender to file a motion with a court seeking a status conference on that specific attorney's caseload, and after conferring the court may choose to appoint a private attorney, place a case on a waiting list, grant continuances, or take other actions.  The public defenders have used this very provision throughout the State, but now are attempting to circumvent it.  The proposed consent judgment – by requiring a public defender's office to refuse cases when any attorney in the office's caseload exceeds 40 hours per week – directly contravenes Missouri law and the General Assembly's intent to ensure that indigent defendants are provided with a public defender.  And nothing in these statutes speak to the absurd proposition that courts may dismiss a case based entirely on an individual public defender's workload.  The proposed consent judgment, on the other hand, does just that, providing for dismissal of a case "in lieu of processing additional indigence applications when [the 40 hour-per-week] standard has been reached."  [Doc 222-1, p. 29].

The Attorney General is uniquely situated to ensure that the rule of law is upheld.  No party to this proceeding shares the Attorney General's duty to enforce the law.  Rather, both parties to this proceeding likely have an interest in undermining the plain text and the legislature's intent in enacting § 600.062, RSMo (2016).  The Attorney General must be permitted to intervene in these proceedings to protect public safety in Missouri and ensure that Missouri's statutes are enforced.

***Third***, Defendants are not adequately representing the interests that the Attorney General represents.  The Commission has previously filed a suit against the State based on substantially similar issues present in this case—the resources of Missouri public defenders.  *Barrett v. Greitens*, 542 S.W.3d 370, 374 (Mo. App. W.D. 2017).  Perhaps even more notably, Defendant Barrett has

7

Case 2:17-cv-04057-NKL   Document 223   Filed 05/14/19   Page 7 of 11

often made public comments suggesting that the ills he sees from perceived inadequate resources provided to MSPD (similar to the ills asserted in this lawsuit) can be remedied by legal action against the state by criminal defendants (legal action like this lawsuit).[1]

Based on these comments, it is clear Defendants are not representing the interests of the State, but only their lawyers. And from reviewing the proposed consent judgment, its terms may not only negatively impact prosecutors, victims, and public safety generally, it may negatively impact indigent criminal defendants. By indiscriminately limiting the number of hours worked per public defender, it is entirely likely that many indigent defendants will not be able to gain access to a lawyer at all. At best, Defendants are not adequately representing the interests of all Missourians and the specific interests the Attorney General is charged with representing; at worst, Defendants' interests actually conflict from the Attorney General's interests. The Attorney General has a fundamental interest in protecting public safety, promoting the public welfare, and ensuring the integrity of a criminal prosecution. Defendants do not represent those interests and the Attorney General must be permitted to intervene in order to secure them.

*Finally*, this motion is timely. Timeliness of an intervention motion is based on the totality of the circumstances, but courts must at least consider: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking

---

[1] See "Missouri's Public Defender System Struggles with Funding Issues, Caseloads and Politics", Sequence Media News (July 15, 2015) <http://www.sequencemedianews.com/the-lbn-blog/2015/7/15/missouris-public-defender-system-struggles-with-funding-issues-caseloads-and-politics>; "Missouri Public Defender Warns Department in Crisis", Associated Press (Feb. 22, 2016) <http://abcstlouis.com/news/local/missouri-public-defender-warns-department-in-crisis-02-22-2016-215413442>; Michael Barrett, "Using Caseload Standards, Time Logs, and Other Tools to Get Public Defender Funding" (June 3, 2016) <http://www.publicdefenders.us/blog_home.asp?display=19>.

intervention may prejudice the existing parties." *Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011).

This litigation was filed approximately two years ago, but it has not progressed to the trial stage. Indeed, this Court denied Plaintiff's class certification motion only two months ago. When the Attorney General's Office represented former state entities that have since been dismissed, the Attorney General's Office obtained some discovery. The Attorney General's Office attempted to participate in this case through consulting with counsel for the Public Defender Commission on several occasions in 2019. Counsel for the Commission, however, repeatedly rebuffed these attempts, refusing to provide case files and even the time, date, and location of mediation. The Attorney General's Office was thus unable to attend and participate in mediation, which presumably led to the parties' development of the proposed consent judgment. As such, the Attorney General's Office was unaware that the parties were discussing and proposing to seek a far-reaching consent judgment that would impact the entire criminal justice system in Missouri, especially after this Court denied Plaintiffs' motion for class certification. Intervention only became necessary after the Attorney General's Office received notice of the proposed consent judgment, and the Attorney General's Office moved swiftly to intervene after reviewing the proposal. Finally, as to prejudice to any party, the Attorney General's intervention in this case would not unduly prejudice any existing party. Trial is months away and the Attorney General's Office has already communicated with the parties throughout this litigation. The Attorney General's Office believes that any additional discovery could be accommodated by reasonable adjustments to the scheduling order governing this litigation.

**II.     The Attorney General Should be Permitted to Intervene Under Rule 24(b)(1).**

Under Rule 24(b)(1), a party may be granted permission to intervene in a case if the party "has a claim or defense that shares with the main action a common question of law or fact."  In deciding whether to grant intervention under Rule 24(b)(1), courts in the Eighth Circuit consider "(1) whether the motion to intervene is timely; (2) whether the movant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights."  *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 266 (D. Minn. 2017).  "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights."  *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003)

For reasons expressed above, this motion is timely.  Next, the Attorney General shares a question of law in common with the underlying action – whether the Public Defender Commission has provided constitutionally-adequate representation to criminal defendants.  The Attorney General will assert the defense that Defendants have met that standard.  The Attorney General's defenses are directly responsive to Plaintiffs' claims.  The Attorney General has an interest in ensuring the integrity of the criminal justice system.  Finally, for the reasons discussed above, intervention will not unduly prejudice any of the parties to this litigation.

## CONCLUSION

For the reasons stated, the Court should allow the Attorney General to intervene as a defendant in this case pursuant to Federal Rules of Civil Procedure 24(a)(2) and (b)(1)(B).

Respectfully submitted,

**ERIC S. SCHMITT**
*Attorney General*

*/s/ Jeremiah J. Morgan*
Jeremiah J. Morgan
   Deputy Attorney General - Civil
   Missouri Bar No. 50387
Cristian M. Stevens
   Deputy Attorney General - Criminal
   Missouri Bar No. 48028
Julie M. Blake
   Deputy Solicitor General
   Missouri Bar No. 69643
Missouri Attorney General's Office
P.O. Box 899
Jefferson City, MO 65102
Phone: 573-751-3321; Fax: 573-751-9456

ATTORNEYS FOR INTERVENOR THE
MISSOURI ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

     I hereby certify that on the 14th day of May, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using the Court's online case filing system, and thereby served on all parties in the case.

*/s/ Jeremiah J. Morgan*
Jeremiah J. Morgan