**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| RANDALL LEE DALTON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-04057-CV-C-NKL |
| | ) | |
| MICHAEL BARRETT, *et al.*, | ) | **Oral Argument Requested** |
| | ) | |
| Defendants. | ) | |

**MSPD DEFENDANTS' SUGGESTIONS IN OPPOSITION TO**
**ATTORNEY GENERAL'S MOTION TO STAY**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................. ii

STATEMENT OF FACTS ............................................................................. vi

ARGUMENT

I.    The Attorney General has already caused substantial delay in this case....................1

II.   A stay only delays recognition that the uncontroverted evidence in this case
      gives Plaintiffs a reasonable likelihood of success on the merits ..............................2

III.  A stay will only increase the likelihood that more lawsuits will be filed ...................5

IV.  The proposed Consent Judgment resolves MSPD's Catch-22 of having
     to choose between compulsory representation and providing effective assistance
     of counsel ....................................................................................................5

V.   MSPD represents the interests of the State and the proposed Consent Judgment
     is in the best interest of the State ...............................................................11

CONCLUSION ..............................................................................................13

i

# TABLE OF AUTHORITIES

Page (s)

**FEDERAL CASES:**

*Bae Sys. Land and Armaments L.P. v. Ibis Tek, LLC*, 124 F.Supp.3d 878

(D. Minn. 2015) ........................................................................................1

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ........................................................1

*Kemin Foods, L.C. v. Pegmentos Vegatales del Centro S.A. de C.V.*,

384 F.Supp.2d 1334 (S.D. Iowa 2005) ..........................................................1


**STATE CASES:**

*In Re Karl Hinkebein*, Case No. SC96089 ...................................................6, 7

*In re: Area 25 Public Defender Office*, Case No. 17PH-CV02226 ...................................9

*Petsch v. Jackson County Prosecuting Attorneys Office*, 553 S.W.3d 404

(Mo. Ct. App. 2018).................................................................................10

*State ex rel. Hazel v. Mayer*, Case No. SC96736...........................................................7

*State ex rel. Hazel v. Mayer*, Case No. SD35176 ...........................................................7

*State ex rel. Mo. Pub. Def. Comm'n v. Pratte*, 298 S.W.3d 870

(Mo. banc 2009)...............................................................5, 6, 8, 11, 12

*State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592 (Mo. banc 2012) ..5, 6, 9

*State of Missouri v. Benjamin Byers*, Case No. 1716-CR05046.....................................8

*State of Missouri v. Christopher Kruse*, Case No. 1716-CR04391................................10

*State of Missouri v. Clarence Sims*, Case No. 1716-CR02810 .........................................8

*State of Missouri v. Daniel Carver*, Case No. 17SD-CR01249............................................7

*State of Missouri v. Deandre Davis*, Case No. 1716-CR05073.........................................8

Case 2:17-cv-04057-NKL   Document 226   Filed 05/28/19   Page 3 of 21

*State of Missouri v. Hubert Holmes*, Case No. 1716-CR04510.........................................8

*State of Missouri v. James L. Bush*, Case No. 1716-CR01680..........................................8

 *State of Missouri v. Jeremy Vaughn***,** Case No. 17SD-CR01224........................................7

*State of Missouri v. Jordan Thornton*, Case No. 1716-CR04717...................................8

*State of Missouri v. Keith A. Nevels,* Case No. 1616-CR01742-01 .................................7

*State of Missouri v. Luzell McBride*, Case No. 1716-CR05343 .....................................8

*State of Missouri v. Malik Holman*, Case No. 1716-CR05294..........................................8

*State of Missouri v. Mariah Evans***,** Case No. 16ML-CR1300-01 .................................10

*State of Missouri v. Travon Jones,* Case No. 1716-CR04941.........................................8

*State of Missouri v. Zachary Tucker*, Case No. 17SD-CR01237 .....................................7

