## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| Randall Lee DALTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-04057-CV-C-NKL |
| | ) | |
| Michael BARRETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO MOTION TO INTERVENE

# TABLE OF CONTENTS

Table of Authorities .............................................................................................................. i

Introduction ......................................................................................................................... 1

Procedural History .............................................................................................................. 2

Argument ............................................................................................................................. 2

I.     The Motion To Intervene Is Untimely. ..................................................................... 2

        A.     The Litigation Has Progressed Nearly To Its Conclusion .................................... 3

        B.     The Prospective Intervenor Has Had Intimate Knowledge of this Case For Years. ...................................................................................................................... 3

        C.     There Is No Reason For The Delay In Seeking Intervention................................. 4

        D.     The Existing Parties Suffer Daily From Delays In Resolving This Case. ............. 5

II.    The Attorney General Cannot Satisfy The Other Requirements for Intervention as of Right. .................................................................................................................. 6

        A.     The State Does Have a Recognized Interest in This Litigation. ........................... 7

        B.     The State's Interests Are Not Impaired ............................................................... 8

        C.     The State's Interests Are Adequately Protected .................................................. 10

III.   Permissive Intervention Is Not Warranted....................................................................... 11

IV.   Rules Related to the State Legal Expense Fund Have No Bearing on Intervention. ....... 14

CERTIFICATE OF SERVICE

Case 2:17-cv-04057-NKL   Document 228   Filed 05/28/19   Page 2 of 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civil Liberties Union of Minnesota v. Tarek*
   *ibn Ziyad Acad.*, 643 F.3d 1088 (8th Cir. 2011) .....................................................2, 3, 4, 5, 12

*Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*,
   772 F.2d 401 (8th Cir.1985) ...................................................................................................5

*Arrow v. Gambler's Supply, Inc.*,
   55 F.3d 407 (8th Cir. 1995) ...................................................................................................5

*Associated Builders and Contractors v. Herman*,
   166 F.3d 1248 (D.C. Cir. 1999) .............................................................................................2

*S. Dakota ex rel Barnett v. U.S. Dep't of Interior*,
   317 F.3d 783 (8th Cir. 2003) ...........................................................................................11, 12

*Barrett v. Claycomb*,
   976 F. Supp. 2d 1104 (W.D. Mo. 2013) ...............................................................................14

*CE Design, Ltd. v. King Supply Co.*,
   791 F.3d 722 (7th Cir. 2015) ................................................................................................14

*Chiglo v. City of Preston*,
   104 F.3d 185 (8th Cir. 1997) ..................................................................................................6

*CitiMortgage, Inc. v. Equity Bank, N.A.*,
   261 F. Supp. 3d 942 (E.D. Mo. 2017) ..................................................................................13

*Curry v. Regents of the University of Minnesota*,
   167 F.3d 420 (8th Cir. 1999) ................................................................................................11

*Cuyler v. Sullivan*,
   446 U.S. 335 (1980).................................................................................................................7

*D. Patrick, Inc. v. Ford Motor Co.*,
   8 F.3d 455 (7th Cir. 1993) ....................................................................................................13

*Flynt v. Lombardi*,
   782 F.3d 963 (8th Cir. 2015) ................................................................................................12

i

*FTC v. Enforma Natural Prods, Inc.*,
    362 F.3d 1204 (9th Cir. 2004) ................................................................13

*George v. City of Cocoa, Fla.*,
    78 F.3d 494 (11th Cir. 1996) ................................................................14

*Gideon v. Wainwright*,
    372 U.S. 335 (1963) ................................................................7

*Greene v. United States*,
    996 F.2d 973 (9th Cir.1993) ................................................................7

*Kittle-Aikeley v. Claycomb*,
    807 F.3d 913 (8th Cir. 2015) ................................................................14

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ................................................................3

*Maine v. Moulton*,
    474 U.S. 159 (1985) ................................................................7

*Mausolf v. Babbit*,
    85 F.3d 1295 (8th Cir. 1996) ................................................................6, 12

