IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| Randall Lee DALTON, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 2:17-cv-04057-NKL |
| Michael BARRETT, *et al.*, | |
| Defendants. | |

**ORDER**

The Missouri Attorney General moves to intervene as a defendant in this action. Doc. 222. For the following reasons, the Attorney General's motion to intervene is denied.

**I.     Background**

On March 9, 2017, Plaintiffs initiated this case in state court as a putative class action against the State of Missouri and the Governor (the "State Defendants") as well as the Director and Commissioners of the Missouri State Public Defenders (the "MSPD Defendants"). Doc. 1-2 (Petition). Plaintiffs allege that Missouri "has failed to meet its constitutional obligation to provide indigent defendants with meaningful representation," largely because the MSPD is underfunded and overworked. *Id.* at p. 2. Plaintiffs seek declaratory and injunctive relief that provides "indigent criminal defendants and juvenile respondents with constitutionally adequate legal representation." *Id.* at 52.

On April 7, 2017, the State Defendants, through the Attorney General of the State of Missouri, removed the case to federal court. Doc. 1 (Notice of Removal). On removal, the case was included in the Western District of Missouri's Mediation and Assessment Program ("MAP") and assigned to an outside mediator. Doc. 4 (Notice of Inclusion for MAP); Doc. 48 (Amended

Notice of Inclusion for MAP). The Court set a discovery deadline of December 15, 2017, and trial was set for May 14, 2018. Doc. 35 (Scheduling Order). Shortly after removal, however, the State Defendants—both represented by the Attorney General—filed a motion to dismiss arguing that the State and Governor are shielded by sovereign immunity. Doc. 18 (State Defendants' Motion to Dismiss). The Court denied the motion. Doc. 69 (Order on Motion to Dismiss). The State Defendants filed a notice of appeal. Doc. 70 (Notice of Appeal).

While the appeal was pending, the Court extended the discovery deadline, and the parties conducted substantial discovery. The parties, including the State Defendants, who were represented by the Attorney General, also participated in mediation. Doc. 225-2 (Letter Scheduling Mediation). Trial was rescheduled for May 29, 2018. Doc. 86.

After discovery was complete, the State Defendants, through the Attorney General, moved to stay the case pending appeal and to realign the MSPD Defendants with Plaintiffs. Doc. 133 (Motion to Stay); Doc. 134 (Motion to Realign MSPD Defendants as Plaintiffs). The MSPD Defendants and Plaintiffs opposed the motion to realign, citing divergent interests and the untimeliness of the motion. Doc. 140 (MSPD Defendants' Suggestions in Opposition to Motion to Realign); Doc. 143 (Plaintiffs' Suggestions in Opposition to Motion to Realign). The motion was denied without prejudice; the trial was twice continued, and later struck entirely pending the appeal.

On January 10, 2019, the Eighth Circuit reversed the Court's decision on sovereign immunity. *See* Doc. 206; *Church v. Missouri*, 913 F.3d 736 (8th Cir. 2019). After the mandate was issued, the Court dismissed the State Defendants, Doc. 211, and denied Plaintiffs' motion for class certification, Doc. 212. On March 1, 2019, the remaining parties—Plaintiffs and the MSPD Defendants—were ordered to proceed to mediation within 30 days, and to submit a proposed

scheduling order. The parties proceeded to the Court-ordered mediation on March 15, 2019, and trial was set for August 19, 2019.

On March 27, 2019, while mediation efforts were underway, the MSPD Defendants wrote to the Attorney General to request coverage by the state legal expense fund. *See* 225-3, p. 1. In response, the Attorney General sought information concerning the MSPD Defendants' "plans regarding defense of the case, trial plan, etc.," but the MSPD Defendants, citing the State Defendants' motion to realign (which had asserted the existence of a conflict between the State Defendants and the MSPD Defendants) and the confidential nature of the mediation, declined to share such details. *Id.* at pp. 3–6.

