**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| RANDALL LEE DALTON, et al., Plaintiffs, | ) | |
| v. | ) | Case No. 17-04057-CV-C-NKL |
| MICHAEL BARRETT, et al., Defendants. | ) | |

**_AMICUS BRIEF_ OF THE MISSOURI ATTORNEY GENERAL AS TO THE PROPOSED CONSENT JUDGMENT**

As requested by this Court's July 12, 2019 Order, the Missouri Attorney General respectfully submits this *amicus brief* concerning the proposed consent judgment. The Attorney General, as Missouri's constitutional officer charged with representing the interests of all Missourians, upholding and defending Missouri law, and protecting public safety, strongly urges the Court to reject the proposed consent judgment for several reasons.

First, Missouri law expressly prohibits the Missouri State Public Defender ("MSPD") system from limiting the availability of an attorney to accept cases based on a determination that a public defender's office has exceeded a caseload standard. However, the proposed consent judgment imposes a caseload standard on every attorney and office in the public defender system. The proposed consent judgment prohibits the MSPD from assigning cases to an attorney that might result in an attorney working more than 2,080 hours per year, or 40 hours per week. This circumvents the necessity of making individualized determinations, and would be

made without the opportunity to receive evidence or testimony on the development of this caseload standard. And if the Court enters the proposed consent judgment, it never will.

Second, the proposed consent judgment directly contravenes or undermines the legislative intent of other Missouri statutes and rules governing the representation of criminal defendants. And the proposed consent judgment will require public defenders to take certain actions in litigation that may run afoul of an attorney's obligations under the Missouri Rules of Professional Responsibility.

Third, the proposed consent judgment is likely to have a deleterious effect on public safety in Missouri. If this Court enters the proposed consent judgment, Missouri judges will be unable to consider the caseloads, capabilities, skills, and experiences of individual MSPD attorneys. Instead, the District Defender leading a regional MSPD office must only notify the appropriate Missouri trial court judge that the caseload standard has been breached. At that point, the judge's only practical options will be to dismiss a case, work towards eliminating incarceration as a sanction, or appoint private counsel. Untold numbers of indigent defendants may be released from jail or not sentenced at all, regardless of the severity of their charged crimes.

Finally, the proposed consent judgment is wholly attenuated from any live issues present with the four remaining plaintiffs in this case. When this case was filed, it was about five plaintiffs and whether they are being provided with constitutionally adequate representation by the Missouri State Public Defender's

office. Just months before trial, the remaining parties have asked this Court to enter a proposed consent judgment that expressly disclaims any finding that Defendants violated any criminal defendant's constitutional rights (Doc. 222-1, Consent Judgment, Section II(n)). Instead, the proposed consent judgment provides relief on a class-wide basis to all current and future indigent criminal defendants *and* to the entire MSPD system. This Court has already declined to certify this case as a class action. Entering the proposed consent judgment would undermine this Court's previous ruling.

## I. The proposed consent judgment contravenes Missouri statutes governing the appointment of public defenders to indigent criminal defendants.

### *A. Missouri law prohibits imposing a brightline caseload standard on public defenders based on hours worked.*

Section 600.062, RSMo, expressly prohibits the MSPD from limiting the availability of any public defender office or individual attorney "based on a determination that the office has exceeded a caseload standard." In spite of this clear Missouri law, the proposed consent judgment *requires* the MSPD to limit the availability of its attorneys based on a caseload standard. The proposed consent judgment provides that "the MSPD shall ensure that public defenders not exceed the MSPD caseload standard." (Consent Judgment, Section XVIII(e)). The proposed consent judgment fixes the caseload standard at 173.3 hours' worth of cases on a monthly basis. (Consent Judgment, Section V(f)). This amount was calculated to "equal 40 hours a week, 52 weeks a year." (Consent Judgment, Section XVIII(f)). The caseload standard in the proposed consent judgment will drive the MSPD's

assignment of cases to its attorneys, directly contravening the unambiguous bar in § 600.062, RSMo, against implementing caseload standards.

What is more, the proposed consent judgment contains no provision for this caseload standard to be reexamined or adjusted over the proposed consent judgment's seven-year term. The caseload standard in the proposed consent judgment is simply not permitted by Missouri law. And the basis for these numbers has not been briefed by the parties to the lawsuit or subjected to judicial scrutiny. If the Court enters the proposed consent judgment, they never will be.

