UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| Randall Lee Dalton, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 17-04057-CV-C-NKL |
| ) | |
| Michael Barrett, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE TO THE *AMICUS BRIEF* OF THE MISSOURI ATTORNEY GENERAL AS TO THE PROPOSED CONSENT JUDGMENT**

Missouri's public defense system remains in crisis. Indeed, since Plaintiffs filed this case in Missouri state court in March 2017, the plight of indigent criminal defendants has only gotten worse. As of June 2019, following the MSPD's decision to rely on waiting lists in order to address their own ethical concerns, there were more than 4,000 indigent defendants on waiting lists across Missouri. *See* MSPD Suggestions in Opposition to the Attorney General's Motion to Intervene (Doc. 225) at 14. Some of those defendants are being held in pretrial detention, despite being presumed innocent. Moreover, the numerous systemic deficiencies that Plaintiffs identified in their original petition, including excessive workloads, chronic underfunding, lack of representation at critical stages of clients' cases, prolonged pretrial detention, lack of investigation, lack of consistent and confidential attorney-client communication, and a failing juvenile defense practice—none of which has ever been challenged on the merits by either the MSPD or the State more generally—still have not been sufficiently addressed. As such, the current system of public defense in Missouri continues to violate federal and state law because

1

all indigent defendants face a substantial risk of receiving representation that falls below constitutional standards. In addition, Defendants face the prospect of thousands of suits like this one, where individual indigent defendants prospectively challenge the system that puts their liberty and constitutional rights at substantial risk.

It is in that context that the Parties have engaged in extensive settlement negotiations, in an effort to craft a resolution that will ensure that the Sixth Amendment rights of indigent defendants are protected, while also allowing public defenders to maintain reasonable caseloads and thereby avoid running afoul of their ethical obligations. The Proposed Consent Judgment seeks to achieve these goals by: 1) articulating the steps the MSPD, and individual public defenders, must take at various stages of each case—from initial appearance to direct appeal—in order to fulfill their legal obligations to their clients; 2) requiring oversight and regular reporting by a court-appointed Monitor to facilitate the successful implementation of the Proposed Consent Judgment; and 3) establishing a reasonable caseload standard to ensure that public defenders do not take on the cases of more indigent clients than they can effectively and ethically represent.

Contrary to the Attorney General's characterization, the Proposed Consent Judgment does not attempt to bind non-parties—including judges and prosecutors—to the Parties' agreement. Nor does it enable allegedly dangerous criminals to gain release from custody, or violate established state law. Rather, the Proposed Consent Judgment seeks to solve a longstanding constitutional problem in Missouri—a problem which has been acknowledged by state officials, courts, researchers, and public defense experts for decades. And, rather than require Defendants to wait for an onslaught of similar suits to enter into the same agreement again and again, the Proposed Consent Judgment allows indigent defendants to enforce the

2

agreement if they are compelled to be represented by a public defender who fails to comply with the relevant provisions.

**I.      Missouri Law Provides Plaintiffs with No Remedy for Systemic Deficiencies in the Provision of Public Defense Statewide**

Missouri Revised Statutes §§ 600.062 and 600.063 were passed in the wake of *State ex rel. Missouri Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592 (Mo. 2012), wherein the MSPD challenged courts' attempts to assign additional cases to public defenders notwithstanding those defenders' already excessive caseloads.  Section 600.062 restricts the MSPD's ability to refuse case appointments "based on a determination that the office has exceeded a caseload standard," without prior permission from a court, while § 600.063 outlines a procedure for individual public defenders to seek and obtain relief from a court if they can demonstrate that their caseload will render them "unable to provide effective assistance of counsel" to their clients.  The Attorney General argues that the existence of these statutes precludes the Parties from establishing caseload standards through the Proposed Consent Judgment, or from otherwise addressing the implications of excessive workloads among public defenders, noting that "Missouri law does provide mechanisms for public defenders to obtain relief if their caseload is preventing them from providing effective assistance of counsel."  AG Br. (Doc. 247) at 4.

But, importantly, Plaintiffs in this case are not public defenders.  They are indigent defendants, who have absolutely no remedy under §§ 600.062 or 600.063, or any other Missouri statute, to cure systemic deficiencies that directly infringe on their constitutional rights, including excessive caseloads, in the public defense system.  Plaintiffs seek to fill that void through the Proposed Consent Judgment and the workload standards established therein.

