**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| RANDALL LEE DALTON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 17-04057-CV-C-NKL |
| | ) | |
| MICHAEL BARRETT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MSPD DEFENDANTS' RESPONSE TO ATTORNEY GENERAL'S AMICUS BRIEF**
**AS TO THE PROPOSED CONSENT JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................2

ARGUMENT ...............................................................................................................3

I.    The proposed consent judgment fully complies with Missouri law and ethics ..........3

II.   The proposed consent judgment does not limit the number of hours attorneys can work to 2080 hours per year or 40-hours per week, or place any limit on the number of hours attorneys actually work ..................................................................7

III.  The proposed consent judgment does not adversely impact public safety or welfare… ..........................................................................................................9

IV.   The proposed consent judgment will not present enforcement issues ....................13

V.    The Rules of Professional Conduct (Rule 4) and the permissive §600.063 conference procedure have not been sufficient to ensure effective representation ...................18

VI.   The addition of limited third-party beneficiaries is meant to avoid continuous and ongoing litigation ............................................................................................22

CONCLUSION ...........................................................................................................23

Case 2:17-cv-04057-NKL   Document 255   Filed 08/23/19   Page 1 of 23

# TABLE OF AUTHORITIES

Page

*CASES*:

*Gideon v. Wainright*, 372 U.S. 335 (1963) ............................................................. 12

*In re Karl Hinkebein*, Case No. SC96089 ................................................................ 18

*In Re: Area 16 Public Defender Office III*, Case No. 1716-MC14505 .................................... 20

*In re: Mo. State Pub. Def. Dist. 21*, Case No. SC97612 ................................................ 21

*In re: Mo. State Pub. Def. Dist. 21, St. Louis County Trial Office*, 2018 WL 6787054

   (Mo. App. Dec. 16, 2018) ............................................................................ 21

*Petsch v. Jackson County Prosecuting Attorneys Office*, 553 S.W.3d 404

   (Mo. App. W.D. 2018) .............................................................................. 20

*Spradlin v. City of Fulton*, 982 S.W.2d 255 (Mo. banc 1998) ......................................... 3

*Staley v. Mo. Dir. of Rev*., 623 S.W.2d 246 (Mo. banc 1981) ......................................... 3

*State ex rel. Healea v. Tucker*, 545 S.W.3d 348 (Mo. banc 2018) ..................................... 14

*State ex rel. Mo. Pub. Def. Comm'n v. Pratte*, 298 S.W.3d 870 (Mo. banc 2009) .............. 11, 12

*State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592 (Mo. banc 2012) .......... passim

*State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468 (Mo. banc 2018) ............................. 6

*State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64 (Mo. banc 1981) ...................................... 10, 11

Section 600.048 ............................................................................................ passim

Section 600.062 ............................................................................................ passim

Section 600.063 ............................................................................................ passim

<u>**ARGUMENT**</u>

The Missouri State Public Defender (MSPD) Defendants respectfully request that this Court enter the proposed consent judgment because it fully complies with Missouri law, does not endanger public safety or welfare, and is readily enforceable.

**I.      The proposed consent judgment fully complies with Missouri law and ethics.**

The proposed consent judgment fully complies with Mo. Rev. Stats. §600.062 and §600.063[1], and attorney ethical requirements.

### §600.062

First, it complies with Mo. Rev. Stat. §600.062 because it does not establish a caseload standard based on an "office's" caseload, but instead on an individual attorney's caseload, and the statute authorizes MSPD to limit cases with the approval of this Court.

§600.062 states, in relevant part:

> [N]either the director nor the commission shall have the authority to limit the availability of a district office or any division director, district defender, deputy district defender or assistant public defender to accept cases based on a determination that ***the office*** has exceeded a caseload standard. The director, commission, any division director, district defender, deputy district defender, or assistant public defender may not refuse to provide representation required under this chapter ***without prior approval from a court of competent jurisdiction***.

§600.062 (emphasis added)(Ex. A).

Missouri interprets words in a statute according to their plain and ordinary meaning. ***Spradlin v. City of Fulton***, 982 S.W.2d 255, 258 (Mo. banc 1998). Every word in a statute must be given some meaning. ***Staley v. Mo. Dir. of Rev***., 623 S.W.2d 246, 250 (Mo. banc 1981).

The critical word in §600.062 is the word "office." The statute does not prohibit use of any and all caseload standards. It prohibits the director or commission from limiting the

---

[1] The full texts of these statutes are Exhibits A and B submitted with this Response.

availability of an attorney based on "a determination that *the office* has exceeded a caseload standard." §600.062 (emphasis added). Before enactment §600.062 in 2013, MSPD used its rule-making authority to adopt a caseload standard which measured "the maximum caseload *each district office* can be assigned without compromising effective representation" (emphasis added). *See State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 599 (Mo. banc 2012). Some critics of that standard complained that it did not focus on the *individual attorneys'* caseloads, but only an "office" as a whole; they said an "office" could be overloaded because a few attorneys in the office are assigned too many cases, while other attorneys have too few. *Cf. id*. at 608 (noting criticism that MSPD should "simply manage[] the public defender caseload better, such as by better assigning public defenders"). Following the *Waters* decision in 2012 – in which the Supreme Court upheld MSPD's use of the office-as-a-whole standard, *id*. at 609 – the legislature enacted §600.062.