**STATE STATUTES:**

Mo. Rev. Stat. §600.042 ...........................................................................................5

Mo. Rev. Stat. §600.062 .........................................................................................13

Mo. Rev. Stat. §600.063 ...................................................................................., 10

**RULES:**

American Bar Association Formal Opinion, 06-441 ...........................................6

Mo. Rules Prof'l Conduct 4-1.7.........................................................................6

**OTHER AUTHORITIES:**

*A Report on the Operation of the Missouri State Public Defender*

    *The Spangenberg Group (June 1993)*.............................................................3

*ABA Report on Missouri Public Defender Caseloads Provides Blueprint for National Reform*, July 31, 2014, available at: https://www.americanbar.org/news/abanews/aba-news-archives/2014/07/aba_report_on_missou/ ...................................................................4

*Assessment of the Missouri State Public Defender System, Final Report*, *The Spangenberg Group and The Center for Justice, Law and Society at George Mason University* (October 2009) ................................................................3

*Assessment of the Missouri State Public Defender System*, The Spangenberg Group (October 26, 2005) ..........................................................................................3

*Investigation of the St. Louis County Family Court, United States Department of Justice, Civil Rights Division* (July 31, 2015) .............................................................4

*Judge: Public defender system overloaded,* News Tribune, Jeff Haldiman, Nov. 8, 2017, available at: www.newstribune.com/news/local/story/2017/nov/08/judge-public-defender-system-overloaded/699022/ .........................................................................10

Missouri State Public Defender Annual Report for Fiscal Year 2018, available at: www.publicdefender.mo.gov .........................................................................4

*Missouri: Justice Rationed, An Assessment of Access to Counsel and Quality of Juvenile Defense Representation in Delinquency Proceedings*, National Juvenile Defender Center (Spring 2013) ...................................................................................3

*Senate Committee Substitute for Senate Bill No. 37*, 95th *Missouri General Assembly*, 2009.........................................................................................................12

*The Missouri Project: A Study of the Missouri Public Defender System and Attorney Workload Standards,* RubinBrown (June 2014).......................................................4

iv

*The Spangenberg Group, Letter to Keith Birkes, Executive Director,*

    *The Missouri Bar* (May 4, 1993) .................................................................................2

*Veto Message for Senate Committee Substitute for Senate Bill No. 37,*

    Governor Jeremiah W. (Jay) Nixon, July 13, 2009 .......................................................12

v

## STATEMENT OF FACTS

The Attorney General has known about this lawsuit since March 15, 2017, because it was served with process on that date. *See* Document No. 5 filed in this case. This Court originally scheduled trial to begin on May 14, 2018, and ordered all discovery to be completed on or before December 15, 2017. *See* Document Nos. 35 and 86. However, after the Court granted, in part, and denied, in part, the Attorney General's Motion to Dismiss the State as defendants, the Court rescheduled the trial to begin on May 29, 2018. *See* Document No. 69. Substantial and time-consuming discovery then took place, including numerous interrogatories, requests for production, and depositions of at least a dozen MSPD attorneys. *See*, *e.g*., Documents Nos. 80, 82, 90, 93, 95, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 118, 119, 120, 121, 122, 124, 153. Then, on January 18, 2018, the Attorney General filed its first Motion to Stay this case pending its appeal to the Eighth Circuit on the Motion to Dismiss. *See* Document No. 133. On April 17, 2018, this Court continued the trial date to August 15, 2018 (s*ee* Minute Entry No. 190); then again, on April 23, 2018, this Court continued the trial to October 15, 2018 (*see* Document No. 191); and, on August 28, 2018, this Court struck the trial setting altogether pending resolution of the Eighth Circuit appeal. *See* Minute Entry No. 196.