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir.1984) ................................................................6

*Perkins v. Chicago Heights*,
    47 F.3d 212 (7th Cir. 1995) ................................................................13

*Planned Parenthood of the Heartland v. Heineman*,
    664 F.3d 716 (8th Cir. 2011) ................................................................2

*Simmons v. State of Iowa*,
    28 F.3d 1478 (8th Cir. 1994) ................................................................8

*Standard Heating & Air Conditioning Co. v. City of Minneapolis*,
    137 F.3d 567 (8th Cir.1998) ................................................................10, 12

*Tucker v. State of Idaho, et al.*,
    394 P.3d 54 (Idaho 2017) ................................................................7

*U.S. Bank Nat. Ass'n v. State Farm Fire & Cas. Co.*,
    765 F.3d 867 (8th Cir. 2014) ................................................................3, 5

*U.S. v. Metro. St. Louis Sewer Dist.*,
    569 F.3d 829 (8th Cir. 2009) ................................................................6

Case 2:17-cv-04057-NKL   Document 228   Filed 05/28/19   Page 4 of 21

*United States v. Ritchie Special Credit Investments, Ltd.*,
   620 F.3d 824 (8th Cir. 2010) ...............................................................................2, 5

*United States v. Union Elec. Co.*,
   64 F.3d 1152 (8th Cir.1995) ...................................................................................10

*In re Wholesale Grocery Prod. Antitrust Litig.*,
   849 F.3d 761 (8th Cir. 2017) ...................................................................................3

**Other Authorities**

Fed. R. Civ. P. 7 ........................................................................................................13

Fed. R. Civ. P. 24 ................................................................................................. *passim*

## INTRODUCTION

The Attorney General was served with the complaint in this case 791 days ago. In that office's capacity as a representative for the State and the Governor, the Attorney General has, since that day, attended over a dozen depositions; litigated a motion to dismiss, an interlocutory appeal, and a motion for summary judgment; and even attended a court-ordered mediation during which the very remedies at issue in the instant Proposed Consent Judgment were discussed. The Attorney General offers no reason why it has delayed up until now, on the eve of this case's resolution, particularly where each day that passes is a day that Plaintiffs continue to be denied their constitutional right to counsel. That delay alone is dispositive.

In any event, the Attorney General cannot meet the criteria for intervention, even apart from the unexplained delay. The Attorney General indisputably has an interest in this case, but its interest, like that Missouri State Public Defender ("MSPD") or any other state actor, is in the constitutional functioning of Missouri's criminal justice system. It is also unclear what role the Attorney General seeks to play at this juncture; to the extent it dislikes the settlement that MSPD and Plaintiffs have reached, it has no power to disrupt a contract between the two parties, and to the extent it hopes this Court will refuse to enter the settlement as a consent decree, it can express any reservations through public hearings, amicus briefs, and other mechanisms that will not grind this case to a halt after years of litigation and intensive settlement negotiations. And finally, to the extent the Attorney General invokes the specter of the state's litigation fund, that question is entirely separate from the entry of the consent decree—whether or not MSPD or Plaintiffs are ultimately reimbursed from that fund, this Proposed Consent Judgment should be entered with all due haste to rectify an ongoing constitutional problem at issue in this case.

1

# PROCEDURAL HISTORY

Plaintiffs filed a complaint in Missouri state court on March 9, 2017, naming the State of Missouri, the Governor of Missouri, the MSPD director, and all of the MSPD commissioners as defendants. The State and the Governor removed the case to federal district court. The State of Missouri and the Governor of Missouri were dismissed from this case on January 10, 2019, pursuant to the Eighth Circuit's decision on an interlocutory appeal. Following the dismissal of the other defendants, Plaintiffs and MSPD entered mediation and have, for the past several months, engaged in ongoing dialogue and negotiation regarding a mutually acceptable set of settlement terms. On May 13, 2019, Plaintiffs and MSPD proposed a consent judgment to this Court. On May 14, 2019, the Attorney General of Missouri sought to intervene in this case.