On May 13, 2019, the parties filed a joint motion for entry of a consent judgment. Doc. 221. The proposed consent judgment states that Plaintiffs would likely succeed on the merits based on "overwhelming admissible evidence" showing that MSPD is "grossly overburdened, and that the burden under which [MSPD] operates routinely and systematically harms indigent criminal defendants by depriving them of competent counsel." Exhibit 1 (Proposed Consent Judgment), § III(j). The proposed consent judgment requires that the MSPD take certain actions to ensure constitutionally adequate representation for Plaintiffs and other indigent defendants. *Id.* at §§ IV–XVI. It also provides for the appointment of a monitor with reporting obligations, establishes a rubric by which the MSPD would determine when an individual public defender has reached capacity, and requires the MSPD to ensure that public defenders do not exceed the workload capacity established by the proposed consent judgment. *Id.* at §§ XVII–XIX. Finally, it provides a mechanism for dispute resolution, *id.* at § XX, and permits enforcement by a defined group of third-party beneficiaries. *Id.* at § XXI.

3

On May 14, 2019, the day after the parties moved for entry of the proposed consent judgment, the Attorney General filed a motion to intervene, Doc. 222 (Attorney General's Motion to Intervene), and a motion to stay the case pending resolution of the motion to intervene, Doc. 224 (Attorney General's Motion to Stay).

## II. Discussion

### A. Timeliness

When a party seeks to intervene—whether as of right or otherwise—"the motion must be timely." *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011). Timeliness is "determined by considering all the circumstances of the case," *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993), including: (1) how far the litigation has progressed at the time of the motion for intervention; (2) the prospective intervenor's prior knowledge of the pending action; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties, *U.S. Bank Nat'l Ass'n v. State Farm Fire & Cas. Co.*, 765 F.3d 867, 869 (8th Cir. 2014).

It is undisputed that the Attorney General has known of this suit since at least April 2017, when, on behalf of the State Defendants, he removed the case from state court to federal court. Doc. 1. Thereafter, the Attorney General actively litigated this case for nearly two years as counsel for the State Defendants. On April 21, 2017, the Attorney General moved for dismissal of both State Defendants, and on February 26, 2019, he succeeded. The Attorney General was fully aware that the dismissal would leave the MSPD Defendants—whom the Attorney General had characterized as having legal interests that "mirror those of the Plaintiffs", Doc. 134, p. 1—as the sole defendants in this case.

If the Attorney General wanted the State to have an active role in opposing the Plaintiffs' claims and any settlement between the Plaintiffs and the MSPD Defendants, he should not have sought immediate dismissal of the State as a defendant. *See In re Living Hope Sw. Med. Servs., LLC*, No. 13-04055, 2014 WL 3368191, at *4 (W.D. Ark. July 10, 2014) ("If [defendant] believed that his interests would be implicated in the proceeding such that he should be allowed to litigate those interests, he should not have agreed to be dismissed as a defendant."), *aff'd*, 598 F. App'x 467 (8th Cir. 2015). Further, given that the Attorney General knew from the outset the nature of the relief sought and had previously expressed concern that the MSPD Defendants did not share the State's interests, he should have sought to intervene to protect the State's interests, at the latest, right after securing dismissal of the State Defendants in late February 2019.[1] *See Chamness v. Bowen*, 722 F.3d 1110, 1121–22 (9th Cir. 2013) (affirming denial of intervention as untimely when movant had two to four weeks' prior notice of potential impairment and litigation was near its end); *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8–9 (1st Cir. 2009) (affirming finding that two-and-a-half-month delay made motion to intervene untimely, especially when parties had reached a settlement).

To the extent that the Attorney General seeks to intervene in his individual capacity, to protect interests unique to the Attorney General and his office, the Attorney General was in a position to move to intervene at an even earlier date—at the outset of this case in 2017; following the Court's denial of the motion to realign the MSPD Defendants with Plaintiffs on April 17, 2018, Doc. 190; shortly after dismissal of the State Defendants on February 26, 2019, Doc. 211; or following referral of the case to mediation on March 1, 2019, Doc. 213.