Though the MSPD is statutorily prohibited from implementing a bright-line rule based on hours worked for assigning cases, Missouri law does provide mechanisms for public defenders to obtain relief if their caseload is preventing them from providing effective assistance of counsel. Under § 600.063, RSMo, an individual MSPD attorney can request a conference to discuss caseload issues with the presiding judge of the circuit court serving an MSPD district office. The attorney must "state the reasons why the individual public defender or defenders will be unable to provide effective assistance of counsel due to caseload concerns." § 600.063.1, RSMo. After filing the motion and conferring with the court, the court may decide that the individual attorney does not have a caseload preventing him from providing effective assistance of counsel, or the court may grant limited relief. Section 600.063.2 allows the court to appoint a private attorney, place a case on a waiting list, grant continuances, or take other actions.

MSPD defenders have used this very provision throughout the State, but the MSPD is now attempting to circumvent it. The proposed consent judgment substitutes an individual attorney's assessment of his own caseload with a caseload standard—one that is expressly prohibited by § 600.062, RSMo. Instead of filing a motion with a circuit court to discuss caseload management issues and allowing the circuit court to consider factors specific to that individual attorney, the proposed consent judgment provides that an attorney shall "notif[y] the circuit court that the caseload standard has been reached." (Consent Judgment, Section XVIII(l)). Upon being notified, the circuit court may then appoint private counsel, dismiss the case, or engage with the prosecutor about eliminating incarceration as an offense. (*Id.*). Sections 600.062 and 600.063, RSMo, only allow the exemption of individual attorneys from taking cases. The exemption cannot, under the statutes, be based exclusively on a caseload standard. And the statutes only permit that exemption if the circuit court approves the exemption based on a finding that the individual attorney has an excessive caseload preventing that individual attorney from providing effective assistance of counsel.

The proposed consent judgment robs Missouri state courts of their jurisdiction and responsibility to assess an individual attorney's caseload, skills, experience, and capabilities. If this Court enters the proposed consent judgment, the mechanisms in § 600.063, RSMo, become illusory. Under the proposed consent judgment, a court will simply be notified that a caseload standard has been reached. If a court is so notified, the court can provide only certain relief. The court will be unable to engage in its

judicial function to truly analyze whether the attorney is able to provide effective assistance of counsel. Whereas a court can conduct an individualized assessment tailored to the specific attorney making a motion under § 600.063, RSMo, the proposed consent judgment establishes a universal rule applicable to all MSPD offices and attorneys. The proposed consent judgment therefore replaces the court's own independent assessment of a matter, undermining the role of a judge and Missouri statutes.

MSPD attorneys have pursued the judicial conferences under § 600.063, RSMo, and courts have rejected (although not in every instance) their arguments that their caseloads prevent them from providing effective assistance of counsel. In one recent case, the Jackson County Circuit Court considered detailed information about the caseload for the District 16 Public Defender's Office. *In re: Area 16 Public Defender Office III* (Case No. 1716-MC14505, Circuit Court of Jackson County). The Court noted that during a 10-year period, while the number of attorneys in the office remained essentially consistent, the office saw a 63% reduction in the number of cases assigned to the office. "Based on the specific information and data," the Court noted, "it is *not* reasonable to conclude, under any standard or legal burden, that the District 16 office has caseload issues." *Id.* at p. 15 (emphasis in original).

So, despite the MSPD's efforts to convince Missouri courts that their caseloads prevent them from providing constitutionally adequate representation to indigent defendants, the MSPD urges this Court to enter a proposed consent judgment as a backdoor way of imposing a caseload standard throughout the entire MSPD system.

The proposed consent judgment has no appreciation for nuance of the capabilities, skills, or demands of individual MSPD attorneys or even regional MSPD offices. Instead, the proposed consent judgment will impose a single standard, prohibited by Missouri law, on all MSPD attorneys and offices. It effectively grants the MSDP—a defendant to the lawsuit—class-wide relief.

Granting class-wide relief to the MSPD is especially unwarranted because MSPD attorneys have, in fact, successfully pursued caseload relief under § 600.063, RSMo. *See In re: Missouri State Public Defender District 21, St. Louis County Trial Office* (Case No. 18SL-CC00129, St. Louis County Circuit Court). If an individual public defender does have an excessive caseload preventing him or her from providing effective assistance of counsel, the statutory procedures have been proven to work. Subjecting all MSPD attorneys to the 40-hour per week caseload standard forces all public defenders to limit their representation, even if they are capable of providing effective assistance of counsel with a higher caseload.