Further, Plaintiffs have made clear throughout this litigation that this case is about systemic problems with Missouri's public defense system, not particular instances of ineffective

3

assistance of counsel by individual public defenders.  But § 600.063 states explicitly that it is designed to provide a procedure for "any individual public defender or defenders, *but not the entire office*" to seek relief from an excessive caseload.  § 600.063(1), RSMo. (emphasis added).  Missouri courts have agreed.  In the vast majority of instances in which the MSPD has sought broad relief for district offices under § 600.063, their efforts have been almost unanimously rebuffed by the courts on the theory that the statute does not permit such relief.  *See, e.g., In re: Area 16 Public Defender Office III*, Case No. 1716-MC14505 (Cir. Ct. of Jackson Cty.) (June 27, 2019 Judgment/Order denying caseload relief for Assistant Public Defenders D. Wiegert and W. Stokely); *State of Missouri v. Nevels*, Case No. 1616-CR01742-01 (October 19, 2017 Order denying Motion to Reconsider and Vacate Order of October 10, 2017 Appointing the Public Defender) (Cir. Ct. of Jackson Cty.); *State of Missouri v. Adams*, Case No. 16ML-CR1300-01 (June 8, 2018 Amended Judgment denying Area 19 District Defender's request for relief under § 600.063) (Cir. Ct. of Miller Cty.).[1]  It is illogical to suggest that the Parties are prohibited from negotiating a settlement that addresses the *systemic deficiencies* in public defense challenged in this case simply because there also exists a statute designed to address individual caseload concerns.

It is also worth noting that, even for public defenders, § 600.063 does not purport to be the exclusive remedy for interested parties.  Section 600.063(5) states explicitly that "[n]othing

---

[1] The Attorney General cites to the court's decision in *In re: Missouri State Public Defender District 21, St. Louis County Trial* Office, Case No. 18SL-CC00129 (Cir. Ct. of St. Louis Cty.), as an example of the MSPD's successful pursuit of caseload relief under §600.063.  But that case is the rare exception, which may explain why it is the only instance cited by the Attorney General.  It is also worth noting that the County prosecutor's office initially appealed the relief granted in that case. The appeal was transferred to the Missouri Supreme Court, but the newly elected prosecutor dismissed the appeal. *See In re Missouri State Pub. Def. Dist. 21, St. Louis Cty. Trial Office*, No. ED 106576, 2018 WL 6787054, at *1 (Mo. App. E.D. Dec. 26, 2018).

in this section shall deny any party the right to seek any relief authorized by law….." As such, the Attorney General's suggestion that the Proposed Consent Judgment somehow contravenes Missouri law is not supported by the plain language of the statute.

## II. Missouri Rules of Professional Conduct Require a Solution that Goes Beyond the Remedies Available through § 600.063

In any event, the relevant Missouri Rules of Professional Conduct and recent caselaw make it clear that the remedies available through §§ 600.062 and 600.063 fall short of the relief requested here. Adequate relief would enable the MSPD to both adhere to their ethical obligations *and* provide effective representation to every indigent defendant to whom they are assigned, as required under the Sixth Amendment. Sections 600.062 and 600.063 accomplish neither.

Indigent defendants are entitled to ethical and professionally competent counsel. Missouri Rule of Professional Conduct 4-1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Comment 2 to Rule 4-1.3 further notes that "[a] lawyer's work load must be controlled so that each matter can be handled competently." No exceptions are made for public defenders faced with excessive caseloads. Similarly, Missouri Rule of Professional Conduct 4-1.4 offers no exemptions for overburdened defenders and requires all attorneys, among other things, to "1) keep the client reasonably informed about the status of the matter; and 2) promptly comply with reasonable requests for information…."