The proposed judgment fully complies with §600.062 because the proposed judgment's caseload standard focuses on the *individual attorneys'* caseload, not the caseload of an "office" as a whole. The standard limits the units of cases *individual attorneys* can be assigned each month, with allowances for upward and downward deviation as may be appropriate.[2] *See* Proposed Consent Judgment, Para. h, p. 28; Paras. o and p, pp. 30-31 It is only if and when all the *individual attorneys'* assigned caseloads exceed their monthly maximum that an office would not be able to accept additional cases for that month, except where upward or downward

---

[2]The Attorney General's brief falsely characterizes the judgment as prohibiting attorneys from working more than 40 hours per week or 2080 hours per year. *See, e.g.,* AG Brief at 1. As explained in Section II, *infra*, the judgment uses average case hours as a unit of measurement to limit the number of *cases* an attorney can be assigned to enable them to provide effective representation, but does not limit the number of hours an attorney actually works.

4

deviation is appropriate. *See* Proposed Consent Judgment, Para. k, p. 29; Paras. o and p, pp. 30-31.

That is precisely the type of caseload standard the statute permits, and it it is the caseload standard required by individual attorneys' ethical duties. A public defender violates her ethical duty to provide effective assistance and comply with the Rules of Professional Conduct "if she accepts a case that results in a caseload so high that it impairs her ability to provide competent representation, to act with reasonable diligence and to keep the client reasonably informed." *Waters*, 370 S.W.3d at 607 (citing Mo. Rules of Prof'l Conduct 4-1.1 (competence), 4-1.3 (diligence) and 4-1.4 (communication)). The attorney also violates Rule 4-1.7 – concurrent conflict of interests – if she accepts a new case that compromises her ability to provide effective representation to her existing clients. *Id*. "[A] conflict of interest is inevitably created when a public defender is compelled by his or her excessive caseload to choose between the rights of the various indigent defendants he or she is representing." *Id*. at 608.

Finally, the proposed judgment fully complies with §600.062 because this Court, as a court of "competent jurisdiction," will have given "prior approval" – through entry of its judgment – for MSPD to implement the individual attorney caseload standard and "refuse" representation when the standard is exceeded. §600.062 – though written in the negative -- expressly allows MSPD to "refuse" representation with "prior approval from a court of competent jurisdiction." And since the State and Attorney General (who represented the State) removed this case to federal court, the State and Attorney General have acknowledged that this Court has proper jurisdiction to enter a judgment in this case. *See* June 13, 2019, Transcript at 10 (Mr. Morgan discussing that the State purposely removed this case to federal court because it "was believed to be in our best interests because of immunity grounds to be in federal court").

Just because the Attorney General may not like the proposed judgment does not make the judgment violate §600.062. The proposed judgment fully complies with this statute.

### §600.063

Second, the proposed judgment complies with §600.063 because that statute's procedures for seeking a caseload conference with a presiding judge are permissive, not exclusive. §600.063.1 provides a procedure whereby a district defender (who is the supervisor of a local MSPD office) "***may*** file a motion to request a conference to discuss caseload issues" with the local presiding judge. §600.063.1 (emphasis added)(Ex. B). The critical word in §600.063.1 is the word "may." "It is the general rule that in statutes the word 'may' is permissive only", in contrast to the mandatory "shall." ***State ex rel. Robison v. Lindley-Myers***, 551 S.W.3d 468, 474 n. 4 (Mo. banc 2018). Thus, a district defender "may" request a conference with a presiding judge, but is not required to.

But any doubt – and there is none -- as to whether §600.063's caseload conference procedure is permissive, not mandatory, is expressly resolved in §600.063.5, which states in full: "**Nothing in this section shall deny any party the right to seek any relief authorized by law** nor shall any provision of this section be construed as providing a basis for a claim for post-conviction relief by a defendant." §600.063.5 (emphasis added)(Ex. B). Thus, by its express terms, §600.063 does not create an exclusive procedure.

Indeed, that procedure cannot be exclusive because it would conflict with an individual attorney's ethical duties, if it were. A public defender attorney violates her ethical duty to provide effective assistance and to comply with the Rules of Professional Conduct if she accepts an excessive caseload which forces her to choose between the rights of different clients. ***Waters***,

370 S.W.3d 607-08. §600.063's conference procedure can be invoked only by a district defender, not an individual attorney. §600.063.1.