Once the appeal was resolved, removing the State from the lawsuit (*see* Minute Entry No. 211), the Court again re-set the trial for August 19, 2019. *See* Document No. 219. In contemplation of the trial, the parties engaged in mediation until they could agree on a proposed consent judgment, which was jointly filed on May 13, 2019. *See* Document No. 221. And then, on May 14, 2019, after the trial date had been re-set on four prior occasions, and after successfully removing the State from the lawsuit, the Attorney General filed a Motion to

Intervene in order to get back into this case (*see* Documents Nos. 222 and 223) as well as its second Motion to Stay. *See* Document No. 224.

# ARGUMENT

MSPD-Defendants (Michael Barrett, H. Riley Bock, Charles Jackson, Craig Chval and A. Crista Hogan) submit that the Attorney General's Motion to Stay, filed May 14, 2019, should be denied for the following reasons.

## I.      The Attorney General has already caused substantial delay in this case

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. ***Bae Sys. Land and Armaments L.P. v. Ibis Tek, LLC***, 124 F.Supp.3d 878, 889 (D. Minn. 2015). The proponent of the stay bears the burden of establishing its need. ***Id***. "Because a stay of proceedings has the potential to damage the party opposing it, the decision to stay should weigh the 'competing interests and maintain an even balance' recognizing that the Supreme Court has counseled moderation in its use." ***Id***. at 890 (quoting ***Landis v. N. Am. Co***., 299 U.S. 248, 255 (1936))(district court citation omitted). A stay is the exception and not the rule. ***Id***. (citation omitted).

In determining whether to stay a judgment pending appeal, a court should consider the following factors: (1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants a stay; and (4) the public interest in granting the stay. ***Kemin Foods, L.C. v. Pegmentos Vegatales del Centro S.A. de C.V.***, 384 F.Supp.2d 1334, 1338 (S.D. Iowa 2005).

Here, the Attorney General's likelihood of success on the merits is low because of the uncontroverted evidence that MSPD is unable to provide effective representation given its excessive number of clients (discussed *infra*); (2) MSPD will be harmed by a stay because of the

1

risk of additional lawsuits from similarly situated clients and wait-listed defendants (discussed *infra*) and, further delaying this litigation needlessly propels the parties toward trial, at tremendous cost and time to MSPD, when they have already agreed on a resolution in this matter, all of which further frustrates MSPD's ability to meet its statutory obligations; (3) indigent defendants will be harmed because thousands of indigent defendants are currently not receiving *any* representation and the proposed Consent Judgment, which seeks to resolve this matter, would eliminate MSPD's existing defendant wait lists; and (4) the public interest is against a stay because it delays providing indigent citizens with constitutionally effective assistance of counsel.

## II.     A stay only delays recognition that the uncontroverted evidence in this case gives Plaintiffs a reasonable likelihood of success on the merits

MSPD has agreed to the proposed Consent Judgment, in large part, because Plaintiffs have a reasonable likelihood of success on the merits in this case. The Attorney General's Motion to Stay only delays, and does not alter, that reality.

The uncontroverted evidence in this case derives, in part, from multiple reports and studies that have tracked MSPD throughout its existence, each of which concludes, or provides substantial support for the conclusion, that MSPD is not providing effective representation to indigent defendants.

In 1993, the American Bar Association (ABA) asked the Spangenberg Group to review the state's public defender system; it found that "the Missouri program is the worst funded statewide program in the country" (*The Spangenberg Group, Letter to Keith Birkes, Executive Director, The Missouri Bar*, May 4, 1993, at 2) (attached as Exhibit A) and "lacks the necessary

2

resources to provide competent representation." *A Report on the Operation of the Missouri State Public Defender, The Spangenberg Group*, June 1993, at 6.  (Attached as Exhibit B).

In 2005, after the Spangenberg Group was again asked to conduct a review, this time by *The Missouri Bar*, it determined that MSPD was "operating in a crisis mode" and "the probability that public defenders are failing to provide effective assistance of counsel and are violating their ethical obligations to their clients increases every day." *Assessment of the Missouri State Public Defender System, The Spangenberg Group*, October 26, 2005, at 2. (Attached as Exhibit C).