# ARGUMENT

## I. The Motion To Intervene Is Untimely.

"Whether a person moves for 'intervention of right' or for 'permissive intervention,' the motion must be timely." *Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011). "'The issue of the timeliness of a motion to intervene is a threshold issue.'" *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011) (quoting *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010)). "If the motion was not timely, there is no need for the court to address the other factors that enter into an intervention analysis." *Associated Builders and Contractors v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999).

"[T]he timeliness of a motion to intervene is a decision within the district court's discretion." *Tarek ibn Ziyad Acad.,* 643 F.3d at 1094. Courts should consider: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether

2

the delay in seeking intervention may prejudice the existing parties." *Id*. Each of these factors demonstrates that the Attorney General's request for intervention is untimely.

## A. The Litigation Has Progressed Nearly To Its Conclusion

The progress of the litigation in this case is substantial. The Attorney General's motion to intervene comes at the end of the litigation. This case was filed in Missouri circuit court on March 9, 2017, which was 797 days before the motion. ECF No. 1-2. Discovery was completed on December 22, 2017, more than 500 days prior to the motion. ECF No. 79. Dispositive motions have been briefed and disposed. Trial is soon. The Attorney General's request to intervene comes after everything except the trial of this case is complete and the parties have reached a settlement. While in any case the court should "bear in mind that any substantial lapse of time weighs heavily against intervention," the delay here is enormous. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). A court does not abuse its discretion by denying intervention as untimely where discovery has been completed and motions have been resolved. *U.S. Bank Nat. Ass'n v. State Farm Fire & Cas. Co.*, 765 F.3d 867, 870 (8th Cir. 2014).

## B. The Prospective Intervenor Has Had Intimate Knowledge of this Case For Years.

The Attorney General has known about this case since the day it was filed and was in fact served with a copy of the petition on March 15, 2017, 791 days before moving to intervene. ECF No. 1-5 at 43. A prospective intervenor's knowledge of the litigation "often weighs heavily in cases where the would-be intervenor was aware of the litigation for a significant period of time before attempting to intervene." *In re Wholesale Grocery Prod. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017). As examples of such a "significant period of time" as would counsel against intervention, the Eighth Circuit cited cases where an intervenor knew of litigation 21 and 14 months, respectively, before filing a motion. *Id*. (citing *U.S. Bank Nat'l Ass'n*, 765 F.3d at 869–

3

70, and *Tarek ibn Ziyad Acad.*, 643 F.3d at 1094). In this case, the Attorney General sat on his hands for 27 months without taking any action.

## C. There Is No Reason For The Delay In Seeking Intervention.

The Attorney General does not really endeavor to give an excuse for not intervening earlier. It is apparent that the decision was a strategic one; like the State and the Governor, the Attorney General did not want to be a defendant in this case. The Attorney General spent time in this case as counsel to former parties, the Governor and the State, urging (ultimately with success) that they *cannot* be defendants in this case. The reason that the public defender defendants are the only remaining defendants is because the Attorney General argued for that result. In any event, even after the departure of the Governor and the State, the Attorney General made no effort to intervene despite receiving directly from this Court an order to the parties to propose a scheduling order (ECF No. 214), a scheduling order and a trial date (ECF No. 219), and a mandatory referral to mediation within thirty days (ECF No. 213). The Attorney General implies something nefarious is afoot because of his lack of knowledge of when mediation was held, but provides no explanation why a non-party would need to know the logistical details of mediation and ignores that he, or any member of the public, could have ascertained the date of mediation by reading the filings in this case, which his office still receives automatically. *See* ECF No. 216 ("The parties are scheduled for mediation on March 15, 2019.").  A settlement of this suit or a trial beginning in fewer than ninety days (ECF No. 219) were the two possible outcomes for this litigation. The Attorney General's feigned surprise that the parties would reach an accord is not an adequate excuse for doing nothing.[1]

---

[1] On September 15, 2017, the Attorney General's office was present and participated in the earlier court-ordered early assessment and mediation in this case; thus, the office has for nearly two years been fully aware of the type of settlement terms that the various parties envisioned to resolve this case on the merits. Still the Attorney General never saw fit to intervene.