---

[1] Indeed, the Attorney General knew of the risk on January 10, 2019, when the Eight Circuit Court of Appeals issued its opinion that the State Defendants must be dismissed and would no longer be parties in the case.

The Attorney General did not, however, seek to intervene until a day after the motion for entry of the consent judgment was filed, on May 14, 2019. Doc. 222. The Attorney General argues that he did not intervene sooner because he did not know until he saw the proposed consent judgment that the parties would enter into a settlement agreement that would be adverse to the State and its Attorney General. But the relevant question is when he would have been on notice that there was a risk that his interests would not be adequately protected by the MSPD Defendants. *See Floyd v. City of New York*, 770 F.3d 1051, 1059 (2d Cir. 2014) (reasoning that notice of potential resolution did not justify prior delay when movant "should have known that [its] 'interests *might* not be adequately represented' far in advance of any indication that the [parties] might settle the dispute" (citation omitted)); *see also Harris v. Pernsley*, 113 F.R.D. 615, 619–20 (E.D. Pa. 1986) (finding that "the [DA] was not entitled to wait for 'official notice' of a proposed settlement to attempt to intervene" but rather, "was required to move to intervene as soon as he knew or should have known that his interests were no longer adequately protected"), *aff'd*, 820 F.2d 592 (3d Cir. 1987).

Further, if the Attorney General felt that he was entitled to a seat at the table during mediation in order to protect his interests or the interests of the State generally, he was at liberty to move to intervene shortly after the Court ordered the parties to proceed to mediation on March 1, 2019. Doc. 213. *See Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000) ("[I]f [the movant] was concerned about settlement negotiations not taking its interests into account, it should have moved to intervene at such a time when it would have been able to participate in them.").

In short, given the Attorney General's knowledge of the case for a "significant period of time," prior involvement in mediation and resultant familiarity with the relief sought by Plaintiffs,

6

and early concern (dating back to January 2018) that its interests may not adequately be represented by the MSPD Defendants, the Attorney General's delay in seeking to intervene is unjustified. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017) (noting that would-be intervenor's knowledge of the litigation "often weighs heavily in cases where the would-be intervenor was aware of the litigation for a significant period of time before attempting to intervene"); *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995) (affirming denial of motion to intervene as untimely when movant "monitored [the] suit . . . for nearly two years and then moved to join the litigation when the parties reached a settlement agreement one month before the trial date").

Moreover, the parties would be prejudiced by the Attorney General's late intervention in this case. The parties have engaged in extensive written discovery, conducted more than fifteen depositions, disclosed three experts along with their written reports, engaged in time-consuming settlement discussions, and ultimately, through the MAP, reached an agreement that is satisfactory to each party. The parties have invested significant work to avoid the uncertainties of trial. To permit the Attorney General to enter the case as a party at this late juncture would be a substantial burden on the parties that did their work in a timely fashion as ordered by the Court. *See U.S. Bank Nat. Ass'n*, 765 F.3d at 870 (concluding "[i]t was reasonable for the [district] court to think the parties could be prejudiced by having to cover the same ground again"); *R & G Mortg. Corp.*, 584 F.3d at 9 (reasoning that when "proposed intervention [is] aimed at disrupting [a] settlement, the harm that intervention would have worked to the original parties [is] manifest"). Tardy intervention after the parties have reached a resolution of their differences and on the cusp of trial

7

is prejudicial.[2]

Thus, in light of the Attorney General's two-year knowledge of the action and failure to provide a reasonable explanation for the delay in seeking intervention, the advanced stage of this litigation, and the substantial risk of prejudice to the existing parties who have reached an amicable resolution, the Court finds that the Attorney General's motion to intervene is untimely.