### *B. The proposed consent judgment will grant the MSPD authority that it does not have under Missouri law.*

The proposed consent judgment also grants the MSPD authority that it does not have under Missouri law. Section VIII(e) of the proposed consent judgment places the MSPD in a supervisory authority over county jails' provision of applications for public defender services. Specifically, the MSPD shall ensure that "county jails are aware of and in compliance with all relevant laws regarding the provision of such applications." However, no Missouri law grants the MSPD authority to serve as a compliance monitor for county jails. Moreover, the proposed consent judgment does

not address the consequences if a jail does not comply with this provision. If the MSPD takes on an oversight role over county jails' provision of applications for public defender services, it is unclear whether the MSPD or the jail is ultimately liable if the jail falls short of its obligation.

Section VIII(e) of the proposed consent judgment requires the MSPD to "take appropriate legal steps to ensure that county jails and state prisons are in compliance with all laws and rules regarding access to counsel and the privacy of client communications." The terms do not make clear what "appropriate legal steps" the MSPD may take, but Missouri law already makes the Director of the Department of Corrections responsible for the operation of state prisons. Under § 217.025.1, RSMo, the Director of the Department of Corrections is entrusted with the "general supervision, management and control" of Missouri's prison system. No Missouri law grants the MSPD supervisory authority over the state prison system.

Furthermore, none of the proposed findings of fact in the proposed consent judgment addresses issues with privacy of client communication and defendants' communication with their attorneys inside Missouri's prisons or jails. This relief was not sought in the plaintiffs' Complaint, and the facts set forth in the proposed consent judgment do not support granting it. The proposed consent judgment therefore grants the MSPD—the *defendants* in this lawsuit—powers it does not have under Missouri law. The expansion of the MSPD's powers only reinforces the fact that the ACLU and the MSPD are not truly adverse parties in this lawsuit.

### *C. The proposed consent judgment is not premised on facts to support a violation of federal law and thereby override Missouri law.*

"While parties can settle their litigation with consent decrees, they cannot agree to disregard valid state laws, and cannot consent to do something together that they lack the power to do individually." *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995) (internal citations omitted). State entities, like the MSPD, "cannot enter into an agreement allowing them to act outside their legal authority, even if that agreement is styled as a 'consent judgment' and approved by a court." *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 270 (8th Cir. 2011). If a consent judgment's terms are not "narrowly tailored so as to infringe state sovereignty as minimally as possible," the consent judgment is invalid and unenforceable. *Id.* (citing *Perkins*). In *Kurtz*, the Eighth Circuit reversed the district court's entry of a consent judgment that contravened Missouri law because the consent judgment's remedy was not "necessary to rectify a violation of federal law" and it was not narrowly tailored to minimize infringement on state sovereignty. *Id.* at 270-71.

The proposed consent judgment clearly contravenes Missouri law and undermines the Missouri Supreme Court Rules, as discussed below. The remedies provided in the proposed consent judgment are simply not necessary to rectify any violation of federal law.

First, the proposed consent judgment expressly disclaims any federal constitutional violation. In Section II(n), the proposed consent judgment states that the "MSPD does not admit that the constitutional rights of any specific indigent defendant or defendants, including plaintiffs, have been violated." The closest the

proposed consent judgment comes to finding a constitutional violation is speculation that "there is a high likelihood that Plaintiffs would be able to prove their constitutional claims against the MSPD." (Consent Judgment, Section III(j)). Absent any finding that any plaintiff's constitutional rights have been violated, a consent judgment that contravenes state law is not permitted under controlling Eighth Circuit precedent.

Second, even if this Court were to interpret the proposed consent judgment as supporting an actual violation of the Constitution by the MSPD, the relief granted by the proposal is not necessary to rectify that violation. As discussed below, only one of the remaining four plaintiffs in this case has standing to proceed with this lawsuit to trial. And that plaintiff, Viola Bowman, has been represented by the same public defender for over four years. That public defender has not moved to withdraw from Ms. Bowman's case, and the Attorney General's Office could not find record of him filing a motion under § 600.063, RSMo. Granting systemic relief to tens of thousands of current and future criminal defendants and to the entire MSPD system based on speculation that one person's federal constitutional rights might be violated is not narrowly tailored to minimize intrusions into Missouri's state sovereignty and the statutory scheme of Chapter 600, RSMo.