In September 2017, the Missouri Supreme Court issued an order affirming the Disciplinary Hearing Panel decision in *In re Hinkebein*, finding that Karl William Hinkebein, a senior attorney for the Appellate/PCR Division of the Missouri Public Defender Office, violated Rules 4-1.3 and 4-1.4(a) of the Rules of Professional Conduct and should be disciplined,

5

including by suspending Mr. Hinkebein's law license indefinitely.[2]  Order, *In re Hinkebein*, SC96089 (Mo. Sept. 12, 2017).  In particular, the Disciplinary Hearing Panel determined that, in the course of his representation of several different indigent defendants, Mr. Hinkebein failed to keep his clients adequately informed about their cases, in violation of Missouri Rule of Professional Conduct 4-1.4(a) and failed to act with reasonable diligence and promptness in the representation of his clients, in violation of Missouri Rule of Professional Conduct Rule 4-1.3. *See* Disciplinary Hearing Panel Decision, *In re Hinkebein,* No. DHP-16-004 (Mo. Nov. 2, 2016). Among other things, the Panel found that, with respect to at least six of his former clients, Mr. Hinkebein had gone months—sometimes years—without communicating with them; missed critical filing deadlines; and failed to file significant motions and other documents on behalf of his clients.  *Id.* at ¶¶ 13-121.  The Panel reached its decision notwithstanding evidence indicating that Mr. Hinkebein was faced with an overwhelming caseload, which made it impossible for him to meet the demands of Rules 4-1.3 and 4-1.4.  Indeed, Mr. Hinkebein was assigned to 110 cases at the time of the Disciplinary Panel hearing, and his supervisor testified that he was forced to assign an unreasonable number of cases to Mr. Hinkebein in light of the office's heavy workload. *Id.* at ¶¶ 152, 160.

In the wake of the *Hinkebein* decision, public defenders in Missouri—many of whom are struggling with caseloads similar to, or even higher than, Mr. Hinkebein's—have taken various steps to try to comply with both the Rules of Professional Conduct *and* the courts' orders appointing them to represent additional clients, including seeking relief under §600.063.  But, as noted above, the vast majority of public defenders who have sought relief under the statute have been denied by the court and forced to move forward with representation of additional clients,

---

[2] The Court ultimately stayed the suspension and placed Mr. Hinkebein on probation for one year.

notwithstanding the substantial likelihood that the defenders will be unable to fulfill their ethical obligations to all of their clients. As an alternative, the MSPD has been placed thousands of indigent defendants on waiting lists, including individuals in custody, as contemplated by § 600.063(3)(5). And while the waiting list option may enable the MSPD to avoid violating the relevant Rules of Professional Conduct, it only exacerbates the harm to indigent defendants like Plaintiffs and further tramples on their Sixth Amendment right to competent counsel.

The Proposed Consent Judgment provides relief without imposing on indigent defendants the significant harm of facing criminal prosecution without competent counsel. Specifically, the Proposed Consent Judgment would 1) enable public defenders to maintain a reasonable caseload, thereby allowing them to meet their ethical obligations to their clients, and 2) free up time for public defenders to provide robust, constitutionally sufficient representation to every client, thereby ensuring fairer outcomes for Plaintiffs and other indigent defendants.

### III. The Third-Party Beneficiary Provision is Lawful and Appropriate Under the Circumstances

Contrary to the Attorney General's assertion to the contrary, the third-party beneficiary provision of the Proposed Consent Judgment does not render the Judgment inappropriate or unenforceable. Section XXI(c)(i) of the Proposed Consent Judgment states that:

> All indigent persons who are now, or who will be, under formal charge before a state court in Missouri for allegedly having committed any offense the penalty for which includes the possibility of confinement, incarceration, imprisonment, or detention (regardless of whether actually imposed), and who are represented by MSPD, or should be represented by MSPD, pursuant to this Consent Judgment, but who have not received counsel at a critical stage or who have been placed on a waiting list for representation by MSPD, shall be hereby deemed third-party beneficiaries to this Consent Judgment.

Doc. 238-1 at 34. Section XXI(c)(ii) goes on to state that the Proposed Consent Judgment "may be enforced by any of the named Plaintiffs in the case, or by any third-party beneficiary." *Id.*

7

While the Attorney General complains that this language amounts to "flouting this Court's order denying class certification," AG Br. at 16, this third-party beneficiary provision is both consistent with the law and appropriate given the circumstances of this case.