Nothing in §600.063 prohibits MSPD from entering into the proposed consent judgment as an appropriate means of resolving this lawsuit against it. And nothing in §600.063 prohibits this Court from entering the judgment. The proposed judgment fully complies with §600.063 because its caseload conference procedure is permissive, not mandatory, and it complies with individual attorneys' duty under Rule 4 to decline to accept a case if they cannot provide effective and competent representation due to caseload. Finally, by controlling caseload – thus allowing more time to work on each client's case -- the proposed judgment affirmatively enhances individual attorneys' ability to provide constitutionally effective assistance to those clients they do represent.

## II.   The proposed consent judgment does not limit the number of hours attorneys can work to 2080 hours per year or 40-hours per week, or place *any* limit on the number of hours attorneys actually work

The Attorney General falsely claims that the proposed judgment "prohibits the MSPD from assigning cases to an attorney that might result in an attorney working more than 2,080 hours per year, or 40 hours per week." AG Brief at 1. The proposed judgment does not place *any* limit on the number of hours attorneys actually work. By using average case hours as a unit of measurement, the judgment limits the number of *cases* that can be assigned to an attorney to enable them to provide effective assistance, but does not limit the number of hours an attorney actually works.

MSPD, in conjunction with the American Bar Association and RubinBrown accounting firm, was the first public defender system in the nation to undergo a rigorous, empirical study – including public defenders keeping time in five minute increments, comparison with time private

7

counsel spent on cases, and other data gathering and comparisons – to determine the *average amount* of time it takes to provide effective representation according to case type. *See The Missouri Project: A Study of the Missouri Public Defender System and Attorney Workload Standards*, RubinBrown (June 2014)(Ex C). This methodology has become a national model for public defender systems to establish caseload standards. *See*, *e.g.*, *A Determination of Caseload Standards pursuant to §IV of the Hurrell-Harding v. State of New York Settlement* at 9 and 14 (Ex. D). By establishing how much time, on average, a case takes, this hourly standard allows managers to determine how many cases – or "units" of cases, if each hour is viewed as a unit – an attorney can reasonably be assigned according to case type.

The other variable that must be considered in assigning cases is the number of hours that an attorney has available to work in a given year. This number is merely a unit of measurement to gauge how many hours (units) are available in a year to fill with newly assigned cases; this number is *not* a limit on the actual number of hours an attorney can, should or will work. The proposed judgment assumes a work year of 52 weeks at 40-hours per week, which equals 2,080 hours of yearly work time (or 173.3 hours per month). This is a conservatively high number, because this calculation excludes any use of annual leave (vacation leave), holidays, sick leave, or time for tasks such as work travel time on cases, administrative work, training, and CLE.[3] Other states use a lower number; New York, e.g., assumes a total of 1,875 working hours per attorney per year. *See A Determination of Caseload Standards pursuant to §IV of the Hurrell-Harding v. State of New York Settlement* at 14 (Ex. D). Under the proposed judgment, if attorneys use any of their leave time, they will, by necessity, have to work *more* than 40 hours of

---

[3] State employees receive 120 to 168 hours of annual leave, depending on tenure; 12 holidays (96 hours); and 120 hours of sick leave per year. Using an annual leave of 120, 12 holidays, and only 40 hours of sick leave, amounts to a work year of 1824 hours.

their remaining actual work weeks in order to handle the hours (units) of cases they are assigned per month.   Assigning attorneys 173.3 hours (units) of new cases per month under the caseload standard is a substantial caseload.   For example, this equates to 3 A/B felonies and 1 C/D felony per month; or 1 first-degree murder, 2 C/D felonies, and 1 misdemeanor per month.   Attorneys will need to complete a similar number of pre-existing cases each month to keep up.

So not only is the Attorney General making a false argument, but his true complaint is not with the number of hours public defenders can work, but with any limit being placed on caseload at all.   His complaint is not with the consent judgment, but with existing law, which requires public defenders to refuse to accept additional cases if it impairs their ability to provide effective assistance to all clients.  *Waters*, 370 S.W.3d at 607-08.   By controlling caseload – thus allowing more time to work on each client's case -- the proposed judgment affirmatively enhances individual attorneys' ability to provide constitutionally effective assistance.

### III.  The proposed consent judgment does not adversely impact public safety or welfare.

This Court asked the parties to address whether the consent judgment "will unavoidably and adversely affect public safety and welfare in a concrete and particularized way."  Order of July 12, 2019.  Instead of pointing to any concrete or particularized way in which public safety or welfare may be endangered, the Attorney General again resorts to generalized scare tactics that dangerous criminals "may walk free without undergoing a trial because a public defender's office will refuse to take any cases that will require an attorney to work more than 40 hours per week."  AG Brief at 13.