In 2009, The Spangenberg Group returned for a third time to find that things had worsened. "MSPD has had no additions to its staff, despite the fact that during the previous years . . . the MSPD caseload increased by as many as 12,000 cases." *Assessment of the Missouri State Public Defender System, Final Report*, *The Spangenberg Group and The Center for Justice, Law and Society at George Mason University*, October 2009, at 2.  (Attached as Exhibit D).

In 2013, the National Juvenile Defender Center (NJDC), after reviewing the quality of representation being provided to children, concluded that "Missouri's indigent defense system is in crisis and has endured at least two decades of crushing caseloads and inadequate resources to provide its mandated services." *Missouri: Justice Rationed, An Assessment of Access to Counsel and Quality of Juvenile Defense Representation in Delinquency Proceedings*, National Juvenile Defender Center, Spring 2013, at 7.  (Attached as Exhibit E).  The NJDC also found that juveniles accused of crimes often go unrepresented at critical stages of their cases, and nearly 60 percent of court-involved children appear to go without a public defender entirely.  *Ex. E* at 35.

In 2015, the U.S. Department of Justice (DOJ), after a lengthy investigation, found that poor children were being deprived of their constitutional rights for reasons that include "the

3

staggering caseload of the sole public defender assigned to handle all indigent juvenile delinquency cases . . . ." *Investigation of the St. Louis County Family Court, United States Department of Justice, Civil Rights Division*, July 31, 2015, at 2. (Attached as Exhibit F).

In 2014, in conjunction with the ABA's Standing Committee on Legal Aid and Indigent Defense, the RubinBrown accounting firm conducted a rigorous, empirical caseload study, which revealed that MSPD's public defenders only spend about 21% of the time that should, on average, be spent on a particular case type.[1] *See The Missouri Project: A Study of the Missouri Public Defender System and Attorney Workload Standards*, RubinBrown, June 2014. (Attached as Exhibit G). The ABA has described this study as "groundbreaking because it provides clear, empirical evidence about the crisis in public defense systems" and shows that "Americans are being denied their constitutional right to adequate counsel."[2]

In addition, data from MSPD's own case management system reveals that public defenders have only taken depositions in 3% of cases; conducted investigations in only 22% of cases; and had a jury trial in less than one percent (.75%) of trial division cases that could have went to trial.[3, 4]

In sum, these data points, together with the contents of the many reports and studies, prompt MSPD to conclude that Plaintiffs have a likelihood of success at trial. The Attorney

---

[1] See *The Missouri Project* at 16-23 (calculation is determined by factoring the number of hours by the number of cases by case type).
[2] *ABA Report on Missouri Public Defender Caseloads Provides Blueprint for National Reform*, July 31, 2014, available at: https://www.americanbar.org/news/abanews/aba-news-archives/2014/07/aba_report_on_missou/ (last accessed May 26, 2019).
[3] A number of cases handled by MSPD's trial division are not eligible for a jury trial, to include mental health release petition cases, juvenile cases, and probation revocation cases.
[4] Data extracted from MSPD's case management system and the Missouri State Public Defender Annual Report for Fiscal Year 2018, available at: www.publicdefender.mo.gov.

4

General's Motion to Stay does not change these facts; it only further delays a resolution in this matter.

### III.     A stay will only increase the likelihood that more lawsuits will be filed

The claims brought forth by Plaintiffs in this case are not unique.  Indeed, there are thousands of indigent defendants[5] currently on wait-lists and not receiving any representation for reasons that are discussed *infra*.  MSPD remains cognizant of the fact that any of these wait-listed defendants, or all of them, can bring litigation against MSPD that is either similar or identical to the instant litigation.  Under the proposed Consent Judgment, these individuals would be prospective third-party beneficiaries, thus protecting MSPD from having to defend against additional litigation on similar issues.  In the absence of the proposed Consent Judgment, or if further delay is invoked, MSPD may face yet additional lawsuits.