4

When a party has knowledge of all the facts and fails to seek intervention at the first opportunity, a subsequent effort to intervene is untimely. *Ritchie Special Credit Investments,* 620 F.3d at 833. The Eighth Circuit has not looked favorably on parties that sit idly by as litigation progresses, holding that such parties assume the risk of a disfavored outcome by choosing to protect their interest through third parties rather than to join the litigation directly at the outset. *See U.S. Bank Nat. Ass'n*, 765 F.3d at 870. Even when the third parties he represented were dismissed, the Attorney General did not seek to intervene. The Attorney General suggests his interests somewhat conflict with the remaining defendants but even assuming that such a conflict would suffice to allow a timely motion for intervention, the conflict is nothing new; presumably, that conflict was present from the very beginning of this case, as MSPD has been represented by separate counsel from the start. The Attorney General "simply waited too long." *Id.*

**D. The Existing Parties Suffer Daily From Delays In Resolving This Case.**

Intervention should also be denied because of prejudice to the existing parties.[2] The parties have engaged in extensive written discovery, conducted more than 15 depositions, disclosed three experts and along with their written reports, engaged in all-encompassing settlement discussions, and reached an agreement that has been accepted by each party. Plaintiffs and Defendants have invested significant work to avoid the uncertainties of trial. Permitting the Attorney General to suddenly show up as a party would require much of this work to be revisited. But the prejudice here is more significant than in the ordinary case. Plaintiffs want a

---

[2] A showing of prejudice is not necessary in this case. "[E]ven absent any prejudice, the district court [i]s free to conclude that given the progress of the litigation, the [would-be intervenors'] knowledge of it, and the [would-be intervenor's] failure to adequately explain the delay, the motion was untimely." *Tarek ibn Ziyad Acad.*, 643 F.3d at 1095 (citing *Arrow v. Gambler's Supply, Inc.,* 55 F.3d 407, 409 (8th Cir. 1995); *Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.,* 772 F.2d 401, 403 (8th Cir. 1985)).

5

prompt resolution that will ensure that their own Sixth Amendment right to counsel is secured, while Defendants likely wish to avoid an avalanche of suits like this from thousands of individuals who could bring the same claims against them that these plaintiffs have. Tardy intervention after the parties have reached a satisfactory resolution of their differences and on the cusp of trial is prejudicial.

## II. The Attorney General Cannot Satisfy The Other Requirements for Intervention as of Right.

Even if the Attorney General had filed a timely motion, the State does not satisfy the three requirements for intervention as of right under Rule 24(a)(2), which allows such intervention only by an individual or entity that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." As the State points out, courts in this circuit have interpreted that language to mean that, in order to intervene under Rule 24(a)(2), "an applicant must (1) have a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *Mausolf v. Babbit*, 85 F.3d 1295, 1299 (8th Cir. 1996). All three conditions must be met in order to intervene as of right under the Rule 24(a)(2). *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997).

Importantly, "for the purposes of Rule 24(a)(2), an asserted interest must be 'significantly protectable,' (internal citation omitted), which has been interpreted to mean 'legally protectable.'" *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 464 (5th Cir. 1984) (en banc)). Further, "general economic interests are not protectable and cannot serve as the basis for

6

intervention." *Id. See also Greene v. United States,* 996 F.2d 973, 976 (9th Cir. 1993) (holding

that even a significant economic stake in the outcome of the litigation is not a significantly

protectable interest). Moreover, the entity seeking to intervene must "demonstrate that the

subject matter of the action affects its interests in a direct rather than tangential way." *Metro. St.*

*Louis Sewer Dist.*, 569 F.3d at 839. In other words, in order to prevail, the interests asserted by

the potential intervenor must not be "too speculative to be 'direct, substantial and legally

protectable' interests as required by Rule 24(a)(2)." *Standard Heating & Air Conditioning Co. v.*