## B. Intervention as of Right

Even if the Attorney General's motion to intervene had been timely, the Court would deny the motion to intervene as a matter of right because the Attorney General has failed to demonstrate a "cognizable interest in the subject matter of the litigation" that "might be impaired by the disposition of the case." *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997). Although Rule 24 is "liberally construed with all doubts resolved in favor of the proposed intervenor," an applicant must nonetheless demonstrate that (1) he has a "cognizable interest in the subject matter of the litigation," (2) the interest may be "impaired" as a result of the litigation, and (3) the interest "is not adequately protected by the existing parties to the litigation." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003) (citing *Chiglo*, 104 F.3d at 187); *see also* Fed. R. Civ. P. 24(a)(2).

### 1. Interest

For the purposes of Rule 24(a)(2), an asserted interest must be "significantly protectable," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), which has been interpreted to mean "legally

---

[2] "[E]ven absent any prejudice, the district court [i]s free to conclude that given the progress of the litigation, the [would-be intervenors'] knowledge of it, and the [would-be intervenor's] failure to adequately explain the delay, the motion was untimely." *Tarek ibn Ziyad Acad.*, 643 F.3d at 1095 (affirming denial of motion to intervene as untimely in the absence of prejudice); *Arrow*, 55 F.3d at 409 (reasoning that even if intervention would not prejudice existing parties, the progress of the litigation and intervenors' knowledge of it permitted the district court to find motion untimely).

8

protectable," *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984)). In other words, Rule 24(a)(2) requires more than a "generalized interest" or stake in the litigation. *Id.* ("[A]n undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right" (quoting *Pub Serv. Co. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998))).

### a. The Capacity in Which the Attorney General Seeks to Intervene

The nature of the Attorney General's interest is circumscribed by the capacity in which he seeks to intervene. As the discussion of timeliness above indicates, the capacity in which the Attorney General seeks to intervene is not clear. The Attorney General states that he seeks to intervene in his "official capacity," but not as counsel for the State or other state entities. Doc. 231, p. 1; *see also* Doc. 236 (Oral Argument Transcript), p. 4. However, this assertion appears inconsistent with longstanding jurisprudence that a lawsuit against a state official in his or her official capacity "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits [naming] state officials in their official capacity . . . should be treated as suits [naming] the State.").[3]

---

[3] Oral argument did not clarify the Attorney General's position:

> The Court: I want to know specifically who is seeking to intervene and in what capacity.
>
> Mr. Morgan: The Attorney General is seeking to intervene in his official capacity as the Attorney General.
>
> . . .
>
> The Court: "Official capacity is when [the Attorney General is] representing the state, he is the state, he's acting as a state actor. Or are you saying he is entering . . . in his capacity as the Attorney General, not on behalf of the

To the extent that the Attorney General seeks to intervene in his official capacity, as the State, the State forfeited that right when it sought and obtained its dismissal based on sovereign immunity. "The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings." *KPERS. v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C.*, 114 F.3d 679, 687 (8th Cir. 1997). On the State's motion and appeal, which the Attorney General brought, the Eighth Circuit concluded that Plaintiffs' claims against the State are barred by sovereign immunity. *See generally Church*, 913 F.3d 736. Accordingly, the law of this case—indeed the law of the Eighth Circuit—is that the State cannot be held liable on Plaintiffs' claims. As the State was granted dismissal on the basis of sovereign immunity and cannot be liable for Plaintiffs' claims, intervention by the Attorney General on behalf of the State is not proper.

Insofar as the Attorney General seeks to intervene on behalf of the MSPD Defendants, *see* Doc. 223, p. 10 ("The Attorney General will assert the defense that Defendants have [provided constitutionally-adequate representation to criminal defendants]."), he has failed to articulate any legal basis for doing so. Under Missouri law, the MSPD is an "independent department" of Missouri's judicial branch vested with the responsibility of providing counsel to indigent defendants facing incarceration. Mo. Rev. Stat. § 600.019.1; *see also State ex rel. Mo. Pub. Def. Comm'n v. Pratte*, 298 S.W.3d 870, 875–76 (Mo. banc 2009) (discussing history of MSPD). The

---

> State, not in any way on behalf of the State as an entity or on behalf of the government or on behalf of any other state actor, solely as the Attorney General of the State of Missouri?
>
> Mr. Morgan: "The Attorney General. Yeah, your Honor, it's solely as the Attorney General. . . . Certainly he is entering in his . . . constitutional and statutory capacity as the Attorney General."