## II. The proposed consent judgment imposes on MSPD attorneys different ethical standards from the Missouri Rules of Professional Conduct, and it will supplant several Missouri Supreme Court Rules for criminal practice and procedure.

In a number of ways, the proposed consent judgment will require MSPD attorneys to take actions that may undermine or conflict with their ethical obligations

under the Missouri Rules of Professional Conduct. The proposed consent judgment could have included a provision exempting MSPD from taking actions that conflict with their ethical obligations. Instead, the only instances in which the Rules of Professional Conduct are mentioned in the proposed consent judgment are in the provisions that talk about conflicts of interest created by excessive workloads.

For example, Section VII(b) of the proposed consent judgment requires MSPD attorneys to promptly file a motion for a bail review hearing if the trial court declines to release a client pre-trial, or if a client is unable to post bail. However, Rule 4-3.1 of the Rules of Professional Conduct prohibit Missouri attorneys from making unmeritorious claims and contentions. By requiring MSPD attorneys to file certain motions in all cases, there is a reasonable likelihood that they will be put in a position where they will file a pleading in violation of Rule 4-3.1.

In addition, by imposing a caseload standard on all MSPD attorneys and offices, the proposed consent judgment likely undermines Rule 4-1.1. That Rule states that Missouri attorneys shall provide competent representation to a client with the appropriate "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." But the new caseload standard was developed by an accounting firm's many-years-old study of the number of hours an attorney should devote to a specific type of case. While the proposed consent judgment does not expressly prohibit an MSPD attorney from spending more time on a given case, the caseload standard is inextricably linked with how many hours an attorney *should*

spend on a case, regardless of the legal knowledge, skill, thoroughness and preparation necessary for the representation.

Finally, the proposed consent judgment will affect the way that criminal cases are prosecuted and tried in Missouri, undermining the Missouri Supreme Court Rules. For example, Missouri Supreme Court Rule 25.02(b) requires discovery requests to be filed within 20 days of arraignment. However, Section X(b) of the proposed consent judgment drastically reduces this to only two days after arraignment in felony cases, contrary to Missouri Supreme Court Rules. The proposed consent judgment therefore substitutes the trial strategy and judgment of individual public defenders, forcing them to propound discovery in 10% of the time that the Missouri Supreme Court Rules allow. In other places, too, the proposed consent judgment substitutes the trial strategy of individual public defenders by mandating them to take certain actions in discovery, trial, and appeal that are not mandated by the Missouri Supreme Court rules, including filing motions, requesting hearings, filing briefs, and seeking oral argument. (*See generally* Consent Judgment, Section X).

## III. The proposed consent judgment will adversely impact public safety and limit the availability of public defenders to provide representation to clients needing their services.

The proposed consent judgment will not only affect MSPD attorneys and the plaintiffs to this case, it will impact the entire criminal justice system. As discussed in Part I above, the proposed consent judgment will substitute a circuit court's assessment under § 600.063, RSMo, of an individual public defender's workload.

Instead, under the proposed consent judgment, all a public defender has to do is notify a trial court that his caseload has exceeded 173.3 hours' worth of cases. After receiving this notification, a court's options are limited. These options include entirely dismissing a case or eliminating incarceration as an offense, regardless of the severity of the charged crime. (Consent Judgment, Section XVIII(l)). Nothing in Missouri law authorizes courts to take these actions based entirely on an individual public defender's workload. The proposed consent judgment, on the other hand, does just that, providing for dismissal of a case "in lieu of processing additional indigence applications when this standard has been reached." (*Id.*).

Individuals accused of some of the most serious felonies in Missouri—rape, kidnapping, armed robbery—may walk free without undergoing a trial because a public defender's office will refuse to take any cases that will require an attorney to work more than 40 hours per week. And that threshold may be even lower, because the proposed consent judgment allows the MSPD to seek downward adjustments in the caseload standard. (Consent Judgment, Section XVIII(o)). Upon notification that an attorney's caseload standard has been met, courts may also eliminate incarceration as a possible penalty for a charged offense. The relief sought in the case and in the proposed consent judgment will cause grave risks to public safety in a concrete and particularized way.