Under Missouri law, "[a] consent judgment is contractual in nature; thus, to the extent that a consent judgment requires interpretation, rules governing the interpretation of contracts apply." *Caldwell v. Heritage House Realty, Inc.,* 32 S.W.3d 773, 775-76 (Mo. Ct. App. 2000); *see also In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 383 (8th Cir. 1994) (noting the "contractual origins of consent judgments"). "[C]onsent decrees are construed as contracts for purposes of enforcement." *United States v. ITT Cont'l Baking Co.,* 420 U.S. 223, 238 (1975). "Parties to a contract and *any third-party beneficiaries* of a contract have standing to enforce that contract." *Torres v. Simpatico Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (citing *Verni v. Cleveland Chiropractic Coll.,* 212 S.W.3d 150, 153 (Mo. 2007)) (emphasis added); *see also Restatement (Second) of Contracts* § 304 & cmt. a-b (1981) (parties to an agreement have the power to create enforcement rights in non-parties). This principle is consistent with Rule 71 of the Federal Rules of Civil Procedure. *See Berger v. Heckler,* 771 F.2d 1556, 1565–66 (2d Cir.1985); *Lavapies v. Bowen,* 687 F.Supp. 1193, 1207 (S.D. Ohio 1988) ("Under Rule 71, a non-party who establishes standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may pursue enforcement of that agreement or decree.") (citations omitted). "To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party *or* an identifiable class of which the party is a member." *Id.* (emphasis added).

Hence, it is well established that, even in the absence of an identifiable class, "non-parties as intended third-party beneficiaries, may enforce a [settlement] agreement," so long as it is clear who the agreement was intended to benefit. *Hook v. State of Arizona Dept. of Corrections,* 972

8

F.2d 1012, 1014 (9th Cir. 1992). In *Hook*, some 265 inmates sought to enforce a consent decree involving prison mail regulations, despite the fact that none of them were parties to the consent decree, which had been entered into 17 years prior. *Id.* The Department of Corrections argued that, since they were not parties to the original consent decree, and because the case was never certified as a class action, the inmates did not have standing to enforce the consent decree. The Court disagreed, noting that the Department never disputed that the 265 inmates were intended third-party beneficiaries to the 1973 agreement. *Id.* at 1015. "Even a cursory review of the consent decree shows that its purpose is to benefit all inmates and not just the named plaintiffs." *Id.*

Like the consent decree in *Hook*, Section XXI(c) of the Proposed Consent Judgment makes clear that the agreement is meant to benefit not just the named plaintiffs, but all indigent defendants in Missouri who have not received proper representation at critical stages of their criminal cases or have been placed on waiting lists as a result of the MSPD's inability to competently represent them at the time of appointment. Plaintiffs hope to remedy the ongoing systemic deficiencies plaguing Missouri's public defense system without bringing multiple lawsuits seeking prospective relief on behalf of the *thousands* of individuals who are not receiving the counsel intended by the Sixth Amendment. Defendants wish to avoid an endless onslaught of civil litigation that will add to their already over-burdened workload. It is for that reason that Plaintiffs advocated for an explicit third-party beneficiary provision, to which the MSPD ultimately agreed. As such, under basic contract principles, Section XXI(c) serves as a

9

legitimate provision designed to empower indigent defendants to enforce the Proposed Consent Judgment whenever necessary.[3]

## IV. The Proposed Consent Judgment Does Not Require Non-Parties to Take Any Action, Nor Grant Undue Authority to the Parties

The Attorney General's argument that the Proposed Consent Judgment grants new and unwarranted authority to the MSPD is consistent with his prior mischaracterization of the Parties' agreement. AG's Suggestions in Supp. of Mot. to Intervene (Doc. 223) at 6-7. Contrary to the Attorney General's contentions, the Proposed Consent Judgment does not—and cannot—*require* prosecutors to dismiss cases, eliminate the possibility of jail time upon conviction, or take any other steps in connection with a particular criminal case. Nor does the Proposed Consent Judgment purport to *require* courts to dismiss particular cases, release indigent