Actual facts and history show that the Attorney General's scare tactics are unfounded. First, as stated in Section II, *supra*, the proposed judgment does not place any limit on the number of hours that attorneys may work.  Second, regarding public safety, the Attorney General

ignores that Missouri courts have never endangered public safety when a public defender was not available. In 1981, funding for appointed attorneys ran out in Missouri. *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64, 65 (Mo. banc 1981)("We must recognize that as of the date of this opinion the money appropriated [for indigent defense] by the General Assembly for the fiscal year … has been spent. The cupboard is bare"). "What are we to do?" the Missouri Supreme Court asked. *Id*. What the Court did *not* do was endanger public safety. "We believe our primary obligation is to the people to insure the continued operation of the criminal justice system, for without it, the peace of the community cannot be attained as the guilty cannot be convicted nor the innocent acquitted." *Id*. at 66-67. To remedy the problem, the Court ordered that private counsel be appointed to cases while "urg[ing] the co-equal Executive and Legislative branches of government to each assume its share of responsibility for solution of the problem of defense of the indigent accused." *Id*. at 67.

This Court, at the June 13, 2019, phone conference, repeatedly asked the Attorney General to explain what criminals were going free before MSPD was created. June 13, 2019, Transcript at 39-42. The Attorney General had no answer. June 13, 2019, Transcript at 39-42. This Court invited the Attorney General "to give me some additional briefing that says that defendants were getting away until the public defenders were created," June 13, 2019, Transcript at 42, but the Attorney General's brief again fails to do so. *See* AG Brief at 12-14. There's a reason for the Attorney General's silence: Because this has not happened in the past, and there's no reason to believe it will happen under the proposed judgment.

The Attorney General's arguments are really with *existing law*, which the proposed judgment does nothing to change. Importantly, the proposed consent judgment does not order Missouri judges – or prosecutors -- to do anything. The Attorney General misleadingly claims

that the proposed judgment "provid[es] for dismissal of a case 'in lieu of processing additional indigence applications when this [caseload] standard has been reached.'"  AG Brief at p. 13. What the proposed judgment actually does is instead of processing additional indigence applications when the caseload standard is reached, the District Defender must promptly notify the circuit court that the caseload standard has been reached.  *See* Proposed Judgment Para. l. p. 29.   The proposed judgment, Para. l, pp. 29-30, then lists the *existing* legal options a judge has when a public defender attorney is unavailable for a case.  *See* Proposed Judgment Para. l, pp. 29-30.  Those include (1) appointing private counsel – which is already available under ***Ruddy***, *supra*;  (2) "engag[ing] with the prosecutor regarding the elimination of incarceration as a possible sentence" – which is already available under ***State ex rel. Mo. Pub. Def. Comm'n v. Pratte***, 298 S.W.3d 870, 887 (Mo. banc 2009)(a court "might" seek "the prosecutors' agreement to limit the cases in which the state seeks incarceration") [4]; (3) dismissing cases – which is already available if speedy trial rights are violated for lack of counsel, *see **Pratte***, 298 S.W.3d at 887 n. 36; or (4) "tak[ing] any other actions that are consistent with the constitutions of the United States and Missouri, and that do not violate the requirements and limitation of this Consent Judgment" – which existing law already allows and encourages judges to do, *see **Pratte***, 298 S.W.3d 887 (court should determine "cases or categories of cases in which private attorneys are to be appointed"); ***Waters***, 370 S.W.3d at 611 (court can use its "inherent authority over  its docket to 'triage' cases so that those alleging the most serious offenses, those in which defendants are unable to seek or obtain bail, and those that for other reasons need to be given priority are given priority in appointing the public defender"; "a trial court has the authority to

_____

[4] Even though prosecutors may be asked not to seek incarceration – presumably in low-level cases – the consent judgment never requires them to agree to do it.  Under existing law, prosecutors already may be asked to do this, but never have to agree.

11

grant a motion filed by a public defender to be relieved, at least for some period of time, from being required to provide representation in less serious cases because the lack of resources will not allow the public defender simultaneously to provide competent representation in more serious cases").

But while all these options already exist, in practice and in fact, the option judges have traditionally used is the appointment of private counsel when a public defender attorney is not available. In the 50-plus years since *Gideon v. Wainright*, 372 U.S. 335 (1963), Missouri judges have from time-to-time appointed private counsel to represent indigent criminal defendants when public defenders are not available. *See Pratte*, 298 S.W.3d at 875-76 (discussing history of private counsel appointment). No threat to public safety occurred, and the criminal justice system continued to function – only with private counsel in some cases, not public defenders. Just as Missouri judges have not threatened public safety in the past, there is no reason to believe that they would want to threaten public safety today. If a public defender is not available, judges will, in fact, appoint private counsel, and exercise other available options such as prioritizing cases for representation by a public defender. *See Waters*, 370 S.W.3d at 611.

Finally, the proposed judgment will enhance public welfare by ensuring that indigent people accused of crimes receive effective assistance of counsel. By controlling caseload – thus allowing more time to work on each client's case -- the proposed judgment affirmatively enhances individual attorneys' ability to provide constitutionally effective assistance to those clients they do represent. It is not in the interest of indigent defendants, their attorneys or the State that indigent defendants receive ineffective representation. That merely increases postconviction litigation over the adequacy of counsel, and reduces the reliability of convictions.