### IV.     The proposed Consent Judgment resolves MSPD's Catch-22 of having to choose between compulsory representation and providing effective assistance of counsel

MSPD has, for the past several years, operated in an untenable 'Catch-22' that has public defenders wedged between compulsory representation and their ethical obligations.

While MSPD is statutorily required to provide representation to indigent criminal defendants, *see* Mo. Rev. Stat. § 600.042, the Supreme Court of Missouri has made it quite clear that "'public defenders are risking their own professional lives' when appointed to an excessive number of cases.'"  *State ex rel. Missouri Public Defender Com'n v. Waters,* 370 S.W.3d 592*, 608 (Mo. banc 2012), citing *State ex rel. Missouri Public Defnder Com'n v. Pratte*, 298 S.W.3d 870, 880 (Mo. banc 2009).  The Rules of Professional Conduct "apply not just in relation to new

---

[5] At the time of this filing, there are more than four thousand indigent defendants on wait lists throughout Missouri.

5

clients, but also to existing clients, so that an attorney's acceptance of a new case violates Rule 4-1.7 if it compromises her ability to continue to provide effective assistance to her other clients." *Waters*, 370 S.W.3d at 607. Specifically, Rule 4-1.7 requires that "'a lawyer shall not represent a client if the representation involves a concurrent conflict of interest,' which exists if "'there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client.'" *Id*. (citing *Mo. Rules Prof'l Conduct* 4-1.7(a)(2)); "[a] conflict of interest is inevitably created when a public defender is compelled by his or her excessive caseload to choose between the rights of the various indigent defendants he or she is representing." *Waters*, 370 S.W.3d at 608.

For the past several years, MSPD has attempted to navigate this 'rock-and-a-hard-place' scenario by pursuing relief under both statute and the Rules of Professional Conduct. However, nothing has worked. After repeated warnings from the Supreme Court of Missouri, in *Pratte* and *Waters*, those threats became a reality. In 2017, Assistant Public Defender Karl Hinkebein found himself before the Supreme Court of Missouri facing professional discipline for failing to meet a number of filing deadlines. *In Re Karl Hinkebein, Case No. SC96089*, September 7, 2017. While the Office of Chief Disciplinary Counsel conceded that Mr. Hinkebein's caseload was excessive ("Respondent believes his workload includes an unreasonable number of cases."), this did not mitigate the violation of the ABA Model Rules. *See In Re: Karl Hinkebein, Supreme Court No. SC96089, Informant's Brief*, April 28, 2017, at 27. (Attached as Exhibit H)*; see also ABA Formal Opinion* 06-441, at 1 ("If workload prevents a lawyer from providing competent and diligent representation to existing clients, she must not accept new clients."). (See Exhibit T at 1).

6

After Mr. Hinkebein was disciplined -- he ultimately resigned his position -- attorneys in several offices began to notify their respective courts of significant ethical concerns emanating from their inability to provide effective representation given excessive caseloads. The first to do so was Area 35 (Kennett Trial Office) (*see* District Defender Leslie Hazel letter to Judges, September 28, 2017) (attached as Exhibit I); however, the local court denied her claim and continued appointing her attorneys to cases. *See Hearing for Appointment of Office of Public Defender in State of Missouri v. Zachary Tucker*, Case No. 17SD-CR01237; *State of Missouri v. Jeremy Vaughn*, Case No. 17SD-CR01224; *State of Missouri v. Daniel Carver*, Case No. 17SD-CR01249, October 5, 2017, at 70 (Attached as Exhibit J). Then, with *In re Hinkebein* fresh in her mind, Ms. Hazel filed writs to both the Missouri Court of Appeals, Southern District, and the Supreme Court of Missouri. Both writs were denied. *See State ex rel. Hazel v. Mayer*, No. SD35176, (October 13, 2017), and *State ex rel. Hazel v. Mayer*, No. SC96736 (October 17, 2017). (Attached Exhibits U and V).