*City of Minneapolis,* 137 F.3d 567, 571 (8th Cir. 1998), and cannot be "contingent upon the

occurrence of a sequence of events." *Id.*

**A. The State Does Have a Recognized Interest in This Litigation.**

As an initial matter, Plaintiffs agree that the Attorney General—and, by extension, the

State itself—has an interest in the subject matter of this case. After all, state and federal courts

across the country—including the U.S. Supreme Court—have made it clear that it is the

obligation of the State to ensure that the Sixth Amendment rights of all indigent criminal

defendants being prosecuted in its courts are protected. *See, e.g., Gideon v. Wainwright*, 372

U.S. 335, 342 (1963) (noting that the right to counsel is "made obligatory upon the *States* by the

Fourteenth Amendment." (emphasis added); *Cuyler v. Sullivan*, 446 U.S. 335, 343-344 (1980);

*Maine v. Moulton*, 474 U.S. 159, 171, 176 (1985). More specifically, it is the State's

responsibility to provide every indigent defendant with a competent, sufficiently-resourced,

conflict-free attorney who is able to provide representation that meets constitutional standards.

*See Tucker, et al. v. State of Idaho, et al.*, 394 P.3d 54, 64 (Idaho 2017) ("The State, therefore,

has ultimate responsibility to ensure that the public defense system passes constitutional

muster."). That is precisely why Plaintiffs named the State as a defendant in this case. But while

7

the Attorney General clearly maintains a legitimate interest in this case, it fails to meet the other requirements for intervention as of right under Rule 24(a)(2).

## B. The State's Interests Are Not Impaired

While the State's interests are certainly *implicated* in this litigation, its interests are not impaired. Although it is true that the Proposed Consent Judgment requires MSPD attorneys to provide their clients with more robust and timely representation, and to engage in sound litigation activities that they may have neglected in the past,[3] all of those provisions are designed to ensure that indigent defendants have access to competent and sufficiently-resourced counsel, as required by the Sixth Amendment—an interest that is of paramount importance to any State actor, including the Attorney General. *See Simmons v. State of Iowa*, 28 F.3d 1478, 1486-1487 (8th Cir. 1994). As such, the Proposed Consent Judgment merely requires the MSPD to take the steps necessary to comply with the Constitution in fulfilling the State's legal obligation to provide indigent defense services. Moreover, to the extent that the Attorney General's Office maintains a particular interest in the State's prosecution function, it should welcome the prospect of a competent and sufficiently-resourced adversary, who will facilitate the Attorney General's quest for justice in each criminal case and ensure that all Missourians who are being prosecuted by the State will be represented in a meaningful way.

But rather than embrace the terms of the parties' agreement, the State argues that its interests are impaired because the Proposed Consent Judgment "will cause grave risks to public safety," without offering any evidence whatsoever to support that contention. AG Br. at 6.

---

[3] The Attorney General complains, in particular, about the requirement under the Proposed Consent Judgment that Missouri's public defenders "take certain actions in criminal trials and appeals." AG Br. at 5. Tellingly, those actions, which the State apparently believes will fundamentally transform the criminal justice system, include such basic representational functions as "conducting discovery under certain timelines, requesting hearings, filing briefs, and seeking oral argument."

8

Instead, the State lists various scenarios that "may" occur as a result of the Proposed Consent Judgment and thus impair its interests. The Attorney General complains that "prosecutors may be asked to eliminate incarceration as a possible sentence in criminal proceedings," and that "Courts may be required to entirely dismiss criminal cases." *Id*. Of course, the decision to pursue a particular sentence, or to dismiss a case entirely, is ultimately made at the discretion of the prosecutor and the court, respectively. While the Proposed Consent Judgment encourages the MSPD to engage with judges and prosecutors to explore ways of meeting the needs of all indigent defendants, including the possibility of excluding jail time in some cases and dismissing others, it does not purport to *require* prosecutors or judges, none of whom are parties to this case, to take any specific action in any specific case.