Doc. 236, 5:17–6:22.

10

Case 2:17-cv-04057-NKL   Document 238   Filed 07/12/19   Page 10 of 19

Attorney General, in contrast, has no legal duties or powers with regard to the provision of legal representation for indigent defendants. It is the MSPD Defendants, not the Attorney General, that would incur liability if the MSPD's representation of the Plaintiffs were found to violate the Constitution. As a legally independent government entity, it is the MSPD that is vested with the right and authority to litigate on its own behalf, as it has done at various times in recent years and throughout this case.[4] Thus, the Attorney General does not have authority to intervene to assert defenses on the MSPD Defendants' behalf over their objections.

### b. The Interests of the Attorney General

The Attorney General provides only vague descriptions of the "broad interests" allegedly at stake for him individually in this litigation.[5] Doc. 231, p. 1. The Attorney General asserts interests in "protect[ing] the interests of the State and all of its citizens," Doc. 223 (Suggestions in

---

[4] *See, e.g.*, *Pratte*, 298 S.W.3d at 872 (MSPD represented by counsel Mermelstein, among others); *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 596 (Mo. banc 2012) (same); *Barrett v. Greitens*, 542 S.W.3d 370, 374 (Mo. Ct. App. 2017) (MSPD Director represented by counsel Mermelstein).

[5] The Attorney General's failure to file a proposed pleading, as required by Federal Rule of Civil Procedure 24(c), only compounds the issue, as the Court is unable to look to the Attorney General's proposed answer or counterclaim for context in identifying the alleged interest at stake or how he plans to protect that interest in this litigation. *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, No. 10-2076, 2012 WL 3065517, at *6 (E.D. Mo. July 27, 2012) ("The proposed intervenors have not, however, complied with Rule 24(c) which requires a motion to intervene to 'be accompanied by a pleading that sets out the claim or defense for which intervention is sought.' Therefore, the exact parameters of the proposed intervention are not known." (quoting Fed. R. Civ. P. 24(c)); *see also United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, No. 10-2076, 2014 WL 4851801, at *4 (E.D. Mo. Sept. 29, 2014) (denying intervention in part because the movants "ha[d] not complied with the requirements of Rule 24(c), and d[id] not seek to assert their own individual claims or defenses against either party"). This is more than a mere formality. *St. Charles Tower, Inc. v. Cty. of Franklin, Mo.*, No. 09-987, 2009 WL 3852462, at *1 (E.D. Mo. Nov. 17, 2009) ("This requirement is not merely a procedural formality, but is integral to the Court's necessary analysis of the legal rights asserted by the intervenor, and concomitant issues such as standing and jurisdiction."). A pleading is essential for an analysis of the Rule 24 factors, especially given the unusual procedural posture of this case. Further, neither during nor after oral argument did the Attorney General seek to clarify his defenses or counterclaims.

Support of Motion to Intervene), p. 2; "the state's criminal justice and prosecution system," *id.* at 4; "enforcement of the General Assembly's statutory purposes," *id.*; "ongoing criminal proceedings," *id.* at 5; "ensur[ing] that the rule of law is upheld," *id.* at 7; "protecting public safety, promoting the public welfare, and ensuring the integrity of a criminal prosecution." *id.* at 8; "health, safety, and welfare of all Missourians," Doc. 231, p. 3; and "the overall functioning of the justice system," *id.* The Attorney General also speaks generally about the "state's police power to protect its people," and his interest "[a]cting on behalf of the State" as "the state's chief lawyer and law enforcement officer." Doc. 223, p. 3.