And critically, the proposed consent judgment will limit the availability of public defenders to represent indigent defendants—the very people they should be representing. By indiscriminately limiting the number of hours worked per public

defender, it is entirely likely that many indigent defendants will not be able to gain access to a lawyer at all. The proposed consent judgment acknowledges that the MSPD currently maintains a waitlist of indigent defendants awaiting public defender services. "During their time on a waitlist, indigent defendants have no access to legal representation whatsoever." (Consent Judgement, Section II(m)). It is unclear if the MSPD will continue to maintain a waitlist, because the proposed consent judgment states that "in lieu of . . . placing such defendants on a wait list for public defender services, the MSPD shall ensure that the relevant District Defender promptly notifies the court that the caseload standard has been reached." (Consent Judgment, Section XVIII(l)). Even if the MSPD continues placing defendants on a waitlist, more and more indigent defendants will be prosecuted without being provided access to a public defender.

The United States and the Missouri Constitutions require that criminal defendants receive adequate assistance of counsel. But instead of ensuring that an individual defendant is receiving adequate counsel, the proposed consent judgment flips the focus from the defendant to the public defender. There is no guarantee that limiting the caseloads of the entire MSPD system ensures that any current or future defendant charged with a crime will receive adequate assistance of counsel. If anything, the proposed consent judgment limits the availability of attorneys to provide counsel.

## IV. The proposed consent judgment inappropriately grants class-wide relief, and it will be enforceable by untold numbers of criminal defendants.

The proposed consent judgment makes as third-party beneficiaries "all indigent persons who are now, or who will be, under formal charge before a state court in Missouri . . . and who are represented by MSPD, or should be represented by MSPD[.]" These third parties, representing an untold number of present and future criminal defendants, can sue to enforce the terms of the proposed consent judgment. However, this Court has already refused plaintiffs' motion—notably unopposed by the MSPD—to certify this case as a class action.

In its order denying class certification, the Court rejected the plaintiffs' argument that this case "requires an analysis of MSPD at the system-wide level, and does not depend on the particular circumstances of individual cases." [Doc. 212, p. 8]. The Court reasoned:

> None of the questions that Plaintiffs present are apt to generate common answers, and instead the answers may vary depending upon any one of a number of factors, including the Plaintiffs' location and type of criminal charge, and may even vary among individual MSPD attorneys. For instance, the Plaintiffs cannot establish the answer to "whether the State has met its obligation to provide counsel," without providing evidence from each of MSPD's forty-two offices and three divisions. The answer could quite conceivably be yes in one MSPD office, but no in another.

[*Id.*]. The Court found that the 10,000+ indigent criminal defendants in Missouri do not share common questions of law and fact. The plaintiffs could not "'bridge the conceptual gap' between their contention that the MSPD is underfunded and

overworked, and their allegation that every putative class member has suffered a common injury of inadequate counsel." [*Id.* at p. 9].

The consent judgment would without a doubt grant class-wide relief to "all indigent persons who are now, or who will be, under formal charge before a state court in Missouri," (Consent Judgment, Section XXI(c)), flouting this Court's order denying class certification just a few short months ago. This is especially inappropriate because only *one* of the four plaintiffs in this lawsuit is currently on trial. Each of the four plaintiffs are, or were, actually represented by counsel in their criminal cases. *See* Case Nos. 15CT-CR02237-01; 16CT-CR1306-01; 15CY-CR00043; 16AO-CR00722-01; 17MG-CR00068-1.

As of the date of this brief, plaintiffs Randall Lee Dalton, Dorian Samuels, and Brian Richman have pleaded guilty. These three plaintiffs were represented by counsel during their plea proceedings. By pleading guilty, they have waived any claims they may have for ineffective assistance of counsel, unless the claim is limited to how an attorney's conduct affected the guilty plea. *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005) (By pleading guilty, a defendant "waived any claim that counsel was ineffective except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made."). Any claims they may have at this point regarding effective assistance of counsel are moot and not justiciable. *See id.*; *see also Tolen v. State*, 934 S.W.2d 639, 643 (Mo. App. E.D. 1996) (Where a guilty plea is "both counselled and voluntary, claims of failure to investigate

factual issues are subsumed and rendered moot by the guilty plea.") (citations and editing marks omitted).