---

[3] The Attorney General makes much of the fact that three of the four named plaintiffs have pleaded guilty, arguing that, as a result, any ineffective assistance of counsel claims are now "moot and not justiciable." AG Br. at 16. The Attorney General further contends that, because they have pleaded guilty, they should be dismissed from this case. *Id.* at 17. But this line of argument ignores some obvious facts. First, Plaintiffs have never claimed they had received ineffective assistance of counsel in their individual cases, but that they were exposed to a substantial risk of receiving ineffective assistance. Indeed, Plaintiffs have taken pains to distinguish this lawsuit, which seeks prospective relief, from any run-of-the-mill ineffectiveness claim seeking a new trial under *Strickland v. Washington*. Second, none of the three plaintiffs who have pleaded guilty in their criminal cases have been dismissed from this case, and as such, they maintain the ability to enter into the Proposed Consent Judgment. Third, no Plaintiffs should be dismissed from this case because a) as the course of this litigation demonstrates, they could find themselves in the same situation in the near future since they remain on parole or probation supervision, *see McAlpine v. Thompson*, 187 F.2d 1213, 1218 (10th Cir. 1999) ("[R]esearch indicates that every circuit to consider the issue has decided that release to parole moots a claim regarding *prison* conditions and regulations, as opposed to *parole procedures* or conditions and regulations that affect *parole*."); and b) since pretrial detention is an event that is relatively short in duration, premature dismissal would allow the challenged practice to continually evade review. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) ("allegation of future injury may suffice if . . . there is a substantial risk that the harm will occur") (internal citation and quotation omitted); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010). And fourth, even if Plaintiff Bowman were the only remaining plaintiff in this case, she would still have the authority to enter into the very same Proposed Consent Judgment with the MSPD.

10

defendants from pretrial detention, or appoint private counsel. Neither prosecutors nor judges are parties to this case or the Proposed Consent Judgment, and as a result, are not bound by any of the provisions therein.

Similarly, the Attorney General's suggestion that the Proposed Consent Judgment grants the MSPD supervisory authority over county jails significantly mischaracterizes the provision in question. While Section VI(a)[4] does require that the MSPD ensure "that county jails are aware of and in compliance with all relevant laws and rules regarding the provision of" applications for public defender services, that provision says nothing about the MSPD serving as a "compliance monitor for county jails." AG Br. at 7. Among other things, the Proposed Consent Judgment does not seek to give the MSPD any legal authority to sanction or otherwise challenge any county jail's failure to comply with relevant laws or rules. Nor does it suggest that the MSPD would be liable for any such failure by a county jail. Rather, the provision simply encourages the MSPD to do everything in its power—which is admittedly limited—to ensure that indigent defendants receive applications for services in a timely manner, as required under Missouri law.

The same is true of Section VIII(e) of the Proposed Consent Judgment, which requires the MSPD to "take appropriate legal steps to ensure that county jails and state prisons are in compliance with all laws and rules regarding access to counsel and the privacy of client communications." In other words, the MSPD must do everything in its power to make sure that their clients have ready access to their attorneys, as well as a confidential space in which to communicate with those attorneys. But nowhere does the Proposed Consent Judgment suggest that the MSPD maintains "supervisory authority" over jails and prisons in Missouri. AG Br. at 8. The Attorney General appears to have fashioned these phantom provisions out of whole cloth.

---

[4] The Attorney General mistakenly cites to Section VIII(e) for this language. AG Br. at 7.

11

## V. The Attorney General's Public Safety Concerns are Entirely Disconnected from the Reality of What the Proposed Consent Judgment Requires

The Attorney General's purported public safety concerns are equally unfounded. Despite his assertion that "the proposed consent judgment will cause grave risks to public safety in a concrete and particularized way," the Attorney General fails to explain what that "concrete and particularized" harm entails. AG Br. at 13. Instead, he makes a vague reference to the prospect of courts releasing "individuals accused of some of the most serious felonies in Missouri," without any evidence to suggest that public safety would be endangered in the least by the Proposed Consent Judgment. *Id*. The Attorney General's suggestion that people accused of rape, kidnapping, and armed robbery "may walk free without undergoing a trial because a public defender's office will refuse to take any cases that will require an attorney to work more than 40 hours per week," AG Br. at 13, has no basis in fact; serves only to stoke fear and anxiety among the public; and betrays a persistent misunderstanding of the workload standards laid out in the Proposed Consent Judgment.