The proposed judgment – by controlling caseload and setting forth minimum performance requirements for attorneys – will ensure that indigent defendants receive effective counsel.

## IV. The proposed consent judgment will not present enforcement issues.

The litigants in this case have taken considerable steps to foster compliance with the proposed consent judgment in order to altogether avoid the need for prospective intervention by this Court. The parties have done so in a number of ways.

First, and what is perhaps the strongest impetus for compliance, is that MSPD and its attorneys have an independent interest – indeed an obligation – to comply with the requirements contained in the proposed judgment because they are largely taken from MSPD's own internal guidelines for representation and the Rules of Professional Conduct. MSPD bases its personnel decisions (e.g., retention, discipline, and promotions), at least in substantial part, on an attorney-employee's efforts to consistently comply with such standards. But more compelling than the potential loss of one's job or a missed promotion is the harm to one's professional license, which makes the parallels between the requirements set forth in the proposed judgment and the Rules of Professional Conduct (e.g., the duty to provide competent representation, act with diligence, and keep the client informed pursuant to Mo. Rules of Prof'l Conduct 4-1.1, 4-1.3, and 4-1.4) sufficient, in the vast majority of instances, to ensure compliance.

That said, where strict compliance is nonetheless unlikely in all cases, or is beyond the exclusive control of MSPD, the parties were intentional in providing sufficient latitude and flexibility in order to further identified goals while allowing for departures in appropriate instances. Two repeated examples of this include language that MSPD shall "strive to ensure" (e.g., prompt screening occurs within two days from receipt of a defendant's application) (*see*

Proposed Judgment, Para. c, p. 12) and make "all reasonable efforts" (e.g., to meet with the client prior to the initial appearance) (*see* Proposed Judgment, Para. d, p. 13).

In other areas, where the end sought is at least partially determined by other parties, the proposed language simply requires that MSPD and its attorneys do all that is within their respective control to protect their clients' rights. A representative example of this, which is contrary to the Attorney General's assertions that "the proposed consent judgment will grant the MSPD authority it does not have under Missouri law" over jails and prisons (*see* AG Brief at 7-8), is requiring that MSPD "take appropriate legal steps to ensure that county jails and state prisons are in compliance with all laws and rules regarding access to counsel and the privacy of client communications." *See* Proposed Judgment, Para. e, p. 15. The right to a confidential attorney-client visit is already Missouri law. *See, e.g*., ***State ex rel. Healea v. Tucker***, 545 S.W.3d 348, 350 (Mo. banc 2018) (noting that when police secretly recorded attorney-client conversations at the police station, this violated the attorney-client privilege and the Sixth Amendment). And Missouri law already requires that jails and police stations provide notice of defendants' right to a lawyer. Mo. Rev. Stat. §600.048. [5] The proposed judgment simply requires MSPD's attorneys to take appropriate legal steps to enforce this statute and clients' rights to attorney-client confidentiality in furtherance of indigent defendants' right to counsel, by, for example, filing motions in an individual client's case for a confidential attorney-client visit at a jail or prison.

Conversely, in areas where the aim is within the exclusive control of MSPD, more precise and imperative language is used, such as requiring that "public defenders answer all

_____

[5] "It shall be the duty of every person in charge of a jail, police station, constable's or sheriff's office, or detention facility provided by any county to post in a conspicuous place a notice stating in effect ... (1) That every person held in custody under a charge or suspicion of a crime is entitled to have a lawyer." Mo. Rev. Stat. § 600.048 (Ex. Q).

14

client correspondence . . . within 10 days of receipt and all phone messages from clients within two days of receipt" (Proposed Judgment, Para. b, p. 14) and that "appellate public defenders notify their client within seven days of being assigned to such client's case" (Proposed Judgment, Para. a, p. 23). Not only are such objectives within the exclusive control of MSPD, but public defenders will be well-poised to comply with these requirements given the proposed judgment's caseload limitations.

That said, even the occasional departure from the proposed requirements will not trigger intervention by this Court. For one, most anticipated departures will be for the benefit of a specific client or at the direction of a specific client. And despite the Attorney General's assertion that the proposed judgment "will require public defenders to take certain actions in litigation that may run afoul of an attorney's obligations under the Missouri Rules of Professional Responsibility" (AG Brief at 2, 10-12), the proposed judgment specifically provides for departures where it is in the client's best interest (e.g., "MSPD shall ensure that public defenders promptly seek a preliminary hearing in each client's case, unless there are compelling, client-specific reasons to waive that right in that individual client's case.")(s*ee* Proposed Judgment, Para. a, p. 15). What's more, not only does the proposed judgment permit deviations when it is in the client's best interest, it mandates that "public defenders practice within the ethical guidelines set forth in the Rules of Professional Conduct." *See* Proposed Judgment, Para. a, p. 27; Mo. Rule of Prof'l Conduct 4-1.2(a).