In Area 16 (Kansas City), District Defender Petsch appeared in *State of Missouri v. Keith A. Nevels* to notify the court that she did not have an attorney available who could effectively provide representation in the case:

> The Court: How much evidence do you have on your motion, Ms. Petsch?
>
> Ms. Petsch: Well, Your Honor, I have every attorney in the Public

Defender's Office here to talk about their obligations under Rule 4 to this Court . . . who all say that they ethically can't take more cases under Rule 4.

*See State of Missouri v. Keith Nevels, Transcript of Proceedings, No. 1616-CR01742-01*, October 19, 2017, at 3-4. (Attached as Exhibit K).

Notwithstanding, the court refused to "hear argument on Rule 4" and denied the motion to reconsider the appointment. *See id.* at 5-6.

In that same trial office, Assistant Public Defender Laura O'Sullivan informed the court of the following: "I have over 100 cases, 6 of those being homicide . . . between 25 and 30 people in custody at this moment . . . I am not meeting my ethical obligations to all of my clients . . . my personal reading of the ethical rules requires me not to file an entry of appearance . . . it's putting my bar license in danger because the court is ordering me to make a choice between violating the Rules of Professional Conduct or following this court order . . . ." The court denied Ms. O'Sullivan's appeal and continued her appointment. *State of Missouri v. Hubert Holmes*, *No. 1716-CR04510*, Hearing, December 7, 2017, at 1-2. (Attached as Exhibit L).

Also in the 16th Judicial Circuit (Kansas City), efforts to inform the court of concurrent conflicts of interest were met with repeated orders directing them to violate their ethical obligations ("having heard Public Defender['s] assertion that he is unable to provide competent representation to both Mr. Jones and [his] many other clients . . . , [he] is ordered to violate Missouri Supreme Court Rule 4, and enter a full and not-limited entry of appearance . . . ." *State of Missouri v. Travon Jones, Order, Case No. 1716-CR04941*, January 18, 2018.[6] (Attached as Exhibit M).

After repeated efforts to assert the Rules of Professional Conduct as a basis for not accepting additional cases (as the Supreme Court of Missouri directed them to in both ***Pratte*** and

---

[6] Similar orders were issued in *State v. James L. Bush, Order, Case No. 1716-CR01680, Jan. 30, 2018*; *State v. Benjamin Byers, Order, Case No. 1716-CR05046,* Jan. 18, 2018; *State v. Deandre Davis, Order, Case No. 1716-CR05073,* Jan. 18, 2018; *State v. Clarence Sims. Order Appointing the Public Defender, Case No. 1716-CR02810,* Jan. 30, 2018; *State v. Jordan Thornton, Order Appointing the Public Defender, Case No. 1716-CR04717,* Jan. 31, 2018; *State v. Malik Holman, Order, Case No. 1716-CR05294,* Jan. 26, 2018; *State v. Luzell McBride*, Order, Case No. 1716-CR05343, Jan. 25, 2018. (Also included as Exhibit M).

8

*Waters*, *supra*), public defenders were left to pursue the only remaining remedy -- invoke Mo. Rev. Stat. §600.063.

At the time she received a bar complaint in 2018, Assistant Public Defender Alice Wasson was the sole public defender assigned to Henry County with a caseload of 295 open cases. After a failed effort to assert the ethical rules as a basis for not accepting additional cases, the District Defender of Area 17, which covers Henry County, filed a motion for a caseload conference pursuant to Section 600.063.[7] Mo. Rev. Stat. §600.063. In December 2017, a caseload conference was held; however, no findings were ever issued, either granting or denying relief, despite the fact that such findings are required within 30 days. Mo. Rev. Stat. §600.063.3.