The State's further assertion that people charged with serious felonies "may walk free without undergoing a trial because a public defender's office will refuse to take any cases that will require an attorney to work more than 40 hours per week" reflects both a fundamental mischaracterization of the terms of the Proposed Consent Judgment, as well as an unwarranted and unsupported concern for public safety. As the plain language of the Proposed Consent Judgment makes clear, the MSPD "will limit case assignments to no more than 2,080 hours' worth of case work each year," [Proposed Consent Judgment, sec. XVIII(h)], and will use as benchmarks the Missouri-specific work load averages developed in 2014 by the American Bar Association and the accounting firm of RubinBrown. *See* Proposed Consent Judgment, sec. XVIII(g). The 2,080-hour cap was calculated based on the assumption that public defenders will work "40 hours a week, 52 weeks a year, *with no time allotted for vacation or sick time, no time allotted for training or administrative functions, and no holidays*." (emphasis added) *See* PCJ, sec. XVIII(f). In other words, 2,080 hours serves as an overestimate of the amount of time

9

public defenders will have available to represent their clients in a given year. By capping the amount of public defender work hours to 2,080 over the course of a year, the MSPD will, in turn, "ensure that public defenders [are not] assigned more than 173.3 hours' worth of case work" in a given month. *See* Proposed Consent Judgment, sec. XVIII(h). Ultimately, the goal of the caseload standards is to make sure that each public defender can provide competent representation to each of her clients—a feat that becomes impossible for an attorney attempting to triage her way out of an excessive caseload.

In addition to the Attorney General's apparent misunderstanding of the caseload limits contemplated by the Proposed Consent Judgment, the Attorney General's purported concern about the impact of the Proposed Consent Judgment on public safety rests on rank speculation. The Eighth Circuit has rejected efforts to intervene under Rule 24(a)(2) where "the asserted interests were too speculative to be direct, substantial and legally protectable interests." *Standard Heating & Air Conditioning Co. v. City of Minneapolis,* 137 F.3d 567, 571 (8th Cir. 1998); *see also United States v. Union Elec. Co.,* 64 F.3d 1152, 1161 (8th Cir. 1995). In order to be cognizable in the Rule 24 context, the interests asserted may not be "contingent upon the occurrence of a sequence of events." *Standard Heating & Air Conditioning*, 137 F.3d at 571. The fact that a prosecutor or judge *may* or *may not* take certain action in a particular case, or that an alleged felon *may* or *may not* be released from custody, and, if released, *may* or *may not* cause some undefined harm to the public is not enough to demonstrate that the Attorney General's interests will be sufficiently impaired under Rule 24(a)(2).

## C.  The State's Interests Are Adequately Protected

As noted above, notwithstanding its newfound objections, the Attorney General had a full and fair opportunity to protect its interests in this case. Plaintiffs filed this action in March 2017 against the State, the Governor, and the MSPD, alleging systemic constitutional deficiencies in

10

Missouri's public defense system and seeking prospective, systemic relief requiring the State to cure those deficiencies. The Attorney General has represented the State and the Governor from the outset of this case. As such, the Attorney General has been on notice from the beginning of this case regarding the nature of Plaintiffs' claims and the remedies sought. The parties— including the State, represented by the Attorney General—also had the opportunity to participate in an extensive discovery period that did not conclude until late December 2017. And in September 2017, the Attorney General had the chance to participate in the very mediation process that it now seeks to re-enter.

Moreover, both MSPD and the Attorney General in their official capacities are effectively representatives of the State. "[W]hen a government entity is a party and the case concerns a matter of sovereign interest, the government is presumed adequately to represent the interests of the public." *Curry v. Regents of the University of Minnesota*, 167 F.3d 420, 423 (8th Cir. 1999). This is particularly true here, given the nature of this case. Indeed, it is hard to imagine a more appropriate state defendant than the MSPD in a case challenging the delivery of indigent defense services across Missouri.