The Attorney General cites the fact that both common law and Mo. Rev. Stat. § 27.010 *et seq.* confer upon him the "broad authority," Doc. 231, p. 3, to, "[w]hen directed by the governor . . . aid any prosecuting or circuit attorney in the discharge of their respective duties in the trial courts and in examinations before grand juries," *id.* § 27.030, "appear on behalf of the state in the court of appeals and in the supreme court," *id.* § 27.050, and to

> institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations in whatever court or jurisdiction such action may be necessary; and he may also appear and interplead, answer or defend, in any proceeding or tribunal in which the state's interests are involved.

*id.* § 27.060. The Attorney General argues that Mo. Rev. Stat § 27.060, as interpreted by the Missouri Supreme Court in *Dunivan v. State*, 466 S.W.3d 514, 518 (Mo. 2015), gives him the unconditional statutory right to intervene. However, *Dunivan* considered whether Section 27.060 provided absolute authority to intervene under Missouri Rule 52.12(a)(1), which permits intervention as of right "when a statute of th[e] state confers an unconditional right to intervene." But the Attorney General removed this case to federal court, so whether the Attorney General's legal duties under Missouri law are sufficient for intervention as of right is a question of federal

12

law. *Harris v. Pernsley*, 820 F.2d 592, 597 n.7 (3d Cir. 1987); *New Orleans Pub. Serv., Inc*, 732 F.2d at 466 n.29 ("[A]s this is a suit in federal court, federal law governs the requirements for intervention, standing and real party in interest status, including the character of interest which is necessary for such purposes."). The Federal Rules of Civil Procedure require a federal, rather than a state, statute to confer an unconditional right to intervene, Fed. R. Civ. P. 24(a)(1), and the Attorney General has not pointed to any such statute.

Moreover, the authorities the Attorney General cites as conferring a right to intervene in federal court contemplate interests more specific than those articulated here and involved intervention on a more limited basis than the Attorney General proposes. *See, e.g., Pfizer Ireland Pharm. v. Albers Med., Inc.*, 225 F.R.D. 591, 592–93 (W.D. Mo. 2004) (granting the Government leave to intervene for the limited purpose of seeking a stay of discovery when continuation of civil discovery would put overlapping criminal investigation at risk).

### 2. Risk of Impairment and Adequacy of Representation

Even affording the Attorney General the benefit of any doubt and assuming, for the purpose of this motion, that the interests articulated by the Attorney General can be legally protectable in federal court, the Court cannot find on the record presented that the Attorney General's interests, even liberally construed, may be impaired by this litigation. A proposed intervenor must "demonstrate that the subject matter of the action affects its interests in a direct rather than tangential way." *Metro. St. Louis Sewer Dist.*, 569 F.3d at 839. Intervention is not appropriate when any impact on the claimed impairment is "'contingent upon the occurrence of a sequence of events'" beyond the litigation. *Id.* at 840 (quoting *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998)).

The Attorney General asserts that requirements in the consent judgment that the MSPD "take certain actions in criminal trials and appeals," including "conducting discovery under certain timelines, requesting hearings, filing briefs, and seeking oral argument," will affect his work in "routinely appear[ing] on the other side of a party represented by a public defender." Doc. 223, pp. 5–6. However, the Attorney General does not articulate how a change in the MSPD's litigation strategies would impair his own interests. Indeed, the actions described would likely improve the quality of the litigation and therefore would advance the Attorney General's interest in avoiding postconviction motions based on constitutionally defective representation. Further, any suggestion that the proposed consent judgment will somehow result in an increase of appeals or habeas proceedings in which the Attorney General is required to appear is purely hypothetical. The proposed consent judgment does not concede that the MSPD has provided constitutionally inadequate representation, and how much weight may be ascribed to the consent judgment in future challenges to the MSPD's prior legal representation is purely speculative. In short, the Attorney General has not shown that this lawsuit is likely to affect the Attorney General's interests in any direct way.