And because they have pleaded guilty, they should be dismissed from this lawsuit. Notably, the MSPD—who, as a self-interested defendant, will immensely benefit from a reduction in the hours worked by its attorneys—has not sought dismissal of these three plaintiffs. This Court has previously dismissed the original lead plaintiff to this case, Shondel Church, after Mr. Church pleaded guilty. [Doc. 69]. Just as this Court held that Mr. Church lacked standing to be a plaintiff after his guilty plea, Plaintiffs Dalton, Samuels, and Richman, too, lack standing and should be dismissed.

That leaves one plaintiff left to shoulder the burden for obtaining class-wide relief on behalf of thousands of indigent non-party criminal defendants and the entire MSPD system. Viola Bowman was charged with first-degree murder and armed criminal action, and her case is set for trial in October 2019. She has been represented by the same MSPD attorney since shortly after her arraignment in January 2015. That attorney has not sought to withdraw from her case, and the Attorney General's Office has not found record of him filing a motion or obtaining relief under § 600.063, RSMo. And Ms. Bowman does not appear to have requested that the court appoint her a new attorney in her criminal case. Because her case is ongoing, she can raise any claims for ineffective assistance of counsel during her trial or on appeal. Missouri Supreme Court Rules 24.035 and 29.15 provide for post-conviction relief in the event she claims ineffective assistance of counsel.

In addition, the proposed consent judgment raises substantial questions about enforcement. As third-party beneficiaries with enforcement rights (Consent Judgment, Section XXI(c)), presumably any future indigent criminal defendant can seek relief in this Court if the MSPD does not comply with the judgment's terms. Given the breadth of the terms—*e.g.*, an attorney's hours worked, communication with a public defender's clients, filing of motions, and serving of discovery—this Court may be faced with countless motions to enforce the consent judgment. Those motions to enforce would typically, and appropriately, be addressed during the course of a criminal defendant's prosecution. But if a criminal defendant's public defender does not propound discovery within two days of an indictment, respond to a client's phone message within two days of receipt, or provide a client with a copy of a motion within five days of filing, the defendant is presumably authorized to file a civil motion to enforce the consent judgment in this Court.

Furthermore, the proposed consent judgment vests significant authority in a court-appointed Monitor to oversee the MSPD's compliance with the terms of the consent judgment. The dispute resolution procedures provide that Plaintiffs' counsel—the ACLU—must bring to the Monitor's attention any issues about the MSPD's compliance with the consent judgment. (Consent Judgment, Section XX). Notably, the proposed consent judgment does not authorize the plaintiffs themselves—the only parties truly entitled to relief in this lawsuit—to bring these issues to the Monitor's attention. Rather, the ACLU, who may not represent any future criminal defendants affected by the MSPD's counsel in a criminal case, is

granted authority to serve as a check on the MSPD system. Granting Plaintiffs' counsel such expansive rights, completely untethered to the representation given to an individual criminal defendant, is extraordinary and unwarranted.

The proposed consent judgment will make monumental changes to the way that criminal defendants are prosecuted, tried, and represented by counsel in Missouri. These changes will based on *one* plaintiff who has been represented by the same public defender for over four years and who does not appear to have raised any claims for ineffective assistance of counsel in her criminal case. This Court should preside over this case at trial, and the MSPD should defend the adequacy of its representation given to the individual plaintiffs in this lawsuit. Public policy, Missouri law, and this Court's own prior decisions in this case dictate that this Court should not grant class-wide relief and open the floodgates to untold numbers of motions or lawsuits by current and future criminal defendants, who already have recourse under state law.

## CONCLUSION

For the reasons stated, the Court should not enter the proposed consent judgment.

Respectfully submitted,

**ERIC S. SCHMITT**
*Attorney General*

*/s/ Jeremiah J. Morgan*
Jeremiah J. Morgan
Deputy Attorney General, Civil
Missouri Bar No. 50387
Cristian M. Stevens
Deputy Attorney General, Criminal
Missouri Bar No. 48028
Missouri Attorney General's Office
P.O. Box 899
Jefferson City, MO 65102
Phone: 573-751-3321
Fax: 573-751-9456

ATTORNEYS FOR INTERVENOR THE MISSOURI ATTORNEY GENERAL

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of July, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court using the Court's online case filing system, and thereby served on all parties in the case.

*/s/ Jeremiah J. Morgan*
Jeremiah J. Morgan