To the extent that the Attorney General's public safety concerns arise out of his continued misinterpretation of the workload limits articulated in the Proposed Consent Judgment, Plaintiffs direct the Court to the plain language of the agreement. The plain language makes clear that the MSPD "will limit case assignments to no more than 2,080 hours' worth of case work each year," Proposed Consent Judgment, sec. XVIII(h), and will use as benchmarks the Missouri-specific work load averages developed by the American Bar Association in 2014. *See* Proposed Consent Judgment, § XVIII(g). The 2,080-hour cap was calculated based on the assumption that public defenders will work "40 hours a week, 52 weeks a year, *with no time allotted for vacation or sick time, no time allotted for training or administrative functions, and no holidays*." (emphasis added) *See* Proposed Consent Judgment, §XVIII(f). In other words, 2,080 hours is as an

*overestimate* of the amount of time public defenders will have available to represent their clients in a given year.[5] By capping the amount of public defender work hours to 2,080 over the course of a year, the MSPD will, in turn, "ensure that public defenders [are not] assigned more than 173.3 hours' worth of case work" in a given month. *See* Proposed Consent Judgment, sec. XVIII(h).

From Plaintiffs' perspective, these caseload limits will make it much more likely that public defenders will be able to comply with Sections VI through XVI of the Proposed Consent Judgment and, by extension, that indigent defendants will receive the kind of representation required by the Sixth Amendment. As such, the Proposed Consent Judgment does not "flip the focus from the defendant to the public defender." AG Br. at 14. Rather, it seeks to create the conditions under which public defenders can provide constitutionally-sound representation to all of their clients. Moreover, as discussed in Section IV, *supra*, the Proposed Consent Judgment encourages (but cannot require) other actors within the criminal justice system, namely courts and prosecutors, to step in and ensure that indigent defendants' Sixth Amendment rights are protected, even where the MSPD is incapable of providing the necessary representation. If the Attorney General truly is aggrieved by the plight of indigent defendants facing prosecution without competent counsel, he—as well as judges and prosecutors across the state—is welcome to take any affirmative steps he deems appropriate to identify alternative counsel, curtail needless prosecutions, eliminate the possibility of jail time, or otherwise ensure that the State provides

---

[5] The Proposed Consent Judgment also permits a public defender to deviate above the MSPD caseload standard if, "in MSPD's judgment, such deviation would not jeopardize that attorney's ability to effectively represent his or her existing clients or otherwise violate his or her professional obligations under the Rules of Professional Conduct." *See* Proposed Consent Judgment, § XVIII(p).

13

meaningful legal assistance to such defendants. But the Proposed Consent Judgment certainly does not, and cannot, require him to do so.

## VI. The Proposed Consent Judgment Could be Revised to Address Any Concerns the Court May Have

Finally, if this Court has any concerns about the language of specific provisions in the Proposed Consent Judgment, Plaintiffs will return to the negotiating table with the MSPD to identify alternative language that will satisfy both Parties.

Respectfully submitted,

| | |
|---|---|
| /s/ Anthony E. Rothert<br>Anthony Rothert<br>Missouri Bar #44827<br>ACLU OF MISSOURI FOUNDATION<br>906 Olive Street, Suite 1130<br>St. Louis, MO 63101<br>Telephone: (314) 652-3114<br>Facsimile: (314) 652-3112<br>Email: arothert@aclu-mo.org<br><br>Jason D. Williamson*<br>ACLU FOUNDATION<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Telephone: (212) 284-7340<br>Facsimile: (212) 549-2654<br>Email: jwilliamson@aclu.org<br><br>Gillian Wilcox<br>Missouri Bar #61278<br>ACLU OF MISSOURI FOUNDATION<br>406 West 34th Street, Suite 420<br>Kansas City, MO 64111<br>Telephone: (816) 470-9933<br>Facsimile: (314) 652-3112<br>Email: gwilcox@aclu-mo.org | Amy Breihan<br>Missouri Bar #65499<br>RODERICK & SOLANGE MACARTHUR JUSTICE CENTER<br>3115 South Grand Boulevard, Suite 300<br>St. Louis, MO 63118<br>Telephone: (314) 254-8540<br>Facsimile: (314) 254-8547<br>Email: amy.breihan@macarthurjustice.org<br><br>Robert Sills*<br>Matthew R. Shahabian*<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019<br><br>Evan Rose*<br>Easha Anand*<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105<br><br>*Admitted Pro Hac Vice |

## CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing was served by operation of the Court CM/ECF system upon counsel for the Defendants on August 23, 2019.

/s/ Anthony E. Rothert