The Attorney General also wrongly states that "[t]he proposed consent judgment substitutes an individual attorney's assessment of his own caseload with a caseload standard". AG Brief at 5. Not so. The proposed judgment permits an attorney to deviate 'upward' and 'downward' from the RubinBrown standard. *See* Proposed Judgment, Paras. o and p, pp. 30-31.

Attorneys with experience know all-too-well that a class A felony can, from time to time, be resolved rather quickly and, conversely, a probation revocation case can often take much longer than 9.8 hours of work to investigate and litigate. For these, and other reasons, attorneys and their attorney managers are permitted to deviate both upward and downward from the proposed caseload standard, which simply provides thresholds based on the average amount of time a case takes to resolve, and a default ceiling for the monthly assignment of cases.

Permissive departures aside, the proposed judgment also provides substantive limitations and procedural requirements that further reduce the likelihood that this Court would be asked to play any sort of significant role. To start, the proposed judgment limits who can assert a violation of the agreement to "Plaintiffs' counsel" (*see* Proposed Judgment, Para. b, p. 33), the "named Plaintiffs" (*see* Proposed Judgment, Para. c.ii, p. 34), and "indigent persons . . . who are represented by MSPD, or should be represented by MSPD . . . *but who have not received counsel at a critical stage or who have been placed on a waiting list for representation*" (see Proposed Judgment, Para. c.i, p. 34)(emphasis added).[6] The parties intentionally narrowed the list of third-party beneficiaries only to persons who "have not received counsel at a critical stage or who have been placed on a waiting list" (see Proposed Judgment, Para. c.i., p. 34) because this is indeed not a class action, and the parties are not treating it as such. The Attorney General's claim that "any future indigent criminal defendant can seek relief in this Court if the MSPD does not comply with the judgment's terms" (AG Brief at 18) is completely false. No one other than Plaintiffs' counsel, the named Plaintiffs, and persons who have not received counsel at all may assert a violation of the proposed consent judgment. Other people are free to file complaints

---

[6] This requirement in the proposed judgment that MSPD eliminate wait lists and the granting to third-party beneficiaries the right to assert such violations is contrary to the Attorney General's baseless assertion that "[i]t is unclear if the MSPD will continue to maintain a waitlist." AG Brief at 14.

with the Office of Chief Disciplinary Counsel in the event they perceive that an attorney has committed an ethical violation, but they can already do that under existing law.

Even when Plaintiffs' counsel become aware of any alleged violations, they will provide MSPD with an opportunity to explain: (1) how there was not a violation of the proposed judgment; (2) how the violation was to the benefit of the client or at the client's direction; and/or (3) how corrections are being made to avoid any further violations. Then, in the event Plaintiffs' counsel wish to further the allegation, they may do so only if they "reasonably believe[] that the MSPD is not in substantial compliance with the terms of this Consent Judgment." *See* Proposed Judgment, Para. b, p. 33. Even then, in the event Plaintiffs' counsel reasonably believe that MSPD is not in "substantial compliance", they still may not go directly to this Court; rather, such claims must be brought to the attention of the agreed-upon Monitor in order to "conduct further investigation into the issue(s) raised." *See* Proposed Judgment, Para. b, p. 33. Then, only if the Monitor determines that MSPD is not in compliance may the Monitor notify the Court and "request a hearing to seek further guidance from the Court or recommend appropriate modifications to the Consent Judgment in light of MSPD's non-compliance." *See* Proposed Judgment, Para. c, p. 33. This process was designed to avoid needlessly burdening this Court with the occasional, inconsequential, and/or justified departure from the terms of the consent judgment.

And so, despite the Attorney General's insistent 'henny penny' routine that "this Court may be faced with countless motions to enforce the consent judgment" (AG Brief at 18), the parties have put in place a rather extensive structure for ensuring compliance, limiting standing for asserting such noncompliance, allowing for corrective action, as well as excusing certain minor and/or inconsequential violations in order to avoid unnecessarily burdening this Court.

**V.    The Rules of Professional Conduct (Rule 4) and the permissive §600.063 conference procedure have not been sufficient to ensure effective representation.**

While the Rules of Professional Conduct may be a compelling incentive for compliance with the terms of the proposed judgment, the professional standards have not, in and of themselves, been sufficient to ensure effective representation.  Indeed, MSPD's attorneys have thus far been unable to fully comply with these guideposts because of their excessive caseloads which have been imposed on them without control or limitation.  Despite a public defender's ethical duty not to accept an excessive caseload, *see Waters*, 370 S.W.3d at 607-08, courts, in practice, have generally not allowed public defenders to decline cases, but at the same time, have sought to discipline them for not complying with the professional rules.  This Catch-22 has made the prospect of an ethics complaint not so much a question of 'if', but 'when'.