The District Defender of the Rolla Trial Office (Area 25), after failed efforts to assert the Rules of Professional Conduct, also filed a motion for a caseload conference. The court acknowledged that, from 2015 to 2017, the number of cases in that jurisdiction increased more than 14%; however, it nonetheless denied relief, stating in its order that public defenders should take fewer depositions (even though they only took depositions in about 5% of their cases) and should, in certain cases, facilitate plea bargains before any or all discovery is obtained in order to be more efficient. *In re: Area 25 Public Defender Office*, *Findings and Order,* Case No. 17PH-CV02226, Jan. 11, 2018, at 4. (Attached as Exhibit N).

A caseload conference was also held in the 26th Judicial Circuit (Miller County). After acknowledging that MPSD was "underfunded" and the District Defender had "an open caseload of one hundred eighty two (182) cases," the court denied relief and instead suggested that assistant public defenders currently assigned to Cole County be re-dedicated to Miller County to

---

[7] This statute is not the exclusive remedy when a public defender is faced with an excessive caseload. Indeed, subsection (5) specifically states that "[n]othing in this section shall deny any party the right to seek any relief authorized by law . . . ." Mo. Rev. Stat. §600.063.5.

assist with the caseload.  *See State of Missouri v. Mariah Evans, Amended Judgment, Case No. 16ML-CR1300-01,* June 11, 2018, at 2.  (Attached as Exhibit O).  However, another judge had already made a finding that attorneys assigned to Cole County were so overloaded they could not accept an additional case (though no findings were ever issued as required).[8]  *See* Mo. Rev. Stat. §600.063.3.

And, during 2017, the Presiding Judge in the 16th Judicial Circuit (Kansas City) twice denied a motion for a caseload conference pursuant to Mo. Rev. Stat. 600.063; then, when the court ultimately allowed a conference, the judge refused to allow a record to be made.  *See **Petsch v. Jackson County Prosecuting Attorneys Office**,* 553 S.W.3d 404, 411 (Mo. Ct. App. 2018).  Meanwhile, other judges in that circuit continued to compel assistant public defenders into representation that violates the Rules of Professional Conduct under threat of both contempt and, ironically enough, the filing of a bar complaint.  *See State v. Christopher Kruse, Order to Show Case, Case No. 1716-CR04391,* Nov. 21, 2017.  (Attached as Exhibit P).  *See also email from the Presiding Judge of the 16th Judicial Circuit to District Defender of Area 16*, February 14, 2018 (Attached as Exhibit Q).  Even though the Court of Appeals ultimately ordered the circuit court to hold an on-the-record hearing, ***Petsch***, 553 S.W.3d at 411, it has taken almost a year to obtain that hearing, with no guarantee of relief.[9]

Regrettably, the foregoing examples are representative and not exhaustive.

In light of this, it becomes clear that delaying this matter will only force a continuation, and growth, of the existing wait lists as public defenders around the state have otherwise been

---

[8] *See Judge: Public defender system overloaded,* News Tribune, Jeff Haldiman, Nov. 8, 2017, available at: www.newstribune.com/news/local/story/2017/nov/08/judge-public-defender-system-overloaded/699022/.  (last accessed May 26, 2019).

[9] The hearing is currently scheduled for May 30, 2019.

unsuccessful in navigating these seemingly irreconcilable issues. That being the case, the Attorney General's Motion to Stay only aggravates this issue by further delay.

**V.     MSPD represents the interests of the State and the proposed Consent Judgment is in the best interest of the State**

After making great effort to remove the State from the instant lawsuit, the Attorney General seeks to wrongly blame MSPD for its untimely attempt to intervene, *see Attorney General's Suggestions in Support of Motion to Intervene* at 9, even though the Attorney General should have known that mediation was on-going through Document No. 216, which states the March 15, 2019, mediation date.  *See* Document No. 216.  In his own motions, the Attorney General further tries to enter the case as himself, *see Motion to Intervene* at 1, even though he also claims to be "'protect[ing] the rights and interests of the state'", *see Attorney General's Suggestions in Support of Motion to Intervene* at 1, and knowing full well that the State has already been successfully dismissed from the lawsuit.