### III. Permissive Intervention Is Not Warranted.

"The decision to grant or deny a motion for permissive intervention is wholly discretionary." *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). Indeed, "[r]eversal of a decision denying permissive intervention is extremely rare, bordering on nonexistent." *Id.* "While Rule 24 promotes judicial economy by facilitating, where constitutionally permissible, the participation of interested parties in others' lawsuits, the fact

11

remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996).[4]

Permissive intervention should not be allowed because the motion is untimely. *See Tarek ibn Ziyad Acad.*, 643 F.3d at 1093. But even if the motion were timely, this Court should exercise its discretion to deny the motion because allowing the Attorney General to intervene would unduly delay and prejudice the adjudication of the parties' rights.

"The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights" *Barnett*, 317 F.3d at 787. The parties to this case have reached a resolution of Plaintiffs' claims on the merits that will eliminate Defendants' creation of waiting lists and ensure that Defendants provide Plaintiffs with attorneys who will have adequate time to provide them with constitutionally sufficient representation. Rather than resolve this case, the Attorney General proposes this court make a "reasonable adjustment to the scheduling order" for "any additional discovery." ECF No. 223 at 9. During this delay, Plaintiffs would have no prospective protection from the ongoing constitutional failings of Defendants.

Finally, denial of permissive intervention is appropriate where a would-be intervenor's "proposed answer to the complaint did not raise any claim or defense that was different from those of the existing parties." *Standard Heating & Air Conditioning Co.,* 137 F.3d at 573. While

---

[4] "Normally, parties seeking permissive intervention pursuant to Rule 24(b) must show … an independent ground for jurisdiction." *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015). From the tenor the Attorney General's papers, it seems implausible that he seeks to intervene as a plaintiff to vindicate the right of indigent Missourians to have constitutionally adequate legal representation. Yet, the Attorney General also does not identify himself as a prospective defendant, identify any of Plaintiffs' factual allegations with which he disagrees, or explain what relief could be entered against him to provide redress for the constitutional violations Plaintiffs assert. This lack of apparent jurisdiction is an independent reason to deny the motion.

12

there are no claims or defenses in the Attorney General's proposed Answer because he did not

file one, it is unclear how his defenses would be any different than those already plead by

Defendants.[5]

In any event, it is unclear what role the Attorney General seeks to play by intervening in

this case. It is axiomatic that the Attorney General may not disrupt the settlement between

Plaintiffs and MSPD; such a settlement is a private agreement between the signatories, and no

third party may "intervene" in such a settlement. That settlement is binding on both Plaintiffs

and MSPD; either party may seek breach of contract remedies for any violation of the

settlement's terms, and the Attorney General may not alter that contract even if intervention is

granted. *FTC v. Enforma Nat. Prods, Inc.*, 362 F.3d 1204, 1218 (9th Cir. 2004); *D. Patrick, Inc.

v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993). To the extent the Attorney General seeks to

avoid having the settlement entered by this Court as a consent decree, there are other

mechanisms by which the Attorney General may express its objection—mechanisms that would

make far more sense at this juncture than intervening in the case and inserting itself as a party.

For example, if this Court has any doubt that the Proposed Consent Decree is in the public

interest, it may hold hearings to invite interested parties—including the Attorney General—to

express reservations. *E.g.*, *Perkins v. Chicago Heights*, 47 F.3d 212, 215 (7th Cir. 1995). And if

the Attorney General is concerned about the Proposed Consent Decree, it may file an amicus

---

[5] When a party seeks to intervene under Rule 24, its motion must be "accompanied by a pleading
that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Rule
7(a) defines "pleadings" as a complaint, an answer to a complaint, an answer to a counterclaim,
an answer to a crossclaim, a third-party complaint, and if the court orders one, a reply to an
answer. *CitiMortgage, Inc. v. Equity Bank, N.A.*, 261 F. Supp. 3d 942, 949–50 (E.D. Mo. 2017),
*reconsideration denied*, No. 4:15-CV-230-SPM, 2017 WL 5564532 (E.D. Mo. Nov. 20, 2017),
and *order clarified*, No. 4:15-CV-230-SPM, 2017 WL 7693367 (E.D. Mo. Dec. 1, 2017) (citing
Fed. R. Civ. P. 7(a)). The Attorney General's failure to file an answer with his motion is another
choice that would inject further undue delay should intervention be permitted.