The Attorney General also asserts that, under the consent judgment, "prosecutors may be asked to eliminate incarceration as a possible sentence in criminals proceedings"; "courts may be required to entirely dismiss criminal cases"; and "[i]ndividuals accused of some of the most serious felonies in Missouri—rape, kidnapping, armed robbery—may walk free without undergoing a trial because a public defender's office will refuse to take any cases that will require an attorney to work more than 40 hours per week." Doc. 223, p. 6.[6] This, in turn, the Attorney General argues,

---

[6] The Attorney General takes specific issue with the portion of the proposed consent judgment that "provid[es] for dismissal of a case 'in lieu of processing additional indigence applications when

will hamper his ability to protect the public safety, promote the public welfare, and ensure the integrity of criminal prosecutions.

However, these outcomes are contingent on multiple factors beyond the disposition of this case, and the Attorney General has not established, or even argued, that these contingencies are likely. Moreover, the proposed consent judgment does not appear to alter, or prevent the Attorney General from performing, any of his duties. It does not obligate the Attorney General to take or refrain from taking any action, nor could he be held in contempt for violating the proposed consent judgment. Thus, while the proposed consent judgment may have some indirect effects on the Attorney General's enforcement function, any such effects would not create the kind of direct, substantial impairment that permits intervention as of right. *See Harris*, 820 F.2d at 600 (denying intervention in case involving unconstitutional prison conditions despite district attorney's argument that a cap on prison inmates could hinder his ability to prosecute crimes because the

---

[the 40 hour-per-week] standard has been reached.'" Doc. 223, p. 7 (quoting Exhibit 1, p. 29). But the proposed consent judgment merely requires that the MSPD:

> notif[y] the circuit court that the caseload standard has been reached in order to promptly allow the court to: (1) appoint private counsel pursuant to *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64 (1981) and *Willamson v. Vardeman*, 674 F.2d 1211 (1982); (2) engage with the prosecutor regarding the elimination of incarceration as a possible sentence for the offense(s) charged, thus eliminating the constitutional right to an attorney pursuant to *Scott v. Illinois*, 440 U.S. 367, 373-74 (1979); (3) dismiss the case per the requirements set forth in *Ruddy* and *Williamson*; or (4) take any other actions that are consistent with the constitutions of the United States and Missouri, and that do not violate the requirements and limitations of this Consent Judgment.

Exhibit 1, pp. 29–30. Dismissing the case per the requirements set forth in *Ruddy* and *Williamson* is only one of several options left to the criminal court's discretion. The relevant language in the consent judgment does not purport to require the criminal court or the prosecutor to do anything at all. *Id.*

district attorney had "no function in the administration of the prisons" and could not be held liable for any unlawful conditions).

The Attorney General also asserts that the consent judgment implicates his interest in "ensur[ing] that the rule of law is upheld" because it "undermines statutes that address the workload and resources of Missouri public defenders." Doc. 223, pp. 6, 7. However, the Attorney General has not established that the interest might be impaired or inadequately protected absent his intervention. "'[I]f an existing party to the suit is charged with the responsibility of representing the intervenor's interests, a presumption of adequate representation arises'" that is "'not overcome'" by "'[a] difference of opinion concerning litigation strategy or individual aspects of a remedy.'" *F.T.C. v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015) (quoting *Chiglo*, 104 F.3d at 187 and *Jenkins ex rel. Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir.1996)). Thus, notwithstanding any conflict of interest between the MSPD Defendants and the Attorney General, the MSPD's own interest in ensuring that it operates in accordance with state law creates the presumption of adequate representation. Moreover, the Court is required to independently evaluate whether the proposed consent judgment is consistent with the Constitution, statutes, and jurisprudence, and it cannot approve a consent judgment that is contrary to law. *See St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 268 (8th Cir. 2011) ("While parties can settle their litigation with consent decrees, they cannot agree to 'disregard valid state laws.'" (quoting *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995))). Thus, while the Attorney General has an interest in upholding the rule of law in the State of Missouri, he cannot show that the interest will

be unprotected here, because the interest is shared by both the MSPD and the Court. Insofar as the consent judgment violates the law, the Court will not enter it.[7]

### C. Permissive Intervention

The Court also finds that permissive intervention is unwarranted. Under Rule 24(b)(1), a court may grant a party permission to intervene in a case if the party "has a claim or defense that shares with the main action a common question of law or fact."[8] In determining whether to permit intervention, courts consider whether: (1) "the motion to intervene is timely"; (2) "the movant's claim shares a question of law or fact in common with the main action"; and (3) "intervention will unduly delay or prejudice adjudication of the original parties' rights." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 266 (D. Minn. 2017). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Barnett*, 317 F.3d at 787.