In 2017, public defender Karl Hinkebein found himself before the Missouri Supreme Court facing professional discipline for failing to meet a number of filing deadlines.  *See In re Karl Hinkebein,* Case No. SC96089.  The Office of Chief Disciplinary Counsel and the Missouri Supreme Court refused to accept excessive caseloads as a mitigating factor, with one judge suggesting that public defenders should either refuse cases or quit their jobs.  *See* Ex. E at 7-8 (OCDC counsel Pratzel arguing that excessive caseload is "not a recognized mitigator" to Rule 4 violations and that "it's the obligation of the attorney to reduce their case load") and at 18 (judge stating that when attorneys "take the oath to follow the rules of professional responsibility, sometimes that means not taking [a] case and sometimes that means taking a different job").  The Supreme Court suspended Mr. Hinkebein, but stayed the suspension and placed him on probation.  *See In re Karl Hinkebein*, Case No. SC96089, Order of September 12, 2017 (Ex. L at 3).

18

After Mr. Hinkebein was disciplined, various public defender attorneys attempted to decline cases based on their Rule 4 obligations, without success. For example, in Kansas City (Public Defender Area 16), District Defender Petsch told a judge in *State v. Keith A. Nevels* that no attorney in her office could ethically accept additional cases (Ex. M at 4). The judge told her that since Petsch had not sought relief under the permissive §600.063, the judge would not hear arguments under Rule 4 (Ex. M at 5-6).[7] Kansas City assistant public defender Laura O'Sullivan sought to decline representation in a different case because she had over 100 cases, six of them homicides, and couldn't meet her Rule 4 obligations (Ex. N at 1). That judge also told her to use the permissive §600.063, even though she told the judge she wasn't the district defender and so could not invoke the statute (Ex. N at 2). *See* §600.063.1 (only a "district defender may file a motion to request a conference")(Ex. B). The judge ordered O'Sullivan to accept the case (Ex. N at 4). And when other Kansas City assistant public defenders told a judge that they were unable to provide competent representation in additional cases, that judge entered written orders ordering them "to violate Missouri Supreme Court Rule 4"or "violate the Rules of Professional Conduct, specifically Missouri Supreme Court Rule 4," and enter appearances in the cases (Ex. O at 1-8).

As a result of these – and other – denials of caseload relief under Rule 4, District Defenders throughout Missouri turned to the only other remedy – seeking a permissive caseload conference under §600.063. Despite the fact that §600.063.5 expressly provides that the statute is not the sole remedy -- "[n]othing in this section shall deny any party the right to seek any relief authorized by law," §600.063.5 --  individual trial offices within MSPD have attempted in good

---

[7] When Petsch later sought relief under §600.063, relief was denied. *See infra*.

faith to seek relief thereunder on at least eight occasions, and in only one limited instance was relief ultimately provided to a trial office.[8]

In Kansas City (Area 16) – where judges had said to use §600.063 for relief, *see supra* -- a motion requesting a caseload conference pursuant to §600.063 was twice denied before that office engaged a private law firm, which then filed a third motion, and was granted a conference. *See **Petsch v. Jackson County Prosecuting Attorneys Office***, 553 S.W.3d 404, 406-07 (Mo. App. W.D. 2018).  But during that conference, Area 16 was not permitted to make a record of the conference.  *Id**.* at 408.  After relief was denied, Area 16 appealed.  *Id*.  The case was remanded for a new on-the-record conference, but on remand, relief was ultimately denied again. *See In Re: Area 16 Public Defender Office III*, Case No. 1716-MC14505 (Ex. G).

In Cole County (Jefferson City Office, Area 19), the court found that caseloads were excessive,[9] but no order was ever issued providing relief despite a 30-day requirement for issuing findings under §600.063.3 (Ex. B).  The Jefferson City Office (Area 19) also sought relief in Miller County, but that court – while acknowledging that MSPD was "underfunded" and that the District Defender had a personal caseload of 182 cases – denied relief and suggested that public defender attorneys assigned to Cole County be re-assigned to Miller County (Ex. H at 1-2), despite that the Cole County judge had found that caseloads were excessive there.  *See* n. 9.  The Harrisonville Office (Area 17) had a §600.063 conference in December of 2017, but no order was ever issued despite the 30-day requirement for issuing findings provided by §600.063.3 (Ex.

---

[8] In the 42nd Judicial Circuit, the court issued an order allowing certain defendants to go on a wait list in Crawford County (*see In Re: Area 25 Public Defender Office*, Exhibit F at 2); however, even given this limited relief provided, that local trial office (Rolla) – which covers multiple counties -- continues to have more than twice as many cases as it can effectively handle (241.2% of the RubinBrown standard).

[9] *See Judge:  Public defender system overloaded*, News Tribune, Jeff Haldiman, Nov. 8, 2017, available at www.newstribune.com/news/local/story/2017/nov/08/judge-public-defender-system-overloaded/699022/. (last accessed August 22, 2019).