Notwithstanding, it should be said that MSPD is the entity that represents these interests, given that the State, which has the responsibility to provide representation to indigent defendants facing a loss of liberty, established MSPD to carry out this function. And after multiple reports, studies, and Missouri Supreme Court cases identified constitutional deficiencies, the State made repeated attempts to provide MSPD with a mechanism to control caseloads.

In 2006, the Missouri Senate Interim Committee on the Missouri State Public Defender found that "'the probability that public defenders are failing to provide effective assistance of counsel and are violating their ethical obligations to their clients increases every day.'" ***Pratte***, 298 S.W.3d at 877-878, (citing *Report of Senate Interim Committee on The Missouri State Public Defender System*, Jan. 2006, A-1.).  The Senate committee report also stated that MSPD

11

has "[n]o way to control or reduce its workload except to refuse cases and 'throw the state of Missouri into federal court for constitutionally violating the right of indigent clients to effective assistance of counsel.'" ***Pratte***, 298 S.W.3d at 878. After repeatedly citing findings from the Senate committee's report, the Supreme Court of Missouri concluded that "[t]he excessive number of cases to which the public defender's offices currently are being assigned calls into question whether any public defender fully is meeting his or her ethical duties of competent and diligent representation in all cases assigned." ***Pratte***, 298 S.W.3d at 880.

In response, the Missouri General Assembly made two successive attempts to provide MSPD with a mechanism to limit caseloads. The first piece of legislation attempted to give the Missouri Public Defender Commission authority to "[e]stablish maximum public defender caseload standards to ensure the system is adequately fulfilling the state's constitutional obligations to provide effective assistance of counsel and is complying with the rules of ethical and professional conduct applicable to attorneys licensed to practice law in Missouri." *See Senate Committee Substitute for Senate Bill No. 37*, 95th *Missouri General Assembly*, 2009, at 4. (Attached as Exhibit R). Not only did this legislation represent a clear intent that caseloads should be limited, but also an acknowledgment by the legislature that MSPD was struggling to provide constitutionally effective representation. Regrettably, this legislation did not become law. *See Veto Message for Senate Committee Substitute for Senate Bill No. 37*, Governor Jeremiah W. (Jay) Nixon, July 13, 2009, at 1. (Attached as Exhibit S).

The Missouri General Assembly then made a second effort to establish a caseload standard; this time, in lieu of providing that authority solely to MSPD, which was the basis of the Governor's disapproval (*see* Ex. S), this statute allows for a caseload standard with "prior

12

approval from a court of competent jurisdiction." Mo. Rev. Stat. §600.062. The proposed

Consent Judgment would, if approved, comply with this statute.

And so, because the State created MSPD for the purpose of providing effective

representation to indigent defendants and also created a specific mechanism to allow for caseload

standards, the proposed Consent Judgment, contrary to the assertions of the Attorney General,

indeed represents the best interests of the state.

## CONCLUSION

For the foregoing reasons, MSPD-Defendants respectfully request that the Attorney

General's Motion to Stay be denied.

Respectfully submitted,

/s/ J. Gregory Mermelstein

_____
J. Gregory Mermelstein, MOBar #33836
Deputy Director/General Counsel
Woodrail Centre, Bldg. 7, Suite 100
1000 W. Nifong Blvd.
Columbia, Missouri 65203
Phone: (573) 777-9977
FAX: (573) 777-9973
E-mail: Greg.Mermelstein@mspd.mo.gov

**Attorney for MSPD-Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2019, a true and correct copy of the foregoing document

was electronically filed using the Court's online case filing system, which will send notice to all

counsel of record.

/s/ J. Gregory Mermelstein

_____
J. Gregory Mermelstein, MOBar #33836

13