brief to articulate those concerns. *E.g.*, *George v. City of Cocoa, Fla.*, 78 F.3d 494, 496 (11th Cir. 1996). But there is no warrant for the Attorney General to move to intervene in a settlement that does not bind it, after years of sitting on the sidelines and watching litigation proceed, and absent anything but the most contingent interest in the Proposed Consent Judgment itself. *See CE Design, Ltd. v. King Supply Co.*, 791 F.3d 722, 726-27 (7th Cir. 2015).

## IV. Rules Related to the State Legal Expense Fund Have No Bearing on Intervention.

It is not uncommon for state officials to be represented by counsel other than the Attorney General in cases challenging something other than the constitutionality of a state statute. *See. e.g.*, *Barrett v. Claycomb*, 976 F. Supp. 2d 1104, 1107 (W.D. Mo. 2013), *rev'd and remanded sub nom. Kittle-Aikeley v. Claycomb*, 807 F.3d 913 (8th Cir. 2015), *as corrected* (Dec. 9, 2015), *reh'g en banc granted, opinion vacated* (Feb. 18, 2016), and *aff'd in part, vacated in part, rev'd in part sub nom. Kittle-Aikeley v. Strong*, 844 F.3d 727 (8th Cir. 2016) (en banc), *cert. denied* 137 S. Ct. 2216 (2017). The Attorney General cites to no authority suggesting there is anything improper or unusual about state defendants choosing to be represented by counsel other than the Attorney General.

Instead of authority, the Attorney General attempts sleight of hand, citing cases for the proposition that MSPD could forfeit coverage from the state legal expense fund if its cooperation with the Attorney General is deemed insufficient, even as it asserts a conflict of interest vis-à-vis MSPD. To state the obvious, MSPD had no affirmative obligation to accept what even the Attorney General views as conflicted representation. Rather than support the Attorney General's claim that it has a right to meddle in litigation to which he is not a party, these cases and statutes prove the opposite: there is a statutory consequence if Defendants did not adequately consult with the Attorney General—and that consequence is no access to a fund, not forced representation by the Attorney General. Whether the legal defense fund will be available in this

14

case is a question that might arise another day, but it has no bearing on whether the Attorney General may foist his representation upon Defendants or force himself tardily into litigation when his representation is not accepted.

**CONCLUSION**

For the foregoing reasons, the motion to intervene should be denied.


Respectfully Submitted,

s/ Anthony E. Rothert
Anthony E. Rothert
Missouri Bar #44827
Jessie Steffan
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
Telephone: (314) 652-3114

Gillian Wilcox
Missouri Bar #61278
ACLU OF MISSOURI FOUNDATION 406
West 34th Street, Suite 420 Kansas City, MO
64111 Telephone: (816) 470-9933 Facsimile:
(314) 652-3112
Email: gwilcox@aclu-mo.org

Jason D. Williamson*
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Megan Crane
Missouri Bar #65499
MACARTHUR JUSTICE CENTER AT ST.
LOUIS
3115 South Grand Boulevard, Suite 300
St. Louis, MO 63118
Telephone: (314) 254-8540
Facsimile: (314) 254-8547

Matthew R. Shahabian*
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY 10019

Evan Rose*
Easha Anand*
ORRICK, HERRINGTON & SUTCLIFFE
LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105

*Admitted Pro Hac Vice

15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of May, 2019, a true and correct copy of the

foregoing was filed with the Clerk of the Court using the Court's online case filing system, and

thereby served on all parties in the case.

<div align="center" style="margin-left:40%">

s/ Anthony E. Rothert
Anthony E. Rothert

</div>