As discussed above, intervention by the Attorney General as a full-party defendant at this stage in the case would result in substantial delay and prejudice to the adjudication of the parties' rights. The parties to this case have reached a resolution which, according to them, will end the MSPD Defendants' practice of creating waiting lists and that aims to ensure that the MSPD

---

[7] As explained below, the Court will permit the Attorney General to submit an amicus brief to assist the Court in its determination of whether the proposed consent judgment is consistent with the law.

[8] Although the Attorney General cites Rule 24(b)(2) as grounds for permissive intervention in his motion, Doc. 222, the entirety of his argument in the Suggestions in Support, Doc. 223, and Reply, Doc. 231, is premised on and specifically cites only Rule 24(b)(1)(B). Additionally, the Attorney General did not highlight in a separate pleading any provision he is charged with administering that is implicated in this case because no pleading was filed. In any event, Rule 24(b)(3) requires a court to consider delay and prejudice regardless of whether intervention is sought under Rule 24(b)(1) or (b)(2), the following analysis would apply under Rule 24(b)(2) as well.

17

Defendants provide Plaintiffs with attorneys who will have time to provide constitutionally adequate representation. The Attorney General's request that the Court now undo the work of the parties and MAP mediator in reaching a settlement, and instead make a "reasonable adjustment to the scheduling order" to permit "additional discovery"[9] in a case that is over two years old, is unjustified. Doc. 223, p. 9.

Moreover, denial of permissive intervention is appropriate where a would-be intervenor's proposed pleading fails to raise any claim or defense that is "different from those of the existing parties." *Standard Heating & Air Conditioning Co.*, 137 F.3d at 573; *see also Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1233 (10th Cir. 2010) (noting that the "relevant" interests of a would-be intervenor "are the interests pursued in its proposed complaint in intervention"). Here, because the Attorney General did not file a proposed answer or counterclaim, the Court is unable to assess whether the Attorney General's proposed claims or defenses differ from those of the parties. This problem is compounded by the Attorney General's failure to articulate how he would be directly and concretely injured if intervention is denied.

For the above reasons, permissive intervention is denied.

**D. Amicus Brief**

Although the Court finds that the Attorney General has not made a showing sufficient to warrant intervention, in light of the Court's obligation to consider whether the proposed consent judgment comports with applicable law, the Court will permit the Attorney General to submit an amicus brief concerning whether the proposed consent judgment is consistent with Missouri law

---

[9] He does not specify how much or what additional discovery would be needed, or whether additional hearings also would be needed. At oral argument, the Attorney General also expressed an intent to file dispositive motions. Doc. 236, p. 21:16–18.

and whether the proposed consent judgment will unavoidably and adversely affect public safety and welfare in a concrete and particularized way.

**III.     Conclusion**

For the reasons discussed above, the Attorney General's motion to intervene, Doc. 222, is denied.  The Attorney General's related motion to stay these proceedings, Doc. 224, is denied as moot.  However, the Attorney General may, within two weeks of the date of this Order, file an amicus brief not exceeding 25 pages that addresses whether the proposed consent judgment comports with Missouri law and whether it will unavoidably and adversely affect public safety and welfare in a concrete and particularized way.  Plaintiffs and the MSPD Defendants will each have two weeks after the filing of the amicus brief to file a response.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 12, 2019
Jefferson City, Missouri

19

Case 2:17-cv-04057-NKL   Document 238   Filed 07/12/19   Page 19 of 19