B).  The Rolla Trial Office (Area 25) was denied requested relief in Phelps County (Ex. I at 4).

The Chillicothe Trial Office (Area 43) was denied requested relief in Livingston County (Ex. J).

Finally, while the St. Louis County Trial Office (Area 21) prevailed in front of the then-Presiding Judge who determined that the office's attorneys were overloaded (Ex. K at 7-8), that office, to date, has still not received any actual caseload reduction from the court due to subsequent developments.   The then-St. Louis County Prosecutor appealed the decision to the Eastern District Court of Appeals.  *See In re: Mo. State Pub. Def. Dist. 21, St. Louis County Trial Office*, 2018 WL 6787054 (Mo. App. Dec. 16, 2018).  The Court of Appeals stated that it would reverse the judgment on grounds that the Presiding Judge should have decided the case as an "administrative proceeding," not a "court-tried case," but the Court transferred the case to the Missouri Supreme Court.  *Id*. at * 1.   The newly-elected St. Louis County Prosecutor then voluntarily dismissed the appeal on January 8, 2019.  *See In re: Mo. State Pub. Def. Dist. 21*, Case No. SC97612, Voluntary Dismissal, Jan. 8, 2019 (Ex. P).   But since that dismissal, no caseload relief has, in fact, occurred.[10]

Suffice it to say, that while the uncontroverted evidence in support of these motions, coupled with individual testimony from attorneys, has been consistent with the evidence submitted to this Court, it has become clear that the repeated denials demonstrate that §600.063 is little more than a shell game to create the illusion that relief is actually available to public defenders who resoundingly claim that they cannot do what they are required to do to provide effective representation.

MSPD submits that the proposed judgment is the only viable approach to putting an end to the otherwise endless stream of appointments that preclude public defender attorneys from

---

[10] The Presiding Judge who originally granted relief is no longer in office.

providing effective assistance. The proposed judgment gives lawyers for the poor the time needed to provide ethical and effective representation as required by both the Sixth Amendment and the Rules of Professional Conduct. Without the proposed judgment, courts will be forced to entertain repeated and continuous litigation from similarly situated defendants, which MSPD will have to defend. This is the real danger.

## VI.   The addition of limited third-party beneficiaries is meant to avoid continuous and ongoing litigation.

The claims brought forth by Plaintiffs in this case are not unique. Indeed, there are thousands of indigent defendants[11] currently on wait-lists and not receiving any representation. MSPD remains cognizant of the fact that any of these wait-listed defendants, or all of them, can bring litigation against MSPD that is either similar or identical to the instant litigation.   Under the proposed judgment, these individuals would be prospective third-party beneficiaries, thus protecting MSPD from having to defend against additional litigation on similar issues.   *See* Proposed Judgment, Para. c,i., p. 34.[12]  In the absence of the proposed judgment, or if further delay is caused, MSPD may face yet additional lawsuits that look very similar to the instant one. To be sure, it was largely this desire to avoid further and continuous litigation that prompted defendant MSPD to not move to dismiss three of the existing plaintiffs – Randall Lee Dalton, Dorian Samuels, and Brian Richman – on the grounds that their criminal cases have been resolved.[13]  Any success on this procedural point is outweighed by the fact that MSPD will most

---

[11] At the time of this filing, there are more than four thousand indigent defendants on wait lists throughout Missouri.

[12] As stated in Section IV, *supra*, the *only* third-party beneficiaries are persons who should be represented by MSPD "but who have not received counsel at a critical stage or who have been placed on a waiting list for representation by MSPD."  *See* Proposed Judgment, Para. c.i., p. 34. Other criminal defendants are *not* third-party beneficiaries.

[13] In any event, Plaintiff Viola Bowman's case remains pending.  *See State v. Bowman*, Case No. 15CY-CR00043.

certainly have to again confront other similar substantive claims. And so, contrary to the Attorney General's baseless assertion that MSPD has not moved to dismiss these plaintiffs because it is a self-interested defendant who will somehow be permitted to work less under the consent judgment (AG Brief at 17), MSPD's legitimate interest rests more in avoiding otherwise inevitable future litigation on similar claims.

## CONCLUSION

For the foregoing reasons, MSPD-Defendants respectfully request that this Court enter the proposed consent judgment.

Respectfully submitted,

/s/ J. Gregory Mermelstein
_____
J. Gregory Mermelstein, MOBar #33836
Deputy Director/General Counsel
Woodrail Centre, Bldg. 7, Suite 100
1000 W. Nifong Blvd.
Columbia, Missouri 65203
Phone: (573) 777-9977
FAX: (573) 777-9973
E-mail: Greg.Mermelstein@mspd.mo.gov

**Attorney for MSPD-Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, a true and correct copy of the foregoing document was electronically filed using the Court's online case filing system, which will send notice to all counsel of record.

/s/ J. Gregory Mermelstein
_____
J. Gregory Mermelstein, MOBar #33836